## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| MICHAEL VELEZ, individually, and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | **CLASS ACTION** |
| v. | ) ) | No. _____ |
| RM ACQUISITION, LLC, d/b/a RAND McNALLY, | ) ) | **JURY TRIAL DEMANDED** |
| Defendant. | ) ) | |

---

## CLASS ACTION COMPLAINT

---

Michael Velez ("Plaintiff") brings this action on behalf of himself and others similarly situated ("the Class") against Defendant RM Acquisition, LLC (d/b/a Rand McNally) ("Rand McNally") for the manufacture, marketing, and sale of fourth and fifth generation truck navigation devices. Plaintiff makes the following allegations pursuant to the investigation of counsel and upon information and belief, except as to the allegations specifically pertaining to himself, which are based on personal knowledge.

# TABLE OF CONTENTS

I.    NATURE OF ACTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

II.   JURISDICTION AND VENUE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

III.  PARTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

IV.   FACTUAL ALLEGATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

      A.    Rand McNally's Company History . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

      B.    Rand McNally's Truck Navigation Devices . . . . . . . . . . . . . . . . . . . . . .  7

      C.    Rand McNally's Written Warranty . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

      D.    Plaintiff's Purchases and Use of the TND 730 and TND 740
            Devices . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

      E.    Defects From the Date of Purchase: Inaccurate Directions, Maps,
            Routing, Location or Point-of -Interest Information, and Rand
            McNally's Failure to Provide Reasonable And/or Timely or Periodic
            Map Updates . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

      F.    Rand McNally's Failure to Provide Purchasers with Promised
            "Lifetime" Updates "As Long As You Own the TND" . . . . . . . . . . . . .  12

      G.    Plaintiff Videos His Own Personal Experiences With Device-Errors
            and Complains to Rand McNally About Defects and Broken
            Promises . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

      H.    Product Reviews by Verified Retail Purchasers Point Directly to
            Device Defects and Rand McNally's Warranty Breaches . . . . . . . . . .  15

      I.    Device Defects and Rand McNally's Support-Failures Have Made
            the TND 730 and TND 740 Useless for the Purposes in Which
            They Were Made, Manufactured, and Purchased . . . . . . . . . . . . . . . .  22

      J.    Rand McNally Knew About the Device Defects Almost As Soon As
            the Devices Were Placed on the Market, Failed to Disclose the
            Defects, and Continued to Manufacture and Market and Sell the
            Devices as Advertised . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  24

-ii-

K.     Plaintiff and the Class Have Been Injured By Rand McNally's Actions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

V.     APPLICABLE SUBSTANTIVE LAW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

VI.    CLASS ACTION ALLEGATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

VII.   CAUSES OF ACTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

COUNT I – Violations of the Moss-Magnuson Warranty Act
(15 U.S.C. §§ 2301-2312 – Written Warranty). . . . . . . . . . . . . . . . . . . . . . . 32

COUNT II – Breach of Express Warranty
(810 ILCS 5/2-313). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

COUNT III – Breach of Implied Warranty of Merchantability
(810 ILCS 5/2-314). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

COUNT IV – Violations of the Consumer Fraud and Deceptive Practices
Act (815 ILCS 505/2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

COUNT V – Violations of the Illinois Uniform Deceptive Trade
Practices Act (815 IlCS § 510). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

COUNT VI – Unjust Enrichment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

VIII.  JURY DEMAND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

IX.    PRAYER FOR RELIEF. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

## I.  NATURE OF ACTION

1.      This class action stems from Rand McNally's failure to deliver what it promised to truckers. Truckers need a GPS system that allows them to locate and stay on the correct route so their deliveries are made on time, and that accurately directs them to relevant points-of-interest along their journey, including, but not limited to, truck-stops, scales, bridges, and rest areas. This can only be accomplished by furnishing up-to-date GPS maps limited to trucking routes, identifying open truckstops and other important locations, points-of-interest, or information, such as real-time traffic updates, toll estimates, and bridge and overpass information.

2.      Through advertisements, product-labeling, packaging, and other means, Rand McNally repeatedly and consistently represented to truckers that its TND 730 and 740 Intelliroute truck navigation devices (the "devices") provided up-to-date maps to truckers, including "Lifetime Maps and Traffic Everywhere," "Free Lifetime Map Updates," "updates as long as you own the TND™," and "improved maps." Rand McNally also informed truckers that it was "constantly updating maps."

3.      Despite the significant $400-500 price-tags for the devices and the "bells and whistles" Rand McNally touts for each device, the company has uniformly failed to provide accurate map, route, and point-of-interest information to the Plaintiff and the Class, most notably through a failure to update maps or provide updated maps as long as Plaintiff and the Class owns their devices, as expressly warranted. Thus, neither the TND 730 nor the TND 740 provides truckers with accurate, much less up-

to-date maps, instead consistently generating wrong directions, recognizing incorrect or even non-existent locations, and routinely unable to locate addresses or even streets, among other problems.

4.     When Plaintiff and other Class members complained about inaccurate maps, misinformation about points-of-interest, and poor or unsafe routing, *e.g.*, being directed to the wrong destination or drop-off address, to narrow or residential roads, low bridges, steep grades, or to non-existent travel centers, or complained about out-of-date maps, Rand McNally promised them "updates in the next few months," only to have these promised updates constantly pushed back indefinitely or canceled.

5.     Rand McNally also promised Plaintiff and other Class members "Lifetime" map updates for both the TND 730 and TND 740, only to inform TND 730 customers recently that the company would no longer support the TND 730 with "Lifetime" updates. Consequently, Plaintiff and other Class members who own TND 730 devices will no longer receive map-updates for "as long as they own" the device, as promised, whether they had ever received a map update or not.

6.     Even as it marketed and sold the two devices, Rand McNally knew that both the TND 730 and the TND 740 were defective, based upon warranty data, customer complaints to Rand McNally and on online trucker forums, YouTube, and/or retail websites, including Amazon and BestBuy, and through innumerable other sources. Worse still, Rand McNally knew that no repair, "patch," or other "fix" existed for the device failures. In fact, seven years after launching the TND 730, Rand McNally simply ceased making any effort to cure the failures associated with that particular

device, notwithstanding its promise to provide "Lifetime" maps to purchasers as long as they owned the devices.

7.  Plaintiff and other Class members reasonably expected that both the TND 730 and TND 740 would operate as advertised, especially during the warranty period.

8.  This Complaint is based upon Rand McNally's violations of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, et seq. ("Magnuson-Moss Act"); breaches of express and implied warranties; violations of the Illinois Consumer Fraud and Deceptive Practices Act (815 ILCS 505/2) and Illinois Uniform Deceptive Trade Practices Act (815 Ill. Comp. Stat. § 510/2); and unjust enrichment. For these claims, Plaintiff and the Class seek compensatory damages, equitable relief, restitution, attorneys' fees, and costs against Rand McNally.

## II.  JURISDICTION AND VENUE

9.  This Court has jurisdiction pursuant to 28 U.S.C. §1332(d) and the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1711, et seq., which vests original jurisdiction in the district courts of the United States for any multi-state class action where the aggregate amount-in-controversy exceeds $5 million and where the citizenship of any member of the class of plaintiffs is different from that of any defendant. There are more than 100 potential Class members across the United States,

the aggregate amount-in-controversy exceeds $5 million, exclusive of interest, fees, and costs, and at least one class member is a citizen of a state other than Illinois.[1]

10.     This Court has personal jurisdiction over Rand McNally because it is headquartered in Chicago, Illinois. As such, it has significant, continuous, and pervasive contacts in Illinois.

11.     Venue is appropriate in this district under 28 U.S.C. § 1391(b) and (c), because during the Class Period, Rand McNally transacted business, was found, or had agents in this district and because a substantial portion of the affected trade and commerce described below has been carried out in this district.

12.     At all pertinent times, Rand McNally sold, advertised distributed, marketed, and promoted products, including the TND 730 and TND 740 throughout the United States.

13.     The devices that form the basis of this Complaint – Rand McNally's TND 730 and TND 740 truck navigation devices – were purchased by Plaintiff and Class members from Rand McNally and/or placed in the stream of commerce by Rand McNally.

---

[1]Although Velez is the only named Plaintiff, this District has confirmed that the CAFA "creates an alternative basis for federal jurisdiction over" a Magnuson-Moss Act claim, and that such a claim may proceed in a CAFA class action absent one hundred named plaintiffs, as otherwise required by 15 U.S.C. § 2310(d)(3)(C). *See Stella v. LVMH Perfumes and Cosmetics USA, Inc.*, 564 F. Supp. 2d 833, 837–38 (N.D. Ill. 2008).

### III. PARTIES

14.     Plaintiff, Michael Velez ("Plaintiff") is a natural person who resides in the State of Tennessee. In or about 2014, Plaintiff purchased a new TND 730 manufactured by Rand McNally at a truck-stop for approximately $399.99. In or about 2017, Plaintiff purchased a new TND 740 manufactured by Rand McNally at a different truck-stop for approximately $499.99.

15.     Defendant, RM Acquisition, LLC, doing business as Rand McNally ("Rand McNally"), is an Illinois corporation headquartered at 8770 W Bryn Mawr Ave, Chicago, Illinois 60631. Rand McNally may be served there or through its corporate agent, C.T. Corporation Services, 208 S. LaSalle Street, #814, Chicago, IL 60604.

16.     Rand McNally does business throughout Illinois, including Chicago, in the Northern District of Illinois. Both the TND 730 and TND 740 devices are manufactured, marketed, and sold by Rand McNally in Chicago. Upon information and belief, each corporate decision regarding the TND 730 and 740 that is the subject of this lawsuit was directed by Rand McNally's representatives in Illinois, or emanated therefrom, where Rand McNally's warranty program was also created and where it is administered.

### IV. FACTUAL ALLEGATIONS

#### A.     Rand McNally's Company History

17.     Founded in 1856 by William H. Rand and Andrew McNally and incorporated in 1873, Rand McNally is the oldest firm of its kind in the country and one of the world's leading map-makers.

18.     Until the late 1990's, Rand McNally had always been a privately held or "pink sheet" company, with stock held by very few parties and thinly traded. In 1997, the McNally family, which had owned a majority interest in the company since 1899, decided to divest its majority stake. The company was sold off piecemeal. In October 2020, the company's core map-making business was acquired by Teleo Capital ("Teleo"), a private equity firm based in Boise, Idaho and Los Angeles, California. Other technology companies owned by Teleo include Industrial Defender, which provides cyber-security and compliance software products, and Paxia, a supply chain software company that manages "the inflight catering services supply chain for the world's largest airline carriers." Rand McNally is now the biggest company by revenue in the Teleo portfolio.

19.     Rand McNally became a leading United States publisher of travel books and electronic media for the travel industry, and is perhaps best known for its maps and atlases, including the top-selling Rand McNally Road Atlas, a travel atlas first published in 1924 and updated every year.

20.     Eventually, Rand McNally turned its focus to the commercial trucking industry. Truck drivers require an assortment of important tools on the road, and a GPS[2] device designed specifically for truckers is just one such device. Not only do such

---

[2]The Global Positioning System ("GPS") is a satellite-based navigation system made up of at least 24 satellites. GPS works in any weather conditions, anywhere in the world, 24 hours a day, with no subscription fees or setup charges. The U.S. Department of Defense originally put the satellites into orbit for military use, but they were made available for civilian use in the 1980s. *See* https://www.garmin.com/en-US/aboutgps/

devices help truckers avoid major traffic jams, but they also ensure they stay on the correct route so that their deliveries are made on time. After all, reading maps can be difficult and dangerous while driving, and printed maps may not have up-to-date information on bridge weight limits, closed roads, and alternate routes.

21.     Rand McNally currently produces and distributes printed atlases and other published product in the retail marketplace, including OverDryve™ and TND™ dashboard tablets and ClearDryve® 2-in-1 headsets that convert to headphones. Over the past two decades, the company has expanded aggressively in the commercial transportation and logistics software space, providing a proprietary fleet management platform as well as mileage and routing software used by carriers, shippers, and third-party logistics providers.

**B.     Rand McNally's Truck Navigation Devices**

22.     With an eye toward gaining a foothold in the commercial trucker demographic, in 2009, Rand McNally launched IntelliRoute® TND™ 500, its first GPS device built specifically for truckers, using proprietary truck data. According to the company, the device provided customized route information unavailable on a consumer-oriented product.

### *The TND 730*

23.     In 2014, Rand McNally launched the TND 730, a fourth-generation GPS device for commercial truck drivers, which included "new features," such as:

> • "Advanced lane guidance – Be prepared for what's ahead, whether you're approaching a turn or heading through a complicated intersection";

• "Toll costs – View estimated toll costs and compare routes without tolls";

• "Avoid list – Avoid entire route, road, or area";

• "Route comparison – Choose between a primary and alternate route";

• "Warnings – Set warnings for upcoming speed limit changes, sharp curves, and more; set display preferences and warning distance"; and

• "Destination entry – Find by address, zip code, or latitude and longitude."

24.     According to Rand McNally, the TND 730 used "proprietary truck data derived from more than 70 years in the commercial transportation industry." The company advertised the device as offering "35% more truck routing information than other GPS units," "Millions of POI listings – Detailed information on truck stops, weigh stations, service and repair," and "Select services – Filter search results for truck stops and service locations by the amenities available."

25.     The box that contained the TND 730 (as well as subsequent generations of the device) promised "Lifetime Maps and Traffic Everywhere," telling truck drivers they would "Get updates as long as you own the TND™."

### *The TND 740*

26.     In 2017, Rand McNally followed the TND 730 by introducing the TND 740, a fifth-generation GPS device for commercial truckers. Like its predecessor, the TND 740 touted features truck drivers would find useful, *e.g.*, an "easy-to-use interface for drivers and improved maps," "35% more truck routing information than other GPS

units," "Free Lifetime Map Updates," "Truck-Specific Routing," and "Over-the-air Map Updates."

27.     Rand McNally also promised that the TND 740 "is constantly updating maps" when connected to WiFi, informing truckers:

> This means that even if a road has only been closed for a few hours due to construction or inclement weather, the Rand McNally TND 740 will be aware of this closure and re-route automatically. The map also regularly updates with current traffic conditions and incorporates this into its route, offering new routes if heavy traffic appears even in rural areas. This is particularly useful in the event of bad weather or unexpected road closures, enabling trucks to change routes quickly or take detours as soon as they are routed.

## C.     Rand McNally's Written Warranty

28.     Significantly, Rand McNally provided Plaintiff and the Class with the following one-year written warranty ("Warranty")[3]:

> "Rand McNally warrants the TND/RVND Products, and the component parts thereof, will be free of defects in workmanship and materials for a period of one (1) year from the date of first consumer purchase."[4]

---

[3]Available at https://www.randmcnally.com/support/faqs/what-is-the-warranty -on-my-gps (last visited April 22, 2021).

[4]Although Rand McNally attempts to disclaim any and all implied warranties of merchantability, these purported disclaimers are legally invalid pursuant to federal law. *See* Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, et seq.

### D. Plaintiff's Purchases and Use of the TND 730 and TND 740 Devices

29. Relying upon Rand McNally's reputation and the representations made on the product-packaging and by the company's website, Plaintiff purchased at retail a fourth-generation TND 730 in 2014 for approximately $399.99. In 2017, he purchased at retail a fifth-generation TND 740 for approximately $499.99.[5] By making these purchases, Plaintiff sought a navigation system that he could depend on. Based on Rand McNally's slick advertising, to which he had been exposed, including merchandise-displays and demonstration-units at Love's Truck Stops, as well as information and demos on Rand McNally's website, Plaintiff was lured into believing that the Rand McNally brand offered reliable and quality products, causing him to purchase the TND 730 and 740.

30. At all times, Plaintiff operated both his TND 730 and TND 740 in a manner consistent with their intended uses. Nevertheless, he has experienced persistent problems with both devices, first with the TND 730, and then, with the TND 740, including, but not limited to, displaying his location on a parallel or non-existent road and re-routing him accordingly, directing him to the wrong locations, and taking him in the opposite direction of where he was headed. Plaintiff continues to experience these problems with both devices. In addition to causing substantial delays, all of this left Plaintiff without a reliable way to navigate to his destination in his truck.

---

[5]Plaintiff has been unable to locate his receipt, but, upon information and belief, he purchased the TND 740 at a Love's Truckstop in Illinois. Plaintiff travels to (or through) Illinois often.

**E. Defects From the Date of Purchase: Inaccurate Directions, Maps, Routing, Location or Point-of -Interest Information, and Rand McNally's Failure to Provide Reasonable And/or Timely or Periodic Map Updates.**

31.    Like other Class members, Plaintiff's use of both devices[6] has been – and continues to be – substantially hampered by wildly inaccurate directions, maps, routing, and location or point-of -interest information, made worse by Rand McNally's continuing failure in 2020 and 2021 to provide reasonable and/or timely or periodic map updates.

32.    Even though Plaintiff separately shipped – at his own cost – both devices to Rand McNally and paid Rand McNally approximately $216.00 for repairs to his devices, the repairs did not provide him with better directions, maps, routing, or point-of-interest information, much less updated maps, and neither unit worked any better than they had originally.

33.    Via labels and packaging, Rand McNally advertised and represented that the TND 730 came with "Lifetime Maps" that "provides the original purchaser of the device with an annual base map update subject to the terms and conditions described at randmcnally.com/lifetimemaps." Although the "terms and conditions" state that

---

[6]Plaintiff returned the TND 730 to Rand McNally in June 2018 due to a power issue. [Order #: 37306; Ticket #: 1164131]. Rand McNally returned a refurbished TND 730 (with a new USB port, updated software, new battery, and new car-charger) to Plaintiff for a charge of $107.91. Plaintiff returned the TND 740 to Rand McNally in November 2019 due to the device automatically shutting down. [Order #: 82363; Ticket #: 1335116].  Rand McNally returned a refurbished TND 740 (with updated software, new battery, new charger, new mounting block) to Plaintiff for $107.91. Both of these repairs were non-warranty repairs.

"Lifetime" may be limited to 36 months after the initial release,[7] the packaging actually explicitly states that "Lifetime Maps and Traffic Everywhere" updates are provided to purchasers ***"as long as you own the TND™."***

34.    Plaintiff repeatedly contacted the Rand McNally Help Center to complain about the problems he was experiencing with the devices. Those problems largely consisted of the devices erring with directions, maps, routing, or point-of-interest information, as well as Rand McNally's continuous failure to provide updated maps.[8]

**F.    Rand McNally's Failure to Provide Purchasers with Promised "Lifetime" Updates "As Long As You Own the TND."**

35.    Despite having represented to Plaintiff and other Class members that it would provide them "Lifetime" updates for the TND 730 for "as long as you own the TND™," in response to an April 3, 2021 email inquiry from Plaintiff [Ticket #: 1459207], Rand McNally informed Plaintiff that "there will be no future updates provided for the TND 730 devices. We appreciate your understanding and apologize for any inconvenience."

---

[7] *See* https://www.randmcnally.com/pages/mapupdates

[8] For instance, in 2017, Plaintiff reported location errors to Rand McNally regarding the TND 730 and that its screen repeatedly and continuously froze while he was driving.

**G.   Plaintiff Videos His Own Personal Experiences With Device-Errors and Complains to Rand McNally About Defects and Broken Promises.**

36.   Since Plaintiff purchased the TND 730 and TND 740, he has self-recorded videos sitting in his truck, demonstrating a litany of directional, mapping, routing, and other errors made by both devices. For example, they show:

> • his TND 730 and TND 740 did not even recognize the location of a long-open travel center/CAT scale where he was parked at that moment;
>
> • his TND 730 and TND 740 had directed him to drop-off a load at the wrong destination;
>
> • his TND 730 and TND 740 incorrectly routed him to a narrow residential street as his destination;
>
> • although the TND 740 directed him to Pilot Travel Center 069 in LaGrange GA, that particular travel center no longer existed and the location was a vacant lot.

37.   On November 16, 2020, Plaintiff contacted Rand McNally and inquired about when an update would be issued for the TND 740, complaining about Rand McNally's failure to identify multiple Love's Truckstop locations that had been open for more than two years were still not recognized on the TND 740, writing:

> "These locations have been open for over 2 years, what is taking you so long?"

38.   Tina Kincer, who identified herself as a Rand McNally Customer Service Supervisor, responded:

> Mr. Velez,
>
> Thank you very much for your feedback and we value the information you have been providing though TellRands

-13-

concerning Love's Travel Centers. We do review the information you provide concerning travel centers. We are working to release a travel center point of interest update in the next few months.

Please feel free to reply to this message or call us if you have any additional questions.

\*\*\*

Thank you,
Tina Kincer
Customer Service Supervisor

39.     In January 2021, Plaintiff again complained about the lack of updates for the TND 740. On January 28, 2021, Ms. Kincer, this time identifying herself as a "Technical Support Supervisor," again responded:

Good Morning Mr. Velez,

Unfortunately, these updates have been pushed back due to the cyber incident that we had. Our severs [sic] were down for over a month and we had to work on getting those back up before we could do anything with updates. As soon as a new update comes out it will be pushed out to your device and you should be notified if you are connected to WiFi. As of now, I don't have an ETA on when that will be. I apologize for the delay.

Thank you,
Tina Kincer
Technical Support Supervisor

40.     The promised update, just like previous ones, never materialized.

**H.     Product Reviews by Verified Retail Purchasers Point Directly to Device Defects and Rand McNally's Warranty Breaches.**

41.     Reviews by verified purchasers of the TND 730 and TND 740 devices on Amazon and Best Buy, trucker-forums (as well as other websites) reveal a series of common complaints by truckers.

42.     A sampling of user-reviews for the TND 730 are as follows:

*Amazon Reviews of TND 730[9]*

jj0303          1.0 out of 5 stars
               Pure junk. . . save your sanity and purchase the Garmin Dezl
               Reviewed in the United States on May 4, 2018
               Verified Purchase

               Pure Junk. Spend your money on the Garmin Dezl... much better product. Where do I start? First; it has a really hard time finding just about any address I look for. Yes it has been updated several times. Second; if the unit doesn't freeze up it loses enough satellites it has no idea where you are. Third; have issues updating the unit. Fourth; drops addresses that I have saved as favorite. Fifth; stupid hard to get it off the mount stuck to the windshield (just easier to remove mount from windshield). Sixth; the glair on the screen is horrible. This unit has been out long enough that Rand McNally should have ALL the bugs worked out. Guess they just don't care. Will never buy another GPS from them.

owen r evans    1.0 out of 5 stars P.O.S.
               Reviewed in the United States on January 22, 2017
               Verified  Purchase

---

[9]*See* https://www.amazon.com/Rand-McNally-TND730-IntelliRoute-Navigator/product-reviews/B00MBUZ2DW/ref=cm_cr_getr_d_paging_btm_next_10?reviewerType=all_reviews&filterByStar=one_star&pageNumber=10

This is suppose to be a gps for truckers, but it is a nearly worthless overpriced piece of crap. This baby will cause you all kinds of trouble. It wants to take you to places were trucks are a big no-no. Ìt wanted to take me on the lower lanes of the George Washington bridge or NY parkways. It will always route you on much longer out of the way routes. This is one of the worst gps I have ever used.

Brian G. Smith      1.0 out of 5 stars not as good.
                    Reviewed in the United States on March 23, 2015
                    Verified Purchase

It routes me down business routes through every stop light in towns. Doesn't seem to recognize truck routs or use them.

dedeic whitted      1.0 out of 5 stars Not very good
                    Reviewed in the United States on June 1, 2016
                    Verified Purchase

Not a very reliable device. I'm a truck driver and while using this it couldn't find North Carolina. It took me in circles (literally) and kept telling me to u-turn and its difficult do that in a semi hauling a trailer. I would return it but I missed the 30 day deadline since I was out on the road. Wouldn't recommend it at all.

C. R. Love         1.0 out of 5 stars Buy this over the Garmin if you
                   want to be routed terribly, be unable to easily see
                   detail
                   Reviewed in the United States on November 16, 2015

If it's going to route a 60 mile trip into a 150 mile trip, it should cost a lot less. This unit will route you far around the quickest way to go. it also has about half of all the speed limits showing as 5MPH under the actual speed limits. This coupled with the constant 'speed warning' audio clip makes this thing into a complete joke. FYI, this is after doing a complete update on it. Trying to zoom in or out takes seconds when it should be instant. Try zooming in to see local detail on this unit, you'll hit the zoom in button several times and have to wait for it to slowly catch up through a series of stutters and jerks. Even after the lengthy update, it has incorrect fueling station information. It actually

-16-

routed me to a Pilot had had been closed for years. The lot was nothing but a concrete graveyard. Buy this over the Garmin if you want to be routed terribly, be unable to easily see detail, be subjected to constant 'speed warning' in a nasally voice, and has faulty Point of Interest information.

### Best Buy Reviews of TND 730[10]

boogiebird    Google maps are more accurate
              Verified Purchase|
              Posted 5 years ago.

I bought this gps because I drive a 18 wheeler for a living and wanted a "truck" specific one. I thought it would make it easier and safer for me. So far, it hasn't. It has routed me down numerous "No Truck" streets and warned me I was on a "No Truck" street while I was looking at a sign that stated I was on a truck route.

thetruth      very poor quality
              Verified Purchase|
              Posted 4 years ago.

DO NOT WASTE YOUR MONEY. PLEASE BEWARE. Very disappointed as I am a truck driver. This device is very unreliable and your limited as to how to type in your information as to where you want to go. Meaning if its not in its program then it does not recognize location and you can not do anything about it besides use your cell phone navigation to get you where you need to be. So don't waste your money for a shoddy product.

---

[10] *See* https://www.bestbuy.com/site/reviews/rand-mcnally-intelliroute-tnd-730 -lm-7-gps-with-lifetime-map-updates-black/8426003?rating=1

*TruckGPSReviews of TND 730*[11]

Posted by dwayne   1/5

> Same issues, after shelling out $400 bucks for a gps that's supposed to be top of the line, freezes up every day, no traffic updates unless you spend $20 bucks a year, and have to have WiFi to operate it, go to Walmart and buy the cheapest one you find, has more quality features than this piece of junk, another dissatisfied customer who will never buy another rand McNally product, only thing it's good for, paperweight or fishing weight

Posted by Keith G   1/5

> Piece of junk. Was Cutting off multiple times a day, only 6 weeks old and will not function at all now. Called customer service and was told to buy a new cord. Did that and guess what, it is not the cord. Very dissatisfied with this product, how many people do I have to warn to feel I've gotten my $400.00 back?

Posted by Richard   1/5

> I have had the rand mcnally since 2011 and it hs sent me to 4 low clearences. The routes are horrable on just about every occation. Be carefull don't trust it at all! I would not recommend it to my enemy.

---

[11] *See* https://www.truckgpsreviews.com/rand-mcnally-tnd-730-review/

43. A sampling of user-reviews for the TND 740 are as follows:

**Amazon Reviews of TND 740**[12]

John Michael      1.0 out of 5 stars DO NOT BUY THIS UNIT!
Reviewed in the United States on March 2, 2019
Verified Purchase

I have this unit and it worked great for about a month. After that the unit started failing once a week saying that mapping (and other) files have become corrupted and I have usually been on-the-road and forced to use expensive cellular data to run the GPS repair. Worse, it can, and will happen at any time! Imagine yourself trying to navigate the side streets in the DFW Metroplex with a Hazmat placarded load and this happening. I have contacted Rand McNally Technical Support several times by both calls and email. The calls only get me a totally disinterested individual that tells me that they are aware of the problem and are working on it and the emails just get me a "No Reply" email in return telling me they have received my email. This is unacceptable "support" and NO communication has been made to me directly acknowledging this issue or a time-frame to correct it. This unit is unreliable and defective.

McCall      1.0 out of 5 stars I had to finish my runs with my smart phone which had no problem locating the specific addresses ...
Reviewed in the United States on October 13, 2017
Verified Purchase

WORTHLESS. I've had this unit for 3 days as an OTR driver. So far it has only found 2 of the 12 or 14 addresses I've entered. I had to finish my runs with my smart phone which had no problem locating the specific addresses I entered. Very user UNfriendly. The GPS is getting returned and Im replacing it with the Garmin dezl 770LMT

---

[12] See https://www.amazon.com/product-reviews/B075SP87GD/ref=cm_cr_unknown ?filterByStar=one_star&pageNumber=1

Geoffrey S L Shaw 1.0 out of 5 stars Like ever other buyer of this Rand McNally product
Reviewed in the United States on July 21, 2018
Verified Purchase

1. After only 2 months the GPS functions stopped working with the infuriating error message, "Truck GPS isn't responding. Do you want to close it?" Jeezzzz..... Like ever other buyer of this Rand McNally product, I paid top dollar for the unit, even with the Amazon discount. The "fixes" available online all come down to waiting for RM to get around to fixing the bug in their current update that turns the unit into a unless brick. I had one alleged customer service rep actually tell me that it's "a minor problem, and given that the RM Road atlas is still available I shouldn't be too concerned." Really! Really? Honestly! With that kind of DO NoT BUY THIS UNIT OR ANY OTHER RM BRANDED ELECTRONIC PRODUCT. Their printed road atlas is great, but they shouldn't be in the e-devise business.

2. The UI for this devise sucks. If you don't have a postal address that RM recognizes, entering a destination is a mind-boggling pain in the as-.

Need to add a dispatch selected fuel stop to your itinerary? If you don't have the mailing address, good luck; you'll be spending at least 5-10 minutes messing around with the user interface to find something that MIGHT be the TA or Pilot you're looking for

Fredric G. Rubenstein    2.0 out of 5 stars Reliable? No.
Reviewed in the United States on September 30, 2019
Verified Purchase

I operate a charter bus. I was attracted to the 740 because it has a setting for buses.

That aside, I find the 740 unreliable. The routing sometimes take you onto streets where buses do not fit – and, yes, I set the bus dimensions accurately. The typeface on the screen is too small and there is no way to enlarge the font.

-20-

### *Best Buy Reviews of TND 740* [13]

AmmoDog    Rating 1 out of 5 stars with 1 review Not a good GPS
           Posted 3 weeks ago.

Ok for everyone who has purchased this GPS and said it is great, they work for Rand Mcnally.

I've had this one for 11 months now and it's been nothing but a dang headache. It does not give good directions, will send you anywhere from 10 to 30 miles out of the way.

Crashes constantly, has now started losing the map information and going back to the home screen. Does not have all roads listed and the sad thing is Rand Mcnally makes the road maps for commercial vehicles.

Rand Mcnally should stick with making GPS's and leave the tablet making to the experts. I need a GPS not something I can web browse on, put music on and store information, that's what I have a laptop and a smartphone for.

It will not give the correct names for streets nor cities, pronounces St. Louis as Street Louis.

AnnGlenn    Rating 1 out of 5 stars with 1 review Rand McNally does not
            support, no map updates
            Posted 9 months ago.

GPS works fine but Rand refuses to update the maps. Has not been done for 2 years. Used to be every month. They said they "are looking in to it" Said that 4 months ago and a year ago.

---

[13] *See* https://www.bestbuy.com/site/reviews/rand-mcnally-tnd-740-7-gps-black/
5867862?rating=1

*TruckerGPSReviews of TND 740*[14]

Posted by Greg Bolinger

This is my second Rand McNally. My first one was the 730 3.5 years ago. I didn't like it. It was always sending me in the wrong direction. I have been running the Garmin for the last 1.5 years. Decided to try the Rand McNally TND 740 because of some of the functions that Garmin does not have. Biggest mistake of my life. It sends me on dirt roads, has me making U turns, tells me to take an exit and then tells me I'm going the wrong way. When in 3D mode, I get green lines across the screen that almost obliterates the map. I've also had to reset it three times due to freezing up. I have had it for 30 days and cannot even return it. I do not recommend this product to anyone and I will own another one again. Waste of money.[15]

**I.      Device Defects and Rand McNally's Support-Failures Have Made the TND 730 and TND 740 Useless for the Purposes in Which They Were Made, Marketed, and Purchased.**

44.     The TND 730 and TND 740's frequent and persistent failures have ultimately rendered both of them useless and Plaintiff has therefore ceased depending on them. As a commercial truck driver, Plaintiff relies on his GPS to navigate the most efficient route and to direct him away from areas where commercial trucks are

---

[14]*See* https://www.truckgpsreviews.com/rand-mcnally-tnd-740-review/https://www. truckgpsreviews.com/rand-mcnally-tnd-740-review/

[15]Additional trucker complaints can be found on Amazon, Best Buy, and TruckerGPSReview, as well as other retailer websites and trucker forums.

prohibited. Because the devices consistently show outdated maps, incorrect locations, and fail to route them correctly, Plaintiff and other Class members risk being routed into prohibited or unsafe areas, which could result in steep fines or injury.[16]

45.    From this, both the TND 730 and 740:

· frequently fail to recognize legitimate addresses;

· route truckers to "no-truck" roads or roads that are otherwise unsafe for trucks;

· warns truckers that they are on "no-truck" roads even though signs on the alleged "no-truck" roads say "truck route";

· are consistently found to be have out-dated information about speed limits, curve warnings, etc.;

· frequently routes truckers to low-hanging wires, dirt roads, narrow roads, steep grades, or directing them to complete impossible or impracticable U-turns;

· misdirects truckers to the wrong exit, then directs them to turn around;

· frequently mis-routes truckers; and

· wrongly re-routes truckers after missed exits or wrong turns.

---

[16]The constant distraction of a defective navigation also has the potential to create dangerous conditions for truck drivers and those around them.

**J.** **Rand McNally Knew About the Device Defects Almost As Soon As the Devices Were Placed on the Market, Failed to Disclose the Defects, and Continued to Manufacture and Market and Sell the Devices as Advertised.**

46.     The sheer volume of complaints and negative reviews also make it evident that Rand McNally became aware of the defective TND 730 and TND 740 devices almost as soon as the devices were put on the market.

47.     Yet, Rand McNally continued to market and sell the TND 730 and TND 740 devices while concealing and failing to disclose to Plaintiff and other Class members that the devices are defective and cannot be fixed or corrected. All of this information is material to a reasonable consumer's decision about whether to purchase either device.

48.     Rand McNally should have disclosed these material facts to Plaintiff and to the public at the outset, but did not. Instead, the company misrepresented the reliability of the TND 730 and TND 740 devices by marketing the devices as having been "Built from the ground up for professional drivers" and "designed to help truckers in each phase of their work day, from planning to driving." On its website, Rand McNally highlights the devices' "Advanced lane guidance" feature, which it purports prepares drivers for upcoming turns and complicated intersections.

49.     Rand McNally also failed to disclose that the TND 730 and TND 740 devices are defective despite knowing the devices posed obvious safety risks to truckers that would result from driving with an unreliable navigation system. The devices routinely direct truckers to unsafe terrain or hazardous road conditions, distracts or

confuses them, or otherwise malfunctions, thereby placing drivers at a greater risk of accidents and harm than normal. These and other, similar safety risks would be material to a reasonable consumer in deciding whether to purchase the devices and, as such, Rand McNally should have disclosed this fact to the public, but failed to do so.

50.     At all relevant times, Rand McNally had exclusive possession of the information regarding the defective TND 730 and TND 740 based upon Rand McNally's own testing, industry testing, and consumer complaints it received. Rand McNally also exclusively knew that the devices lacked any "fix." These facts were material to Plaintiff and other Class members, and although Rand McNally had a duty to disclose these facts to Plaintiff and the Class, it failed to do so.

51.     Had Rand McNally's advertisements, statements, or other materials and communications disclosed material information regarding the defective TND 730 and TND 740 devices, the company's refusal to remedy the problems, and the absence of any "fix" for them, Plaintiff and other Class members would not have chosen to purchase the devices, much less pay the substantial amount they did for them.

52.     Instead of disclosing the defects to Plaintiff and other Class members, Rand McNally purportedly "repaired" devices . . . without repairing the actual defects, sent purchasers "refurbished" devices that contained the same defects, or even claimed that the issue was the truck driver's fault, and not its TND devices.

**K.** **Plaintiff and the Class Have Been Injured By Rand McNally's Actions.**

53.     Rand McNally's conduct has imposed significant costs upon Plaintiff and Class members, including substantial out-of-pocket expenses incurred for defective TND 730 and TND 740 devices that do not work as advertised, warranted, or reasonably expected, in violation of Rand McNally's Warranty and applicable law.

54.     Rand McNally's knowledge of the defective devices, and the lack of any "fix" for their problems, renders the Warranty it provided to Plaintiff and Class members illusory. Under the circumstances alleged herein, the Warranty constitutes an unlawful, unfair, and fraudulent business practice, making it unconscionable.

55.     Plaintiff has suffered damages and ascertainable losses as a consequence of Rand McNally's misconduct alleged herein, including, inter alia, the approximately $900.00 he paid to purchase the TND 730 and TND 740. Other Class members have also suffered damages and ascertainable losses as a consequence of Rand McNally's misconduct alleged herein.

## V.  APPLICABLE SUBSTANTIVE LAW

56.     Illinois's substantive laws apply to the proposed Class, as defined herein, because Plaintiff properly brings this Complaint in this district.

57.     Illinois's substantive laws may be constitutionally applied to the claims of Plaintiff and the Class under the Due Process Clause, 14th Amend., § 1, and the Full Faith and Credit Clause, art. IV., § 1, of the U.S. Constitution. Illinois has significant contact, or significant aggregation of contacts, to the claims asserted by Plaintiff and

all Class members, thereby creating state interests that ensure that the choice of Illinois state law is not arbitrary or unfair.

58.     Rand McNally's headquarters and principal place of business are located in Illinois. Rand McNally also owns property and conducts substantial business in Illinois. Therefore, Illinois has an interest in regulating Rand McNally's conduct under its laws. Rand McNally's decision to reside in Illinois, place its headquarters there, and avail itself of Illinois's laws renders the application of Illinois law to the claims made herein constitutionally permissible.

59.     A substantial number of members of the Class also reside in Illinois and purchased the TND 730 and/or TND 740 in that state.

60.     Illinois is also the state from which Rand McNally's alleged misconduct emanated.

61.     This conduct similarly injured and affected Plaintiff and Class members. For instance, Rand McNally's marketing and engineering efforts relating to the TND 730 and TND 740, as well as its warranty decisions, were undertaken and orchestrated from its headquarters in Illinois.

62.     Application of Illinois's laws to the Class is also appropriate under Illinois's choice-of-law rules because Illinois has significant contacts to the claims of Plaintiff and the Class, and Illinois has a greater interest in applying its laws here than any other interested state.

63.     Although the Plaintiff resides in Tennessee, Rand McNally's principal place of business is in Chicago, Illinois. When Plaintiff has contacted Rand McNally to

discuss or complain about a problem with his devices, those communications were directed to Illinois and any and all return communications were directed to him from Illinois. Furthermore, the Warranties for the devices provide that the "terms and conditions" of the Warranty "shall be governed by the laws of Illinois."

64. In the alternative, the law of the home state of Plaintiff and each Class member should apply to his or her claim.

## VI. CLASS ACTION ALLEGATIONS

65. **_Definition._** Plaintiff brings this action as a class action under Fed. R. Civ. P. 23(a) and (b) on behalf of the following proposed Class:

> All current and former purchasers of the Rand McNally TND 730 and/or TND 740 in the United States.

66. Alternatively, Plaintiff seeks certification of an appropriately ascertainable and geographically suitable class of purchasers of the Rand McNally TND 730 and/or TND 740.

67. Excluded from the Class are Rand McNally and any entities in which it has a controlling interest, Rand McNally's agents and employees, Plaintiff's attorneys and their employees, the judge to whom this action is assigned, any member of the judge's staff and immediate family. Also excluded from the Class are persons who assert claims for personal injury, wrongful death, and/or emotional distress.

68. Plaintiff reserves the right to expand the Class definition to seek recovery on behalf of additional persons as warranted, as facts are learned in further investigation and discovery.

-28-

69. ***Ascertainability.*** Class members are readily ascertainable from the information and records in the possession, custody, or control of Rand McNally. The Class can be identified through Rand McNally's records or the records of Rand McNally's agents.

70. ***Numerosity.*** Plaintiff reasonably estimates that Rand McNally has sold tens of thousands of TND 730s and TND 740s since launching the devices, seven and four years ago, respectively. Therefore, the Class is sufficiently numerous such that individual joinder of all members is impractical, as required by Fed. R. Civ. P. 23(a)(1). The precise number of Class members can be determined by reviewing records in Rand McNally's possession, custody, and control.

71. ***Commonality.*** There are common questions of law and fact that predominate over any questions affecting only the individual members of the Class, as required by Fed. R. Civ. P. 23(a)(2) and Fed. R. Civ. P. 23(b)(3). The wrongs alleged against Rand McNally are common to each and every member of the proposed Class. These common questions do not vary from one Class member to another and may be determined without reference to the individual circumstances of any Class member. The common questions include, but are not limited to, the following:

    a.    Whether the TND 730 and/or TND 740 were/are defective;

    b.    Whether Rand McNally knew that the TND 730 and/or 740 were/are defective;

    c.    Whether Rand McNally omitted and/or concealed material facts from Plaintiff and the Class regarding the defect inherent in the TND 730 and/or TND 740;

d.      Whether Rand McNally made false and/or misleading statements about the TND 730 and/or TND 740;

e.      Whether Rand McNally's false and/or misleading statements of fact and concealment of material facts concerning the performance and reliability of the TND 730 and/or TND 740 were likely to deceive consumers;

f.      Whether Rand McNally has engaged in unfair or deceptive acts or practices in connection with the advertising marketing and sale of the TND 730 and/or TND 740;

g.      Whether Rand McNally has breached its written Warranty;

h.      Whether Rand McNally has breached the implied warranty of merchantability;

i.      Whether Rand McNally has been unjustly enriched;

j.      Whether Plaintiff and the Class have suffered damages as a result of Rand McNally's wrongful conduct and, if so, the appropriate amount thereof; and

k.      Whether Plaintiff and the Class are entitled to equitable and/or other relief and, if so, the nature of such relief.

72.      ***Typicality.*** Plaintiff's claims are typical of the claims of other Class members, as required by Fed. R. Civ. P. 23(a)(3). Plaintiff and all Class members have suffered the same injuries as a result of Rand McNally's wrongful conduct. Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of the Class members and are based on the same legal theories. In addition, Rand McNally's defenses are and will be typical of and the same or identical for each of the

members of the Class and will be based on the same legal and factual theories. There are no unique defenses to any of the Class members' claims.

73. ***Adequacy.*** Plaintiff will fairly and adequately represent and protect the interests of Class members, and has retained counsel with substantial experience in the prosecution of class actions, as required by Fed. R. Civ. P. 23(a)(4). Plaintiff and his counsel are committed to the vigorous prosecution of this action on behalf of the Class and have the financial resources to do so. Neither Plaintiff nor his counsel have any interests adverse to the Class they seek to represent.

74. ***Superiority.*** A class action is superior to other available method for the fair and efficient adjudication of this controversy, under Fed. R. Civ. P. 23(b)(3). Individual litigation of the claims of all Class members is economically unfeasible and procedurally impracticable, as the damages suffered by individual Class members are relatively small. Class members thus have no interest in individually controlling the prosecution of separate claims against Rand McNally. Individualized litigation also presents the potential for inconsistent or contradictory judgments. Absent a class action, most Class members would find the cost of litigating their claims prohibitive, and would thus have no effective access to the courts or remedy at law. A class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## VII.  CAUSES OF ACTION

### COUNT I

### Violations of the Moss-Magnuson Warranty Act
### (15 U.S.C. §§ 2301-2312 – Written Warranty)

75.     Plaintiff realleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein, to the extent not inconsistent with the claims asserted in this Count.

76.     Congress enacted the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 et seq. ("Magnuson-Moss Act"), in response to widespread consumer complaints regarding misleading and deceptive warranties. The Magnuson-Moss Act imposes civil liability on any "warrantor" for failing to comply with any obligation under written and implied warranties. 15 U.S.C. § 2310(d)(1).

77.     The Magnuson-Moss Act provides a private right of action by purchasers of consumer products against manufacturers or retailers who, inter alia, fail to comply with the terms of an implied or written warranty. 15 U.S.C. § 2310(d)(1). As demonstrated above, Rand McNally has failed to comply with the terms of its express and implied Warranties for its TND 730 and/or TND 740 devices.

78.     The TND 730 and TND 740 GPS devices are "consumer products" as defined by 15 U.S.C. § 2301(1).

79.     Plaintiff and all Class members are "consumers" as defined by 15 U.S.C. § 2301(3).

80.     Rand McNally is a "warrantor" and "supplier" as defined by 15 U.S.C. §§ 2301(4) and (5).

81.     Rand McNally made "written warranties" to Plaintiff and all Class members within the meaning of 15 U.S.C. § 2301(6).

82.     Rand McNally's written warranties made to Plaintiff and all Class members that the devices were free of all defects were the same in all material respects.

83.     Rand McNally knew that the TND 730 and/or TND 740 devices at issue had serious defects, but nevertheless marketed and otherwise sold them with the written Warranty that the devices were free from defects and would perform in the manner and for the purpose that they are intended.

84.     Rand McNally was obligated under the terms of the written Warranty to repair or replace the defective navigation system to ensure the devices were working properly.

85.     Rand McNally has breached its written Warranties, as set forth above, by supplying devices in a condition that does not meet its Warranty obligations, and by failing to repair or replace the defective devices and/or refund the amounts paid by Plaintiff and other Class members to replace the defective devices.

86.     As set forth above, the Warranty fails in its essential purpose and, accordingly, Plaintiff and the Class cannot and should not be limited to the remedies set forth in the written Warranty. Instead, they should be awarded other appropriate relief, including compensatory damages and injunctive relief.

87. Rand McNally had reasonable and adequate notice of Plaintiff's and the Class' claims of breach of express and implied warranty from the sale of the devices.

88. As described above, Rand McNally has received, upon information and belief, numerous complaints and other notices from its customers nationwide advising it of the defect in the devices at issue.

89. Plaintiff has given Rand McNally a reasonable opportunity to cure its failures with respect to its breaches of the written Warranty, and the company has failed to do so. To the extent any member of the Class has not given Rand McNally a reasonable opportunity to cure, any such failure is excused because of Rand McNally's conduct described herein.

90. All jurisdictional prerequisites for this claim have been satisfied.

91. By Rand McNally's conduct, as described herein, including its knowledge of the defective TND 730 and TND 740 devices and actions or omissions in the face of that knowledge, the company has failed to comply with its obligations under its written promises, warranties, and representations.

92. As a result of Rand McNally's breach of its written Warranties, Plaintiff and the Class seek to recover damages caused as a direct result of Rand McNally's breach of its written and implied warranties and its deceitful and unlawful conduct. Plaintiff and the Class are entitled to revoke their acceptance of the TND 730 ands TND 740 devices, and obtain damages under 15 U.S.C. § 2310.

93. The Magnuson-Moss Act also provides for "other legal and equitable" relief. 15 U.S.C. § 2310(d)(1). As a result of Rand McNally's breaches of its express and

-34-

implied warranties, Plaintiff and the Class have been injured and are entitled to equitable/injunctive relief and/or damages in a measure and amount which are to be determined at trial.

94.     Plaintiff and the Class also seek reformulation of Rand McNally's written Warranty to comport with its obligations under the Magnuson-Moss Act and with consumers' reasonable expectations. Additionally, Plaintiff seeks to enjoin Rand McNally from acting unlawfully as further alleged, including discouraging Plaintiff from seeking all available remedies.

95.     The Magnuson-Moss Act also provides for an award of costs and expenses, including attorneys' fees, to prevailing consumers in the Court's discretion. 15 U.S.C. § 2310(d)(2). Plaintiff intends to seek such an award as prevailing consumers at the conclusion of the case.

## COUNT II

### Breach of Express Warranty
### (810 ILCS 5/2-313)

96.     Plaintiff realleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein, to the extent not inconsistent with the claims asserted in this Count.

97.     Rand McNally expressly warranted the TND 730 and TND 740 devices as free from defects in workmanship and materials.

98.     Rand McNally's express warranties covered the TND 730 and TND 740 devices under the circumstances described herein.

99. The express warranty was provided to Plaintiff and members of the Class by Rand McNally and specifically extends to original purchasers of the TND 730 and TND 740 for the period of warranty coverage.

100. Plaintiff and the Class justifiably relied upon Rand McNally's representations and justifiably acted in ignorance of the material facts Rand McNally omitted and concealed when they decided to purchase the devices.

101. Rand McNally has breached its express warranties, as set forth above, by supplying the TND 730 and TND 740 devices in conditions which do not meet the warranty obligations undertaken by Rand McNally, by failing to repair or replace the defect and/or defective parts inherent in the TND 730 and TND 740, and by supplying devices that were defective from the day they were sold, destined to fail prematurely.

102. In addition to having purchased Rand McNally's defective devices, as a direct result of the failure of the devices to perform as warranted, Plaintiff and the Class have also incurred and will continue to incur expenses to repair and/or replace the devices.

103. Rand McNally has received timely notice of the breaches of warranty alleged herein through warranty claims previously made; or by its conduct, inter alia, Rand McNally has otherwise obviated the need for any such notice.

104. In addition, Rand McNally has received, upon information and belief, numerous complaints and other notices from its customers nationwide advising it of the defects described herein in both the TND 730 and TND 740 devices. Despite this notice and Rand McNally's knowledge, the company has failed to provide Plaintiff and

the Class, as a warranty replacement, a product that conforms to the qualities and characteristics that Rand McNally expressly warranted when it sold the devices to Plaintiff and members of the Class.

105.    Any contractual language contained in Rand McNally's express warranty that attempts to limit remedies is unconscionable, fails to conform to the requirements for limiting remedies under applicable law, causes the warranties to fail of their essential purpose, and is, thus, unconscionable and void.

106.    Any terms or language in Rand McNally's Warranty that purports to exclude the exact type of defects that affect Plaintiff's and the Class' devices is unilaterally imposed in a contract of adhesion that is typically provided after the sale, and is thus unconscionable, causing the entire Warranty to fail of its essential purpose.

## COUNT III

### Breach of Implied Warranty of Merchantability
### (810 ILCS 5/2-314)

107.    Plaintiff realleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein, to the extent not inconsistent with the claims asserted in this Count.

108.    Plaintiff and the members of the Class are "buyers" as that term is defined in 810 ILCS 5/2-103.

109.    Rand McNally is a "seller" as that term is defined in 810 ILCS 5/2-103.

110.    The TND 730 and TND 740 devices are "goods," as defined in 810 ILCS 5/2-105.

111.    Rand McNally is a merchant in the sale of the devices to Plaintiff and the Class, pursuant to 810 ILCS 5/2-104. Rand McNally manufactures, markets and sells the devices; thus, Rand McNally provided Plaintiff and the Class with an implied warranty that the TND 730 and TND 740 are both merchantable and fit for the ordinary purposes for which the devices were sold.

112.    Neither device, however, is fit for ordinary purposes for which such navigation systems are to be used because, among other defects, they do not show the correct location of the vehicle, or provide accurate map, route, and point of interest information to Plaintiff and the Class, most notably through a failure to update maps or provide updated maps and display incorrect routes.

113.    As a result, the devices do not meet the expectations of Plaintiff or any other reasonable purchaser of the TND 730 and TND 740 devices as to the manner in which the devices should perform when used for ordinary purposes, because the manner in which the devices perform is so deficient and below a minimum level of quality as to render them unfit for their ordinary use and purpose. By selling the devices, as well as by failing to fix or repair them, Rand McNally has breached the implied warranty of merchantability.

114.    Neither the TND 730 nor the TND 740 conforms to the promises and affirmations uniformly issued by Rand McNally in its sales and marketing materials and warranties.

115.    As alleged herein, Rand McNally's sales of the devices breached the implied warranty of merchantability because the devices failed to function as reliable

GPS devices. The devices are therefore defective, unmerchantable, and unfit for their intended purpose at the time of sale.

116.    Plaintiff and the Class have attempted to use the devices for their intended and ordinary purposes.

117.    Plaintiff and the Class have performed each and every duty required under the terms of the warranties, except as may have been excused or prevented by the conduct of Rand McNally or by operation of law in light of Rand McNally's unconscionable conduct.

118.    Members of the Class have provided timely notice to Rand McNally regarding the problems they experienced with the devices and, notwithstanding such notice, Rand McNally has failed and refused to offer Plaintiff and the Class an effective remedy, or such notice has otherwise been excused by Rand McNally's conduct and operation of law.

119.    In addition, as described above, Rand McNally has received, on information and belief, numerous complaints and other notices from consumers and others advising it of the problems associated with the defective TND 730 and TND 740.

120.    Rand McNally knew or should have known that its TND 730 and TND 740 devices were defective, unmerchantable, and unfit for their intended use or purpose.

121. Rand McNally's conduct in selling and marketing defective truck navigation devices, along with Rand McNally's failure to disclose to Plaintiff and the Class the existence of the defect in the devices, is also a breach of Rand McNally's obligation of good faith and fair dealing.

122. By virtue of the conduct described herein, Rand McNally has breached its implied warranty of merchantability.

123. The Magnuson-Moss Act, 15 U.S.C. § 2308(a), imposes restrictions on a supplier's or manufacturer's ability to disclaim implied warranties for consumer goods. Under the Magnuson-Moss Act, a supplier who makes a written warranty may not disclaim or modify any implied warranty except to limit the duration of the implied warranty to the duration of a written warranty, so long as the limitation is conscionable and is prominently displayed on the face of the express warranty. *See* 15 U.S.C. § 2308(a).[17]

_____

[17]The pertinent text of the statute is as follows:

> § 2308. Implied warranties

> (a) Restrictions on disclaimers or modifications. No supplier may disclaim or modify (except as provided in subsection (b)) any implied warranty to a consumer with respect to such consumer product if (1) such supplier makes any written warranty to the consumer with respect to such consumer product, or (2) at the time of sale, or within 90 days thereafter, such supplier enters into a service contract with the consumer which applies to such consumer product.

> (b) Limitation on duration. For purposes of this title [15 USCS §§ 2301 et seq.] (other than section 104(a)(2)) [15 USCS § 2304(a)(2)] implied warranties may be limited in

-40-

124.    Here, the TND 730 and TND 740 are "consumer goods" within the meaning of the Magnuson-Moss Act. *See* 15 U.S.C. § 2301(1) (defining "consumer product" as "any tangible personal property which is distributed in commerce and which is normally used for personal, family, or household purposes"). Thus, the disclaimer limitations of the Magnuson-Moss Act applies. Therefore, to the extent that Rand McNally might urge that its written Warranty disclaims all implied warranties, this argument must fail as the Magnuson-Moss Act does not permit such broad disclaimers.

125.    Plaintiff and the Class members have been damaged as a direct and proximate result of Rand McNally's breach of the implied warranty.

### COUNT IV

### Violations of the Consumer Fraud and Deceptive Practices Act
### (815 ILCS 505/2)

126.    Plaintiff realleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein, to the extent not inconsistent with the claims asserted in this Count.

------

> duration to the duration of a written warranty of reasonable duration, if such limitation is conscionable and is set forth in clear and unmistakable language and prominently displayed on the face of the warranty.
>
> (c) Effectiveness of disclaimers, modifications, or limitations. A disclaimer, modification, or limitation made in violation of this section shall be ineffective for purposes of this title [15 USCS § 2304(a)] and State law.

*See* 15 USCS § 2308.

-41-

127.    Illinois's Consumer Fraud and Deceptive Business Practices Act ("the Act") prohibits unfair or deceptive acts or practices in the conduct of any trade or commerce, including among others, "the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, . . . whether any person has in fact been misled, deceived, or damaged thereby." 815 Ill. Comp. Stat. § 505/2. The Act also prohibits suppliers from representing that their goods are of a particular quality or grade that they are not.

128.    The devices are "merchandise," as defined in 815 Ill. Comp. Stat. § 505/1(b).

129.    Rand McNally is a "person," as defined in 815 Ill. Comp. Stat. § 505/1©.

130.    Plaintiff and other Class members are "consumers," as defined in 815 Ill. Comp. Stat. § 505/1(e) and used the TND 730 and TND 740 for personal and business use, but not for resale.

131.    Rand McNally had an ongoing duty to all of its customers to refrain from unfair and deceptive practices under the Illinois CFA.

132.    Rand McNally engaged in misleading, false, unfair or deceptive acts or practices that violated the Illinois CFA by representing that the devices have characteristics, uses, benefits, and qualities which they do not have; representing that the devices are of a particular standard and quality when they are not; advertising the devices with the intent not to sell them as advertised; failing to disclose the defects in the devices and their true performance, by marketing the devices as reliable to

-42-

truckers, and of high quality, and by presenting itself as a reputable manufacturer that valued quality and that stood behind its products after they were sold; and otherwise engaging in conduct likely to deceive.

133.    Rand McNally was aware of the defect in the devices when it marketed and sold them to Plaintiff and the Class and failed to disclose this material defect to Plaintiff and the Class. Rand McNally knew or should have known that its conduct violated the Illinois CFA.

134.    Rand McNally knowingly withheld the information regarding the defect in order to continue to sell the devices.

135.    Rand McNally's unfair or deceptive acts or practices were likely to deceive, and did in fact deceive reasonable consumers, including Plaintiff and the Class, about the true quality, efficiency, and value of the devices.

136.    The facts concealed or not disclosed by Rand McNally to Plaintiff and the Class are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase the devices. If Plaintiff and the Class had been aware of the defect in the devices, they would not have bought either of them.

137.    Rand McNally's violations present a continuing risk to Plaintiff as well as to the general public. Rand McNally's unlawful acts and practices complained of herein affect the public interest.

138.    Plaintiff and other Class members were injured as a result of Rand McNally's conduct in that they purchased the devices that were largely unusable as GPS devices, overpaid for those devices, and did not receive the benefit of their

bargain. These injuries are the direct and natural consequence of Rand McNally's misrepresentations and omissions.

139.   Plaintiff and the Class members have been damaged as a direct and proximate result of Rand McNally's failure to disclose a material defect in the devices.

**COUNT V**

**Violations of the Illinois Uniform Deceptive Trade Practices Act**
**(815 ILCS § 510, et seq.)**

140.   Plaintiff realleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein, to the extent not inconsistent with the claims asserted in this Count.

141.   The Illinois Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. § 510/2, prohibits deceptive trade practices, including among others, those "(2) caus[ing] likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services; . . . (5) represent[ing] that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have . . .; (7) represent[ing] that goods or services are of a particular standard, quality, or grade . . . if they are of another; . . . (9) advertis[ing] goods or services with intent not to sell them as advertised; . . . [and] (12) engag[ing] in any other conduct which similarly creates a likelihood of confusion or misunderstanding."

142.   Rand McNally is a "person," as defined in 815 Ill. Comp. Stat. § 510/1(5).

-44-

143. Rand McNally has engaged in deception, fraud, unfair practices, and concealment by the conduct, statements, and omissions described above, and by knowingly and intentionally concealing from consumers that the devices are defective. Accordingly, Rand McNally engaged in unfair or deceptive acts or practices as defined in 815 Ill. Comp. Stat. § 510/2.

144. Accordingly, Rand McNally engaged in unfair or deceptive acts or practices as defined in 815 Ill. Comp. Stat. § 510/2, including representing that the devices have characteristics, uses, benefits, and qualities which they do not have; representing the devices are of a particular standard and quality when they are not; advertising the devices with the intent not to sell them as advertised; and otherwise engaging in conduct likely to deceive.

145. The facts concealed or not disclosed by Rand McNally to Plaintiff and the Class regarding the devices' defects are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase the devices. Had Plaintiff and the Class known about the facts concealed by Rand McNally, they would not have purchased the devices.

146. Plaintiff and the other Class members were injured as a result of Rand McNally's conduct, including but not limited to their purchase of a product they otherwise would not have purchased and them being deprived of the benefit of their bargain. These injuries are the direct and natural consequence of Rand McNally's misrepresentations and omissions.

147.    The injuries suffered by Plaintiff and the Class are greatly outweighed by any potential countervailing benefit to consumers or to competition, nor are they injuries that Plaintiff and the Class should have reasonably avoided.

148.    Plaintiff and the other Class members' injuries were proximately caused by Rand McNally's fraudulent and deceptive business practices.

**COUNT VI**

**Unjust Enrichment**

149.    Plaintiff realleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein, to the extent not inconsistent with the claims asserted in this Count.

150.    Rand McNally received monies as a result of Plaintiff's and Class members' purchases of the devices, and Rand McNally wrongfully accepted and retained these benefits to the detriment of Plaintiffs and the Class.

151.    Rand McNally's enrichment at the expense of Plaintiff and the Class was unjust.

152.    As a result of Rand McNally's wrongful conduct, Plaintiff and the Class are entitled to restitution from and institution of a constructive trust disgorging all profits, benefits, and other compensation obtained by Rand McNally, plus attorneys' fees, costs, and interest thereon.

**VIII.  JURY DEMAND**

153.    Plaintiff requests a jury on all issues so triable.

## IX.  PRAYER FOR RELIEF

Plaintiff, on behalf of himself and all others similarly situated, requests the Court enter judgment against Rand McNally, as follows:

A.    That summons be issued and Rand McNally be required to answer according to law;

B.    That the Court certify the Class proposed herein, appoint the named Plaintiff as the Class Representative for the proposed Class, and appoint the undersigned counsel as Class Counsel;

C.    That Plaintiff and the Class be awarded a declaratory judgment declaring that Rand McNally's conduct alleged herein violated the aforementioned laws and that Rand McNally is financially responsible for notifying all Class members of the problems with the TND 730 and TND 740 devices;

D.    That Plaintiff and the Class be awarded a judgment for all available compensatory or statutory damages, including interest thereon, in an amount to be proven at trial;

E.    That Rand McNally disgorge, for the benefit of the Class, all or part of the ill-gotten profits it received from the sale of devices, or to make full restitution to Plaintiff and the Class;

F.    That Rand McNally be enjoined from further deceptive advertising, marketing, distribution, and sales practices with respect to the devices, and be enjoined from selling the devices in the future unless or until the TND 730 and TND 740 devices can be sold as advertised and warranted, *i.e.*, free from defects and with

regular timely and periodic updates to insure accurate maps, routing, points-of-interest, etc.

G.    That Plaintiff and the Class be awarded a judgment for the attorney fees, litigation expenses and costs of suit;

H.    That Plaintiff and the Class be granted leave to amend their Complaint to conform to the evidence produced at trial; and

I.    That Plaintiff and the Class be awarded such other and further relief as the Court deems proper under the circumstances.

Respectfully submitted, this 21st day of May, 2021.


/s/ Robert J. Palmersheim
Robert J. Palmersheim, Esq.
Email: rjp@thepmlawfirm.com
Anand C. Mathew, Esq.
Email: acm@thepmlawfirm.com
William M. Strom, Esq.
Email: wms@thepmlawfirm.com
PALMERSHEIM & MATHEW LLP
401 N. Franklin Street, Suite 4S
Chicago, Illinois 60654
Tel: 312.705.3625
Fax: 312.878.2890

W. Allen McDonald
Email: amcdonald@lpwpc.com
LACY, PRICE & WAGNER, P.C.
249 North Peters Road, Suite 101
Knoxville, Tennessee 37923
Tel:  865.246.0800
Fax: 865.690.8199

*Attorneys for Plaintiff*