IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MICAHEL VELEZ, individually and on
behalf of all others similarly situated,

        Plaintiff,

      v.

RM ACQUISITION, LLC d/b/a RAND
MCNALLY,

        Defendant.

No. 21-cv-02779

Judge Franklin U. Valderrama

**MEMORANDUM OPINION AND ORDER**

Commercial truck drivers need a GPS system that accurately directs them to relevant points-of-interest along their journey, not to mention the correct route, so they can make their deliveries. Plaintiff Michael Velez (Velez), a commercial truck driver, purchased Defendant Rand McNally's (Rand) TND 730 and TND 740 GPS devices (TND Devices). Velez, however, experienced persistent problems with the TND Devices, ranging from inaccurate maps, misinformation about points-of-interest and poor or unsafe routes. After Rand's attempted repairs of the TND devices were unsuccessful, Velez filed this individual and putative class action against Rand, asserting violations of the Magnuson-Moss Warranty Act (the MMWA), 15 U.S.C. § 2301 *et seq.*, related warranty claims, claims for violations of consumer protection statutes, and Illinois common law claims. R. 1, Compl.[1]

---

[1]Citations to the docket are indicated by "R." followed by the docket number or filing name, and where necessary, a page or paragraph citation.

Rand moves to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). R. 21, Mot. Dismiss. Rand also moves to strike the class allegations of the Complaint. R. 23, Mot. Strike. For the reasons set forth below, the Court grants in part and denies in part the Motion to Dismiss and strikes the Motion to Strike as moot.

## Background

Rand manufactures, markets, and sells the TND 730 and TND 740 GPS devices. Compl. ¶¶ 12–14.[2] The TND devices came with a one-year warranty, which provided that they "will be free of defects in workmanship and materials for a period of one (1) year from the date of first consumer purchase." *Id.* ¶ 28. Via labels and packaging, Rand advertised and represented that the TND 730 came with "Lifetime Maps" that "provides the original purchaser of the device with an annual base map update subject to the terms and conditions described at randmcnally.com/lifetimemaps." *Id.* ¶ 33. While the terms and conditions state that "Lifetime" may be limited to 36 months after the initial release, the packaging states that "Lifetime Maps and Traffic Everywhere" updates are provided to purchasers "as long as you own the TND™." *Id.* (emphasis removed).

Velez, a Tennessee resident and commercial truck driver, purchased the TND 730 in 2014 at a truck stop for approximately $399.99. Compl. ¶¶ 14, 29. In 2017, Velez purchased a new TND 740 at a different truck stop in Illinois for approximately $499.00. *Id.* ¶ 29. Velez experienced persistent problems with both devices, including,

---

[2]The Court accepts as true all of the well-pled facts in the Complaint and draws all reasonable inferences in favor of Velez. *Platt v. Brown*, 872 F.3d 848, 851 (7th Cir. 2017).

but not limited to, displaying his location on parallel or non-existent roads and re-routing him to wrong locations, and taking him in the opposite direction of where he was headed. *Id.* ¶ 30. In addition to causing substantial delays, Velez has been left without a reasonable way to navigate to his destination in his truck. *Id.*

Velez shipped both TND Devices to Rand for repairs. Compl. ¶ 32. The repairs, however, did not provide Velez with better directions, maps, routing, or point-of-intertest information, or updated maps, and neither unit worked any better than they had originally. *Id.* ¶ 32. Velez repeatedly contacted Rand to complain about the problems he was experiencing with the TND Devices. *Id.* ¶ 34. Rand, in response to an April 3, 2021 email inquiry from Velez, informed him that "there will be no future updates provide for the TND 730 devices." *Id.* ¶ 35. On November 16, 2020, and again in January 2021, Velez contacted Rand and complained about the lack of updates for the TND 740. *Id.* ¶¶ 37, 39. Rand informed Velez that the updates would be forthcoming. *Id.* ¶ 39. The updates were never provided. *Id.* ¶ 40.

Velez filed this class-action suit against Rand. Velez proposes a class consisting of "[a]ll current and former purchasers of the Rand McNally TND and/or TND 740 in the United States" (the Class). Compl. ¶ 65. Velez asserts the following causes of action on behalf of himself and the Class: (1) violations of the MMWA (Count I); (2) breach of the express warranty, 810 ILCS 5/2-313 (Count II); (3) breach of the implied warranty of merchantability, 810 ILCS 5/2-314 (Count III); (4) violations of the Illinois Consumer Fraud and Deceptive Practices Act (ICFA), 815 ILCS 505/2; (5) violations of the Illinois Uniform Deceptive Trade Practices Act (UDTPA), 815 ILCS

§ 510, *et seq*. (Count V); (6) unjust enrichment (Count VI). Compl. Before the Court is Rand's Motion to Dismiss the Complaint under Rules 12(b)(1) and 12(b)(6). Mot. Dismiss.

## Legal Standard

A Rule 12(b)(1) motion tests whether the court has subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Standing is an "essential component of Article III's case-or-controversy requirement," and the plaintiff "bears the burden of establishing standing . . . in the same way as any other matter on which the plaintiff bears the burden of proof . . . ." *Apex Digit., Inc. v. Sears Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009). In order to survive a Rule 12(b)(1) motion, the plaintiff bears the burden of establishing subject matter jurisdiction. *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588–89 (7th Cir. 2014). When deciding a facial challenge to subject matter jurisdiction—that is, when the defendant argues that the plaintiff's *allegations* as to jurisdiction are inadequate—"the court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff." *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015) (citing *Apex Digit.*, 572 F.3d at 443–44).

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Under Rule 8(a)(2), a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R.

4

Civ. P. 8(a)(2). To survive a motion to dismiss, a complaint need only contain factual allegations, accepted as true, sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

## Analysis

### I.    Magnuson-Moss Warranty Act (Count I)

### A. Subject Matter Jurisdiction

In Count I, Velez alleges that Rand violated the MMWA by breaching its written warranties by supplying the TND Devices in conditions that do not meet its warranty obligations. Compl. ¶ 93. Velez and the Class seek injunctive relief and damages. *Id*. Rand argues that Count I must be dismissed because the Court lacks subject matter jurisdiction over Count I, as the Complaint does not satisfy the numerosity requirement for federal subject matter over a MMWA class action. R. 22, Memo. Dismiss at 4. Predictably, Velez insists that the Court has subject matter jurisdiction over Count I. R. 39, Resp. at 4.

Before a court can address the merits of a dispute, it must first determine whether it has subject matter jurisdiction. *See Scott Air Force Base Properties, LLC*

*v. Cnty. of St. Clair, Ill.*, 548 F.3d 516, 520 (7th Cir. 2008). Subject matter jurisdiction is the "first issue in any case." *Miller v. Southwest Airlines Co.*, 926 F.3d 898, 902 (7th Cir. 2019). "The requirement that jurisdiction be established as a threshold matter springs from the nature and limits of the judicial power of the United States and is inflexible and without exception." *Cook v. Winfrey*, 141 F.3d 322, 325 (7th Cir. 1998) (cleaned up).[3]

The MMWA provides that "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief . . . ." 15 U.S.C. § 2310(d)(1). The MMWA "is a consumer protection statute that requires transparency in warranties on consumer products and establishes minimum criteria for different types of warranties and warranty-like products." *Ware v. BestBuy Stores, L.P.*, 6 F.4th 726, 728 (7th Cir. 2021). The MMWA "requires that if a warrantied *consumer* good cannot be repaired, the written warranty must give *consumer* a choice of remedy: either replacement or a refund of the purchase price, less reasonable depreciation based on actual use." *Id.* at 728–29 (emphases in original). The MMWA provides a private right of action by purchasers of consumer products against manufacturers or retailers who fail to comply with the terms of a written or implied warranty. 15 U.S.C. § 2310(d)(1). Under the MMWA, a consumer who is damaged by

---

[3]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

a warrantor's failure to comply with the obligations under a written or implied warranty may sue for damages in two alternative venues: (1) "any court of competent jurisdiction in any State or the District of Columbia"; and (2) "an appropriate district court of the United States." *Id.* § 2310(d)(1)(A)–(B). A plaintiff, however, may not file suit under the MMWA in federal district court:

> (A) if the amount in controversy of any individual claim is less than the sum or value of $25;
> (B) if the amount in controversy is less than the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit; or
> (C) if the action is brought as a class action, and the number of named plaintiffs is less than one hundred.

*Id.* § 2310(d).

It is the 100-plaintiff requirement that is at issue in this case. *See* Memo. Dismiss at 5–6. That limitation applies only to actions filed in federal district courts. *Id.* § 2310(d)(3).

Velez does not invoke the Court's jurisdiction under the MMWA. Instead, he relies on the Class Action Fairness Act of 2005 (CAFA) for jurisdiction. Compl. ¶ 9 (citing 28 U.S.C. § 1711 *et seq.*; *id.* § 1332(d)); *see also* R. 39, Resp. at 4.

CAFA grants district courts with original jurisdiction over any class action in which the amount in controversy exceeds the sum of $5,000,000 in the aggregate; there is minimal diversity among the parties, i.e., any class member and any defendant are citizens of different states; and there are at least 100 members in the class. 28 U.S.C. § 1332(d)(2), (5). "CAFA was enacted to grant broad federal jurisdiction over class actions and establishes narrow exceptions to such jurisdiction."

*Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 618 (7th Cir. 2012) (cleaned up); *see also* S. Rep. No. 109–14, at 43, 45 (2005) (explaining that CAFA's provisions granting federal court jurisdiction should be read broadly).

The Seventh Circuit has yet to address whether a class action based on violations of the MMWA that does not satisfy the MMWA's numerosity requirement but satisfies CAFA may be brought in federal court. The closest the court came to the issue was in *Ware*, where the court noted a "split in authority about the interaction between the class requirements under CAFA and the Magnuson-Moss Warranty Act." 6 F.4th at 733 n.2. The Seventh Circuit, however, found that it did not need to decide the issue because it did not affect the outcome in that case. *Id.* The only two circuits to have addressed the issue have reached differing results.

In *Kuns v. Ford Motor Co.*, 543 F. App'x 572, 574 (6th Cir. 2013), cited by Velez, the Sixth Circuit in an unpublished opinion held that a plaintiff whose class action MMWA claims satisfy the requirements of CAFA establishes jurisdiction, even if it does not meet the MMWA's numerosity requirement. The court noted that, while the Sixth Circuit had yet to weigh in on the issue, numerous district courts had generally "held that the CAFA effectively supersedes the MMWA's more stringent jurisdictional requirements." *Id.* (citing *Keegan v. Am. Honda Motor Corp.*, 838 F. Supp. 2d 929, 954–55 (C.D. Cal. 2012); *Stella v. LVMH Perfumes & Cosmetics USA, Inc.*, 564 F. Supp. 2d 833, 837–38 (N.D. Ill. 2008); *McCalley v. Samsung Elecs Am., Inc.*, 2008 WL 878402, at *5 (D.N.J. Mar. 31, 2008); *Chavis v. Fidelity Warranty Servs., Inc.*, 415 F. Supp. 2d 620, 626 (D.S.C. 2006)). The Sixth Circuit reasoned that

CAFA renders a district court a "court of competent jurisdiction" and permits it to retain jurisdiction where CAFA's requirements are met, even where MMWA's requirements are not. *Id.*

The Ninth Circuit, on the other hand, more recently held that that CAFA may not be used to evade the specific numerosity requirement of the MMWA. In *Floyd v. Am. Honda Motor Co.*, 966 F. 3d 1027, 1033–35 (9th Cir. 2020), cited by Rand, the court found that it lacked subject matter jurisdiction over the MMWA claim because the plaintiff did not satisfy the MMWA's numerosity requirement. In addressing the interplay between CAFA and the MMWA, the court observed that "CAFA allows certain claims to proceed under diversity jurisdiction, while the MMWA provides for a distinct claim to be brought in federal court for certain state-law warranty violations." *Id.* at 1035. The court reasoned that "construing CAFA to provide jurisdiction over MMWA claims despite Plaintiffs' failure to satisfy the plain-language requirement of at least one hundred named plaintiffs would have the effect of overriding a part of the MMWA." *Id.* The court, however, found no evidence that by enacting CAFA, Congress intended "to repeal or alter parts of the MMWA's jurisdictional requirements." *Id.*

District courts within the Seventh Circuit that have addressed the issue are also split. Many courts, including this Court, have held that CAFA provides alternative jurisdiction over a plaintiff's MMWA claim, notwithstanding the failure to satisfy the MMWA's numerosity requirement. *See, e.g.*, *Castle v. Kroger Co.*, 2022 WL 4776319, at *20 (E.D. Wis. Oct. 3, 2022); *Van Zeeland v. Rand McNally*, 532 F.

Supp. 3d 557, 564 (N.D. Ill. 2021); *Stella v. LVMH Perfumes & Cosms. USA, Inc.*, 564 F. Supp. 2d 833, 838 (N.D. Ill. 2008); *Clark v. Wynn's Extended Care*, 2007 WL 922244, at *4–5 (N.D. Ill. Mar. 23, 2007) (citing *Chavis*, 415 F. Supp. 2d at 626); *see also Corn v. Target Corp.*, No. 22-cv-04700 Dkt. 18 (N.D. Ill. Nov. 7, 2022).

Other district courts, conversely, following *Floyd*'s reasoning, have held that CAFA does not provide an independent basis for jurisdiction where the plaintiff's MMWA claim fails to satisfy the MMWA's numerosity requirement. *See, e.g.*, *Corn v. Home Depot, Inc.*, 22-cv-04627 Dkt. 24 (N.D. Ill. Jan. 25, 2023)[4]; *Wienhoff v. Conagra Brands, Inc.*, 2022 WL 4103974, at *7 (S.D. Ill. Sept. 8, 2022); *Johnston v. Kashi Sales, LLC*, No. 21-CV-00441-NJR, 2022 WL 4103973, at *11 (S.D. Ill. Sept. 8, 2022). Those courts find that the plain language of the MMWA requires satisfaction of the numerosity requirement.

The Court finds the reasoning of *Clark*, 2007 WL 922244, at *4–5, and by extension *Chavis*, 415 F. Supp. 2d at 626, more persuasive. As the courts finding alternative federal jurisdiction have found, CAFA was enacted to expand federal jurisdiction over class actions and when Congress enacted CAFA, it did so with the knowledge of the MMWA's jurisdictional requirements. *See Barclay v. ICON Health & Fitness, Inc.*, 2020 WL 6083704, at *7 (D. Minn. Oct. 15, 2020).[5] Therefore, "once

---

[4]The court in *Corn v. Home Depot, Inc.* issued an oral ruling, and although the transcript is not available on the docket in that case, it was filed as part of the plaintiff's notice of supplemental authority in *Corn v. Target*, and thus is publicly available. *See* 22-cv-04627 Dkt. 22-1.

[5]Numerous out-of-district courts, as well as the court in *Corn v. Home Depot*, have also declined to follow *Floyd* and have found that CAFA provides alternative jurisdiction over MMWA claims even where plaintiff fails to meet MMWA's numerosity requirement. *See Corn*

10

plaintiffs have satisfied CAFA, the MMWA's additional requirements do not apply." *Id.* The Court follows this reasoning and finds that CAFA provides an alternative basis for federal court jurisdiction over a MMWA claim, even where the MMWA claims fails to satisfy MMWA's numerosity requirement.

Having determined that CAFA may provide alternative jurisdiction, the Court now turns to whether Velez has pled the Court's jurisdiction under CAFA. While Rand does not argue that CAFA does not afford subject matter jurisdiction, the Court has a duty to independently assure itself of its jurisdiction before proceeding to the merits. *Foster v. Hill*, 497 F.3d 695, 696–697 (7th Cir. 2007); *see also Evergreen Square of Cudahy v. Wisconsin Hous. & Econ. Dev. Auth.*, 776 F.3d 463, 465 (7th Cir. 2015) ("Parties cannot confer subject-matter jurisdiction by agreement, and federal courts are obligated to inquire into the existence of jurisdiction *sua sponte*.") (cleaned up). Velez is a citizen of Tennessee, and Rand is an Illinois corporation with headquarters in Chicago, Illinois; the amount in controversy exceeds $5 million in the aggregate; and Velez alleges that there are more than 100 potential class members. Compl. ¶¶ 9, 14–15. This is all that CAFA requires. Accordingly, the Court finds that it has subject matter jurisdiction under CAFA.

## B. Sufficiency of Claim

---

*v. Home Depot, Inc.*, 22-cv-04627 Dkt. 24; *Prince v. Johnson Health Tech Trading, Inc.*, 2023 WL 1299252, at *3 (W.D. Va. Jan. 31, 2023) (collecting cases and declining to follow *Floyd*); *Dack v. Volkswagen Grp. of Am*, 565 F. Supp. 3d 1135, 1143 (W.D. Mo. 2021) (declining to follow *Floyd*); *see also LeFlar v. HP, Inc.*, 2022 WL 5028362 (E.D. Ark. Oct 4, 2022) (declining to follow *Floyd*). *LeFlar* was reversed by the Eighth Circuit on other grounds, and because neither party challenged the conclusion that CAFA provides alternative jurisdiction over MMWA claims, the Eighth Circuit "assume[d] without deciding that it is correct." *Leflar v. Target Corp.*, 57 F.4th 600, 604 n.1 (8th Cir. 2023).

Rand argues in the alternative, that should the Court find it has subject matter jurisdiction over the MMWA claim, Velez fails to state a claim because the TND Devices are not "consumer products" governed by the MMWA. Memo. Dismiss 14. As Rand points out, the MMWA only provides a private right of action to purchasers of "consumer products," defined as products "normally used for personal, family or household purposes." *Id.* (quoting 15 U.S.C. § 2301(1)). Velez, submits Rand, does not allege—nor can he allege—that the TND devices are normally used for personal, family or household purposes. *Id.* Because the normal use of the TND Devices is commercial, reasons Rand, they are not "consumer product[s]" under the MMWA. *Id.*

Velez disagrees, arguing that Federal Trade Commission regulations are an aid in interpreting the MMWA, and those regulations make clear that the scope of "consumer products" is broad. Resp. at 16 (citing 16 C.F.R. § 700.1(a)–(b)). In determining "normal use" for a class of products, asserts Velez, courts often turn to a common sense understanding of the product. *Id.* (citing *Ruelas v. Freightliner, LLC*, 2008 WL 552445, at *4 (E.D. Cal. Feb. 27, 2008)). He argues that the TND Devices are part of a broader class of GPS products, and although GPS products *can* be used for commercial purposes, as a class of products, they are "normally used for personal, family, or household purposes." *Id.* at 17 (quoting 15 U.S.C. § 2301).

As stated above, the MMWA defines "consumer products" as "any personal property . . . which is normally used for personal, family, or household purposes." 15 U.S.C. § 2301(1). "The implementing regulations explain that this definition encompasses all products commonly used for consumer purposes, regardless of their

actual use by the individual purchaser." *Kwiatkowski v. Volvo Trucks N. Am., Inc.*, 500 F. Supp. 2d 875, 876 (N.D. Ill. 2007) (citing 16 C.F.R. § 700.1(a)). The Seventh Circuit has recognized that in evaluating whether a product is a "consumer product," the "[a]nalysis must be more fine-grained." *Waypoint Aviation Servs. Inc. v. Sandel Avionics, Inc.*, 469 F.3d 1071, 1072 (7th Cir. 2006). In *Waypoint*, the district court dismissed the MMWA claim, finding that an airplane could not be a "consumer product," even if its principal use was for personal purposes. *Id.* The Seventh Circuit reversed, finding that "airplane" was too broad of a category, and instead the district court should have looked to a sub-class of products. *Id.* ("Just as personal cars are consumer products even though 60–passenger busses are not, single-engine planes used for personal transport or recreation may be consumer products even though Antonov 225s and skycrane helicopters are not.").

Rand urges the Court to follow the directive in *Waypoint* and look not to the class of GPS products as a whole, but rather to the subclass of TND products designed for and marketed to commercial truck drivers. R. 42, Reply at 12–13. In Reply, Rand argues that *Tasion Communications, Inc. v. Ubiquiti Networks, Inc.*, 2014 WL 1048710 (N.D. Cal. Mar. 14, 2014), an out-of-Circuit case, is instructive and warrants dismissal of Count I. In *Taison*, the plaintiffs purchased the defendant's ToughCable Ethernet cable, which the defendant advertised as a cable that would perform in even the most brutal environment. *Id.* at *11. The plaintiffs filed suit under the MMWA alleging that, contrary to defendant's assertions, the cable was unsuited for outdoor use. *Id.* The defendant moved to dismiss, arguing, among other things, that the cables

at issue were not "consumer products" for purposes of the MMWA. *Id*. at *10–11. The court granted the motion, rejecting the plaintiffs' argument that the TOUGHCables are "consumer products" because they are nothing more than a Cat5e cable—a common ethernet connection that most people will use in their homes to connect their computers to a network or the internet. *Id*. at *11–12. The court noted that a run-of-the mill Cat5e cable constitutes a "consumer product." *Id*. at *12. But the plaintiffs' case, observed the court, was premised on the allegations that the TOUGHCables were designed and marketed not to be simple Cat5e cables, rather, they were "commercial-grade, shielded ethernet cables sold in 1000 ft long spools," qualities that made them "attractive to Plaintiffs." *Id*. The court, relying on *Waypoint*, accordingly found that, for purposes of determining whether the TOUGHCables were consumer products for purposes of the MMWA, it needed to look not to the broader class of Cat5e ethernet cables, but to a subclass of commercial-grade, shielded cables, finding that that subclass was for commercial, not consumer use. *Id*.

Velez, on the other hand, cites to *Fish Farms P'ship v. Winston-Weaver Co. Inc.*, 2010 WL 1925043, at *2 (E.D. Tenn. May 12, 2010), another out-of-Circuit case in which the court found that fertilizer is commonly used for "personal, family, or household purposes," so it mattered not that the plaintiff used the fertilizer for commercial purposes. Nothing in the court's recitation of the allegations of the complaint showed that the fertilizer at issue was specifically designed for or marketed to commercial farmers rather than the everyday consumer. *See id*. at *1.

Here, as Rand points out, the Complaint alleges that the TND devices were designed for and sold to "commercial truck drivers" and "commercial truckers." Memo. Dismiss at 14 (citing Compl. ¶¶ 22–23, 26). Velez alleges that the TND devices "touted features truck drivers would find useful, *e.g.*, . . . '35% more truck routing information than other GPS units,' [and] 'Truck-Specific Routing . . . .'" Compl. ¶ 26; *see also id.* ¶ 24 (TND 730 included "'[d]etailed information on truck stops, weigh stations, service and repair,' and 'Select services – Filter search results for truck stops and service locations by the amenities available.'"). Construing the allegations in the light most favorable to Velez and resolving any ambiguity as to whether a particular product is covered by the definition of consumer products in favor of coverage, *see* 16 C.F.R. § 700.1(a), the Court finds that the TND Devices are not consumer products as defined by MMWA. Keeping in mind the Seventh Circuit's instruction that the Court must employ a "fine-grained" approach to determine the category of analysis, the Court agrees that GPS products generally is too broad a category. The TND Devices—which have features like "Truck-Specific Routing" and "detailed information on truck stops" that are aimed specifically at commercial truck drivers but are useless to an ordinary consumer—are not "consumer products" "simply because, stripped of everything that made them distinctive (and attractive to [Velez]), they are nothing more than [GPS products]." *Tasion Commc'ns*, 2014 WL 1048710, at *1. That is, the normal and ordinary use of the TND Devices is to provide a GPS system to commercial truck drivers. Accordingly, the Court grants Rand's Motion to

Dismiss the MMWA claim (Count I) without prejudice. The Court turns next to the breach of warranty claims.

## II. Breach of Express Warranty (Count II)

Next, Rand takes aim at the express and implied warranty claims (Counts II and III), and argues that they time-barred with respect to the TND 730. Memo. Dismiss at 13. The statute of limitations is an affirmative defense. Fed. R. Civ. P. 8(c)(1). And plaintiffs "need not anticipate and attempt to plead around all potential defenses." *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004). A plaintiff can plead himself or herself out of court on a statute of limitation basis, however, if the face of the complaint reveals that the claim is time-barred. *Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 383 (7th Cir. 2010); *see also Small v. Chao*, 398 F.3d 894, 898 (7th Cir. 2005) ("Although the statute of limitations is ordinarily an affirmative defense that must be pleaded under Fed. R. Civ. P. 8(c), a district court may dismiss under Rule 12(b)(6) something that is indisputably time-barred.") (cleaned up).

Rand points out that Velez alleges that he purchased his TND 730 in 2014. The statute of limitations for breach of warranty claims is four years. 810 ILCS 5/2-725(1). Velez concedes that dismissal is appropriate for his breach of warranty claims relative to the defect in the TND 730 GPS device. Resp. at 15. Therefore, the Motion to Dismiss is granted as to the TND 730. To the extent that Rand argues that the breach of warranty claims are time-barred as to the TND 740, the Court finds that the face of the Complaint does not reveal that the claims are "indisputably time-

barred." *See Small*, 398 F.3d at 898. At this stage, the Court finds that Velez's breach of warranty claims as to the TND 740 are timely. Accordingly, the Court addresses Rand's arguments as to the merits of Counts II and III as to the TND 740 only.

The Court now turns to whether Velez has adequately pled a breach of express warranty claim. In Count II, Velez claims that Rand "expressly warranted the TND 730 and TND 740 devices as free from defects in workmanship and materials" and that Rand breached the express warranty created by the Illinois Uniform Commercial Code (the UCC), 810 ILCS 5/2-313 by supplying the TND Devices[6] in conditions that do not satisfy the warranty obligations undertaken by Rand. Compl. ¶¶ 97, 101.

Under the UCC, "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." 810 ILCS 5/2-313(1)(a). "To state a claim for breach of an express warranty under Illinois law, the complaint must allege (1) the terms of the warranty; (2) a breach or failure of the warranty; (3) a demand upon the defendant to perform under the terms of the warranty; (4) a failure by the defendant to do so; (5) compliance with the terms of the warranty by the plaintiff; and (6) damages measured by the terms of the warranty." *Lambert v. Dollar General Corp.*, 2017 WL 2619142, at *2 (N.D. Ill. June 16, 2017).

Rand does not challenge the existence of an express warranty (the Warranty). Instead, it contends that Velez does not state a plausible basis for this claim, because

---

[6]As noted above, the Court finds that Velez's breach of express and implied warranty claims as to the TND 730 are time-barred. To the extent the Court uses the term "TND Devices" in this Section or the Section below, *see infra* Section III, it refers only to the TND 740.

he does not adequately allege that he notified Rand of any alleged defect prior to the expiration of the TND 740's one-year warranty or gave Rand an opportunity to repair or replace the GPS device within the warranty period. Memo. Dismiss at 10. Rather, notes Rand, Velez alleges that he returned his TND 740 to Rand at least one year after the one-year warranty expired. *Id.* Courts in this District, asserts Rand, have rejected similar claims. *Id.* (citing *Darne v. Ford Motor Co.*, 2017 WL 3836586, at *5 (N.D. Ill. Sept. 1, 2017) (*Darne II*)).

Velez responds that he has adequately pled a breach of express warranty claim because the Warranty fails of its essential purpose and its limiting terms are unenforceable as unconscionable. Resp. at 7–8. Under the UCC, an exclusive remedy may be set aside if it fails of its essential purpose. UCC § 2-719(2); *see also Razor v. Hyundai Motor Am.*, 854 N.E.2d 607, 618 (Ill. 2006). "An exclusive remedy fails of its essential purpose when the circumstances existing at the time of the agreement have changed so that the enforcement of the limited remedy would essentially leave the plaintiff with no remedy at all.'" *In re Rust-Oleum Restore Mktg., Sales Practices & Prod. Liab. Litig.*, 155 F. Supp. 3d 772, 790 (N.D. Ill. 2016). "It is unusual for a remedy to fail of its essential purpose, but this typically occurs when a contract's primary remedy is repair or replacement of defective parts, and this remedy fails to put the goods in their warranted condition." *MNdustries, Inc. v. MC Mach. Sys., Inc.*, 2019 WL 1317744, at *2–3 (N.D. Ill. Mar. 21, 2019) (cleaned up). A limited repair or replace remedy can also fail of its essential purpose "when the seller is unable or unwilling to repair or replace in a reasonable time." *S. Fin. Grp., LLC v. McFarland State Bank*,

763 F.3d 735, 741 (7th Cir. 2014) (cleaned up). "When a contract contains a limitation of remedy but that remedy fails of its essential purpose, it is as if that limitation of remedy does not exist for purposes of the damages to which a plaintiff is entitled for breach of warranty." *Razor*, 854 N.E.2d at 618. The issue of whether a limited warranty has failed of its essential purpose is usually a fact-driven question not appropriately resolved on a motion to dismiss. *Rust-Oleum*, 155 F. Supp. 3d at 790; *see also Enhance A Colour Corp. v. Dainippon Screen Graphics (USA), LLC*, 2015 WL 514938, at *4 (N.D. Ill. Feb. 6, 2015).

Velez argues that the allegations of the Complaint establish that the warranty failed of its essential purpose due to inherent defects in the TND Devices, as well as Rand's repeated failure to fix the defect and knowledge that nothing could fix the device failures. Resp. at 7 (citing Compl. ¶¶ 6, 50–51, 54). Rand retorts that Velez's allegation that Rand knew it could not successfully fix the TND Devices' defects is conclusory, and therefore his argument that the warranty failed of its essential purpose is not plausible. Reply at 3 & n.2 (citing *Ellison Techs., Inc. v. Radical Firearms, LLC*, 2019 WL 5963612, at *4 (N.D. Ill. Nov. 12, 2019)). Rand additionally points out that Rand had *no* opportunity to repair or replace Velez's defective TND 740 during the one-year warranty period, as Velez alleges he first mailed the TND 740 to Rand in November 2019, more than a year after he purchased it in 2017. Compl. ¶ 31 n.6

Reading the allegations in the Complaint in the light most favorable to Velez, the Court finds that it adequately alleges that Rand knew the TND Devices' inherent

defects could not be fixed. To find otherwise would be to disregard the allegations of the Complaint. *See Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 827 & n.7 (7th Cir. 2015) ("[T]he plausibility standard does not allow a court to question or otherwise disregard nonconclusory factual allegations simply because they seem unlikely."). Although sparce, the Complaint contains allegations that Rand knew the products were defective due to negative online reviews, including at least one review posted in October 2017, and additional reviews posted on unknown dates. *See* Compl. ¶ 43. At this stage, the Court finds that Velez has done enough to allege that Rand knew or should have known that the TND 740 was defective. *See, e.g.*, *Redmon v. Whirlpool Corp.*, 2020 WL 9396529, at *4 (N.D. Ill. Apr. 28, 2020). Therefore, based on the allegations of the Complaint, Velez has adequately pled that the limitation of remedy—specifically, the limited "repair or replace" remedy—failed of its essential purpose because the TND 740 could not be fixed and any replacement would also be defective.

It is worth noting that Rand is correct that the Complaint does not allege that Velez sent the TND 740 to Rand during the one-year warranty period, so the repair and replace limited remedy does not fail of its essential purpose because Rand took too long or was unwilling to repair or replace the device. Reply at 3. Rand therefore argues that because it had no opportunity to repair or replace the allegedly defective TND 740 within the Warranty period, there is no "question of the fact for the jury" as to whether Rand was unable or unwilling to repair the device in a reasonable time and the limited Warranty does not fail of its essential purpose. *Id.* (citing *S. Fin. Grp.*,

763 F.3d at 741 (applying Wisconsin law); *Zwicky v. Freightliner Custom Chassis Corp.*, 867 N.E.2d 527, 535 (Ill. App. Ct. 2007)). Both cases Rand cites in support of this proposition, however, were decided at summary judgment, so they are of limited use. And, as discussed above, Velez alleges that sending the TND 740 to Rand for repair would have been futile, as Rand would be unable to repair or replace the device such that it would be in the condition warranted by Rand. At this stage, that is enough to allege that the repair and replace limitation of the Warranty failed of its essential purpose.

That does not end the analysis as to the breach of express warranty claim, however, given the limited one-year duration of the Warranty. *See* Compl. ¶ 28; *see also* R. 22-1, Warranty.[7] Under Illinois law, "express warranties of limited duration cover only defects that become apparent during the warranty period." *Evitts v. DaimlerChrysler Motors Corp.*, 834 N.E.2d 942, 950 (Ill. App. 2005).

Like his arguments in support of the Warranty's failure of its essential purpose, Velez contends that the one-year durational limitation of the Warranty is unconscionable because, when Velez and the Class purchased the TND Devices, Rand knew of the defects based on customer complaints and customer reviews from about 2015 to 2019. Resp. at 9 (citing Compl. ¶¶ 6, 46–52, 88, 104, 119). "Under Illinois law, a contractual clause 'may be unenforceable if it is either procedurally or substantively unconscionable.'" *Singer v. Sunbeam Prod., Inc.*, 2016 WL 1697777, at *4 (N.D. Ill.

---

[7]The Court takes judicial notice of the Warranty because Velez discuss the Warranty throughout the Complaint, and because the Warranty is central to Velez's claims. *See Mueller v. Apple Leisure Corp.*, 880 F.3d 890, 895 (7th Cir. 2018); *Facebook, Inc. v. Teachbook.com LLC*, 819 F. Supp. 2d 764, 773 (N.D. Ill. 2011).

Apr. 28, 2016) (quoting *Phoenix Ins. Co. v. Rosen*, 949 N.E.2d 639, 647 (Ill. 2011)). "Substantive unconscionability refers to contract terms which are inordinately one-sided in one party's favor." *Darne v. Ford Motor Co.*, 2015 WL 9259455, at *7 (N.D. Ill. Dec. 18, 2015) (*Darne I*) (cleaned up). "Procedural unconscionability refers to both a situation where a term is so difficult for a plaintiff to find or understand that he cannot have been aware he was agreeing to it and also to a plaintiff's lack of bargaining power or lack of meaningful choice." *Id.* Velez does not specify whether his unconscionability arguments are procedural or substantive. *See* Resp. at 9.

As Velez points out, some courts have found that "resolution of whether an express warranty is unconscionable may involve issues of fact which preclude resolution on a motion to dismiss." *Rust-Oleum*, 155 F. Supp. 3d at 794. That may be true, but a plaintiff must still "pass[ ] the pleading threshold for unconscionability" to survive a motion to dismiss. *Stravropoulos v. Hewlett-Packard Co.*, 2014 WL 2609431, at *3 (N.D. Ill. June 9, 2014); *see also Darne I*, 2015 WL 9259455, at *7 n.9 (rejecting plaintiff's argument that it was "premature to decide the unconscionability question on a motion to dismiss" and addressing the "adequacy of the allegations of unconscionability"). Accordingly, the Court addresses whether Velez's allegations supporting his unconscionability argument are adequate to survive the Motion to Dismiss.

As discussed above, the crux of Velez's argument as to the unconscionability of the warranty's one-year duration is that Rand knew that the TND 740 was defective when Velez bought it in 2017, based on negative reviews about the device's defects.

22

Resp. at 9 (citing Compl. ¶¶ 6, 46–52, 88, 104, 119). The Court acknowledges that some courts within this District have found such allegations alone sufficient to allege substantive unconscionability. *See Singer*, 2016 WL 1697777, at *5 (plaintiff's allegation that defendants "knew or should have known that the afore-identified humidifier was prone to an unreasonable risk of starting a fire as well as electrical failure" was sufficient to plead unconscionability such that breach of warranty claim survived motion to dismiss) (cleaned up); *see also Rust-Oleum*, 155 F. Supp. 3d at 795 (denying motion to dismiss because plaintiff's allegations allowed a reasonable inference that defendant-seller knew of the product's latent defect where the complaint alleged consumer complaints about the product during the relevant time period and "factual inquiries exist as to the relationships between and relative positions of the parties, the adequacy of the bargaining position, and the existence of meaningful alternatives available to Plaintiffs"). But, as explained in *Davidson v. Apple, Inc.*, cited by Rand in Reply, many other cases applying Illinois law have suggested that a "defendant's alleged knowledge of a defect is but one factor to consider in determining whether limitations in a warranty provision are unconscionable." 2017 WL 3149305, at *22 (N.D. Cal. July 25, 2017) (citing, among other cases, *Darne I*, 2015 WL 9259455, at *5). Like the court in *Davidson*, the Court finds the latter line of cases to be more persuasive.

Here, although Velez alleges that Rand knew about the TND 740's defect at the time of sale, this factor does not weigh heavily in favor of finding substantive unconscionability in this case. The warranty "acknowledg[es] the possibility of latent

defects" because it covers "defects in workmanship and materials for a period" of only one year. *Schiesser*, 2017 WL 1283499, at \*3 (N.D. Ill. Apr. 6, 2017); *Darne I*, 2015 WL 9259455, at \*8 (noting that, in providing a limited warranty, "Ford expressly acknowledged that parts of its vehicles might be defective"). And Velez does not allege that Rand made any changes to its warranty because of the defects of the TND Devices. *Davidson*, 2017 WL 3149305, at \*22 (citing *Schiesser*, 2017 WL 1283499, at \*3 (finding lack of substantive unconscionability where there was no allegation that the durational limitations in the warranty were made "too short to discover the Defect"); *Skeen v. BMW of N.A., LLC*, 2014 WL 283628, at \*14 (D.N.J. 2014) (finding plaintiff adequately alleged substantive unconscionability under Illinois law because, in addition to alleging knowledge, the plaintiff alleged the defendant "*manipulated the warranty terms to avoid paying for*" the defect) (emphasis added)). Even though Velez alleges that Rand knew of the defects, the Court does not find that he has adequately alleged that the warranty's durational limitation is "inordinately one-sided" in favor of Rand that such limitation is substantively unconscionable. *See Darne I*, 2015 WL 9259455, at \*7.

As to procedural unconscionability, although Velez contends that he is an ordinary member of the public rather than a sophisticated commercial customer, and thus was not in a position to negotiate the terms of the warranty with Rand, "bargaining inequality alone generally cannot establish procedural unconscionability." *Darne I*, 2015 WL 9259455, at \*8. And Velez does not allege any facts to plausibly support that Rand used its bargaining power to force Velez and the

24

Class to purchase the TND Devices with Rand's Warranty or that they did not understand the terms of the Warranty. *See id.* Moreover, Velez does not allege that he did not have the option of purchasing a different GPS device from a different manufacturer. *See Davidson*, 2017 WL 3149305, at *24.

As currently pled, the Complaint does not sufficiently allege that the Warranty's one-year duration was substantively or procedurally unconscionable.[8] The Court acknowledges that this finding may appear to be in conflict with its finding that the "replace or repair remedy" fails of its essential purpose. However, the Illinois Supreme Court has acknowledged that it is a higher burden to adequately plead that a contract's limitation is unconscionable than it is to plead that the limited remedy fails of its essential purpose. *See Razor*, 854 N.E.2d at 619 ("This 'repair or replacement' remedy is an outer wall, a first defense. If that wall is breached, because the limited remedy has failed of its essential purpose, the seller still would prefer at least not to be liable for potentially unlimited consequential damages, and so he builds a second inner rampart as a fallback position. That inner wall is higher, and more difficult to scale—it falls only if unconscionable.").

---

[8] To the extent Velez argues that the consequential damages provision of the warranty is unconscionable, he includes only one sentence in support: "Under the UCC, a term limiting a party's ability to recover consequential damages is not enforceable if the provision is unconscionable." Resp. at 8 (citing UCC § 4–2–719(3)). He does not develop any argument in support and thus has waived it. *See Schaefer v. Universal Scaffolding & Equip., LLC*, 839 F.3d 599, 607 (7th Cir. 2016) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority."). Indeed, it is not clear to the Court from the allegations of the Complaint that Velez is seeking consequential rather than direct damages. *See Rust-Oleum*, 155 F. Supp. 3d at 792 (explaining the difference between the two kinds of damages).

As stated above, "express warranties of limited duration cover only defects that become apparent during the warranty period." *Evitts*, 834 N.E.2d at 950. Although Velez does not explicitly allege that the defects were apparent during the one-year warranty period, it can be reasonably inferred from the Complaint. *See, e.g.*, Compl. ¶¶ 30–31. (Indeed, as discussed below, Rand argues that Velez's state statutory claims must be dismissed as time-barred because Velez knew of the defects as early as the date of purchase. Reply 17–18.)

As noted above, however, to adequately state a claim for a breach of express warranty, a plaintiff must allege "a demand upon the defendant to perform under the terms of the warranty . . . [and] compliance with the terms of the warranty by the plaintiff." *Lambert*, 2017 WL 2619142, at *2. The Warranty requires the consumer to "contact Rand McNally . . . for return authorization and instructions" within the one-year warranty period. Warranty at 1. True, because the Court has found that the repair and replace limitation fails of its essential purpose, the Court finds that returning the TND 740 Device for repair or replacement would have been futile. However, that finding only means that the repair or replace limitation is read out of the Warranty to be substituted with an alternative measure of damages, such as compensatory damages (i.e., a refund). *See Razor*, 854 N.E.2d at 618. Velez has not pointed to any cases that excuse the consumer from making a demand pursuant to a warranty's terms simply because a repair and replace limitation is read out of the warranty. Velez does not allege that he contacted Rand within the one-year warranty period after his 2017 purchase and use of the TND 740. He alleges that he "repeatedly

26

contacted the Rand McNally Help Center to complain about the problems he was experiencing with the devices" but does not allege when he started doing so. Compl. ¶ 34. To be clear, the Court is not requiring Velez to plead evidence, as that would be improper; however, as part of an element of his claim, he must have allege "a demand upon the defendant to perform under the terms of the warranty," and by failing to allege that he contacted Rand within one year of first using the TND 740, he has not done so. Accordingly, because Velez has not pled that he contacted Rand about his defective TND 740 within the one-year warranty period, as required by the Warranty, his breach of express warranty claim is dismissed. The dismissal is without prejudice, and Velez may replead the claim if he can remedy the defects identified herein.

One final note on Count II: Velez argues in Response that he also brings claims for breach of express warranty based on Rand's failure to provide "Lifetime Maps" updates. Resp. at 10–11. Contrary to Velez's protestations, and unlike the state law claims, *see infra* Sections IV–V, as currently pled, the allegations supporting Velez's breach of express warranty claim (Count II) do not put Rand on notice that he alleges a breach of express warranty claim based on Lifetime Maps updates. *See* Compl. ¶¶ 96–106. Count II is premised on allegations that Rand "expressly warranted TND 730 and TND 740 devices as free from defects in workmanship and materials," and that Rand breached that warranty by "supplying the TND 730 and TND 740 devices in conditions which do not meet the warranty obligations undertaken by Rand McNally, by failing to repair or replace the defect and/or defective parts inherent in the TND 730 and TND 740, and by supplying devices that were defective from the

27

day they were sold, destined to fail prematurely." *Id.* ¶¶ 97, 101. By explicitly referring to the express Warranty relating to the TND Devices' defects, but not once referring to the factual allegations regarding Rand's promises to provide Lifetime Maps updates (apart from a general allegation "realleg[ing] and incoroporat[ing] by reference" prior allegations of the Complaint), the Court finds that, as pled, the Complaint does not currently state a breach of express warranty claim based on the Lifetime Maps updates, and Velez's attempts to argue otherwise in Response fall short. "It is a basic principle that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Martinez v. Sgt. Hain*, 2016 WL 7212501, at *7 (N.D. Ill. Dec. 13, 2016) (cleaned up). Because the dismissal of Count II is without prejudice, Velez may include allegations in any amended complaint that adequately puts Rand on notice that Velez alleges a breach of express warranty based on Rand's failure to provide Lifetime Maps updates. The Court does not opine on the adequacy of any such claim at this juncture.

### III. Breach of Implied Warranty of Merchantability (Count III)

In Count III, Velez alleges that Rand breached its implied warranty of merchantability for the TND Devices by selling the defective TND Devices and by failing to repair them. Compl. ¶¶ 88–94.

Under Illinois law, "implied warranties arise as a matter of law." *O'Connor v. Ford Motor Co.*, 477 F. Supp. 3d 705, 714 (N.D. Ill. 2020) (cleaned up). Pursuant to the UCC, "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." *Id.* (quoting

28

810 ILCS 5/2-314). "Goods to be merchantable must be at least such as . . . are fit for the ordinary purposes for which such goods are used." *Id.* (quoting 810 ILCS 5/2-314(2)(c)). Yet, whether a disclaimer of such a warranty is conspicuous and therefore effective against a plaintiff is also a question of law. *New England Factory, LLC v. Snap-On Equip., LLC*, 430 F. Supp. 3d 377, 382 (N.D. Ill. 2019).

Rand argues that the express Warranty contains a written, conspicuous disclaimer of implied warranties that specifically mentions merchantability, and as such, Velez's claim fails as a matter of law. Memo to Dismiss. at 11 (citing *Lefebvre Intergraphics, Inc. v. Sanden Mach. Ltd.*, 946 F. Supp. 1358, 1362 (N.D. Ill. 1996); *Great West Cas. Co., v. Volvo Trucks N. Am., Inc.*, 2009 WL 588432, at *3 (N.D. Ill. Feb 13, 2009)).

As an initial matter, as Rand points out, Velez did not respond to Rand's argument that its implied warranty disclaimer is not substantively or procedurally unconscionable, and therefore has waived the argument. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver."). Velez also makes a cursory, undeveloped argument that "disclaimers that conflict with express warranties are ineffective." Resp. at 12 (citing *Clemons v. Nissan N. Am., Inc.*, 997 N.E.2d 307, 317, 320 (Ill. App. Ct. 2013)). But Rand is correct that *Clemons* is inapposite, as it decided that an "as is" clause was not a valid disclaimer of a written warranty. *Clemons*, 997 N.E.2d at 320. The *Clemons* court distinguished a case in which an "as is" disclaimer was *upheld* where it barred an implied warranty claim. *Id.* at 317 (citing *Basselen v. Gen. Motors Corp.*, 792 N.E.2d

29

498, 508 (Ill. App. Ct. 2003)). What's more, Rand is correct that the Comments to the UCC belie Velez's argument as to implied warranty claims. Specifically, Section 2-316 of the UCC "seeks to protect a buyer from unexpected and unbargained language of disclaimer by denying effect to such language when inconsistent with language of express warranty and *permitting the exclusion of implied warranties only by conspicuous language* or other circumstances which protect the buyer from surprise." 810 ILCS 5/2-316 Cmt. 1 (emphasis added). Velez does not argue that the disclaimer is not conspicuous. *See* Resp.

Finally, Velez's argument that the MMWA restricts Rand from disclaiming an implied warranty if it extends a written warranty to the consumer also fails. *Id.* at 12 (citing 15 U.S.C. § 2308(c); *Voelker v. Porsche Cars N. Am., Inc.*, 353 F.3d 516, 526 (7th Cir. 2003)). The MMWA states, "[n]o supplier may disclaim or modify . . . any implied warranty to a consumer with respect to such consumer product if (1) such supplier makes any written warranty to the consumer with respect to such *consumer product* . . . ." 15 U.S.C. § 2308(a) (emphasis added). "A disclaimer . . . made in violation of this section shall be ineffective for purposes of this chapter and State law." *Id.* § 2308(c). As discussed above, the Court finds that the TND Devices are not "consumer products" for purposes of the MMWA. Accordingly, the MMWA's disclaimer of implied warranties where an express warranty has been extended is inapplicable here.

The Court finds that Rand's implied warranty disclaimer is valid and enforceable under Illinois law, and as such grants Rand's Motion to Dismiss Count

III. The Court need not address Rand's alternative argument in support of dismissal based on Velez's lack of privity with Rand.

## IV. State Statutory Claims

Turning to the state statutory claims, in Count IV, Velez alleges that Rand violated the ICFA because Rand was aware of the defects in the TND Devices when it marketed and sold the TND Devices to Velez and the Class and failed to disclose the defect to them. Compl. ¶ 133. Velez claims that that Rand knowingly withheld information regarding the defect to continue selling the TND Devices, and that if Velez and the Class had been aware of the defects in the TND Devices, they would not have bought them. *Id.* ¶¶ 134, 136. Velez further alleges that Rand engaged in "misleading, false, unfair or deceptive acts or practices that violated the [ICFA] by representing that the devices have characteristics, uses, benefits, and qualities which they do not have." *Id.* ¶ 132.

Under the ICFA, "[u]nfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2. To state a claim under the ICFA, a plaintiff must allege: "(1) a deceptive or unfair act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair

practice; and (3) the unfair or deceptive practice occurred during a course of conduct involving trade or commerce." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 574 (7th Cir. 2012) (quoting *Siegel v. Shell Oil Co.*, 612 F.3d 932, 934 (7th Cir. 2010)).

In Count V, Velez alleges that Rand violated the UDTPA by representing that the TND Devices had certain characteristics and qualities they did not have, when Rand was aware of the defects and knowingly withheld the information regarding the defect in order to sell the TND Devices. Compl. ¶¶ 143–45.

The UDTPA provides that "[a] person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation, the person," among other things, "represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he or she does not have." 815 ILCS 510/2. The only relief available to a plaintiff is injunctive relief, and only if the court finds that the defendant has "willfully engaged in a deceptive trade practice," then also costs, attorneys' fees, or both. 815 ILCS 510/3.

Rand challenges Velez's ICFA and UDTPA claims on two bases: (1) Velez lacks standing to bring either claim because he is a Tennessee resident and fails to allege that the transactions at issue occurred primarily and substantially in Illinois; and (2) Velez's ICFA and UDTPA claim are time-barred. Memo Dismiss at 16–18.

## A. Statutory Standing

The Court addresses the "standing" issue first. Both parties reference the Illinois Supreme Court's decision in *Avery v. State Farm Mut. Auto. Ins. Co.*, 835

N.E.2d 801 (Ill. 2005), which announced the reach of the ICFA to non-Illinois residents. Memo. Dismiss at 8; Resp. at 9–10. In *Avery*, the Illinois Supreme Court held that the ICFA does not apply to "fraudulent transactions which take place outside Illinois." 835 N.E.2d at 853. Yet, it also held that "a plaintiff may pursue a private cause of action under the [ICFA] if the circumstances that relate to the disputed transaction occur primarily and substantially in Illinois." *Id.* at 853–54. The court recognized that there is no single formula or bright-line test to make such a determination but that each case must be decided on its own facts. *Id.* at 854. Courts have also concluded that *Avery*'s rule applies equally to the UDTPA. *See Int'l Equip. Trading, Ltd. v. Illumina, Inc.*, 312 F. Supp. 3d 725, 732 (N.D. Ill. 2018) (collecting cases).

The Seventh Circuit has noted that "standing" is not the appropriate characterization of Rand's first challenge. *Morrison v. YTB Int'l, Inc.*, 649 F.3d 533, 536 (7th Cir. 2011) ("If the Illinois Consumer Fraud Act law does not apply because events were centered outside Illinois, then plaintiffs must rely on some other state's law; this application of choice-of-law principles has nothing to do with *standing* . . . .") (emphasis in original). It has also recognized that the standard in *Avery* is a "fuzzy standard." *Id.* In *Avery*, the court considered the following factors to determine whether a transaction occurred primarily and substantially in Illinois: "(1) the claimant's residence; (2) the defendant's place of business; (3) the location of the item that was the subject of the transaction; (4) the location of the claimant's contacts with the defendant; (5) where the contracts at issue were executed; (6) the contract's choice

of law provisions; (7) where the deceptive statements were made; (8) where payments for services where sent; and (9) where complaints were to be directed." *The Clearing Corp. v. Fin. and Energy Exch. Ltd.*, 2010 WL 2836717, at *6 (N.D. Ill. July 16, 2010) (citing *Avery*, 835 N.E.2d at 854–55).

Velez contends that applying the *Avery* factors, taking his allegations as true, and construing all inferences in his favor, the Court must conclude that he has alleged a substantial connection to Illinois. Resp. at 18–19. Velez alleges that Rand is headquartered in Illinois and conducts substantial business in Illinois Compl. ¶ 58; Velez purchased the TND 740 at a Love's Truckstop in Illinois and he travels to or through Illinois often, *id.* ¶ 29 n.5; Velez shipped both devices to Rand and paid Rand for repairs, *id.* ¶ 32; and Velez repeatedly called Rand's Help Center to complain about his TND Devices, *id.* ¶ 34. Velez posits that any misrepresentations or deceptive statements made by Rand presumably originated from Rand's headquarters in Illinois. Resp. at 19. The only payments at issue were from Velez for the TND 740 GPS device in Illinois, and to Rand for two separate repairs. Compl. ¶ 32. Lastly, asserts Velez, his complaints were directed to Rand in Illinois.

Rand contends that the only Illinois tie alleged in the Complaint is that the alleged fraudulent scheme "disseminated" from Rand's headquarters in Illinois, which is insufficient to confer a non-resident plaintiff standing to sue under the ICFA. Reply at 10–11 (citing *Avery*, 835 N.E.2d at 855; *Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 397 (7th Cir. 2009)). But Rand ignores the allegations of the Complaint. Here, applying the *Avery* factors, the Court finds that Velez has pled just enough to

establish, at this stage, that the disputed transactions occurred primarily in Illinois. True, the first factor weighs in favor of Rand, as Velez is a Tennessee, not Illinois resident. The second factor weighs in favor of Velez, as Rand's principal place of business is in Illinois. As for the third factor, Velez purchased the TND 740 at a Love's Truckstop in Illinois and he travels to or through Illinois often, meaning that the location of the TND 740 is more connected to Illinois than the TND 730, but both devices were in Illinois at times. This factor weighs in favor of Velez. Turning to the fourth, eighth, and ninth factors, Velez alleges that he mailed in his devices and sent money to Rand for repairs, and called Rand's Help Desk multiple times. Although Velez does not specify that he mailed his devices to Illinois or that the Help Center is located in Illinois, a reasonable inference is that both were located in Illinois. True, as to Velez's calls to the Help Center, the contacts could go both ways, meaning Velez dealt with Rand in Illinois and Rand dealt with Velez in Tennessee or wherever he was calling from. *See Morrison*, 649 F.3d at 538. That is less true for Velez's mailing of the products for repair to Rand, however. Accordingly, these factors also weigh in favor of Velez. As to the fifth and sixth factors, where the contracts were issued is irrelevant here; however, the warranty's choice-of-law provision providing that the terms of the contract are governed by Illinois law is "a mark in [Velez's] favor." *Id.* Therefore, the fifth factor is neural but the sixth factor weighs slightly in favor of Velez. Finally, the seventh factor, where the deceptive statements were made, weighs slightly in favor of Velez. He argues that any deceptive statements "presumably originated from Rand's headquarters in Illinois." Resp. at 19. And he also alleges that

the packaging included false and misleading statements, and, as stated above, he purchased the TND 740 in Illinois, meaning that the he read any misleading statements on the packaging in Illinois.

The Court finds that the allegations are more analogous to those in *Morrison*, where the Seventh Circuit found that a non-resident plaintiff could bring a ICFA claim, than those in *Avery*, where the only factor in favor of Illinois was where the defendant-seller was headquartered. Accordingly, at this stage, the Court finds that Velez has adequately alleged that he has statutory standing to pursue ICFA and UDTPA claims. The analysis does not end there, however, as the Court must determine whether the claims are time-barred.

## B. Statute of Limitations

The parties do not dispute that ICFA and UDTPA claims have three-year limitations periods that accrue when the plaintiff knew or should have known of his injury. Memo. Dismiss at 17 (citing 815 ILCS 505/10a(e); *Blankenship v. Pushpin Holdings*, 157 F. Supp. 3d 788, 792 (N.D. Ill. 2016) (applying the "discovery rule" to an ICFA claim); *Clever Ideas, Inc. v. Citicorp Diners Club, Inc.*, 2003 WL 21982141, at *13 (N.D. Ill. Aug. 20, 2003) (noting that courts apply ICFA's three-year statute of limitations to UDTPA claims)); *see* Resp. at 19. As noted above, the statute of limitations is an affirmative defense, so dismissal on that basis is only appropriate

"if the face of the complaint reveals that the claim is time-barred." *Jay E. Hayden Found.*, 610 F.3d at 383.

Rand argues that Velez has pled himself out of court because he purchased the TND 730 in 2014 and the TND 740 in 2017, and the Complaint establishes that both TND Devices were defective from the time of purchase. Memo. Dismiss at 17 (citing Compl. Doc. 1, p. 11, § IV.E. ("Defects from the Date of Purchase . . . ."); *id.* ¶ 30 (alleging that Velez "has experienced persistent problems with both devices").

Velez does not address Rand's arguments as to when he knew that the TND Devices themselves were defective. Instead, he argues that he "did not even have or discover claims against Rand concerning the 'Lifetime Maps' and 'updates as long as you own' the GPS device until 2021, when Rand made known its decision to end all updates for the TND 730 and issue no updates for the TND 740."

Despite Velez's failure to respond to Rand's arguments about when he knew the TND Devices were defective, the Court finds that the Complaint does not plainly reveal that he knew of the defects from the time he purchased each TND Device. As an initial matter, Rand cites no authority for the proposition that the Court can consider a heading to be an allegation of a complaint. And the only dates included in the Complaint show that Velez returned the TND 730 to Rand in June 2018 due to a power issue, and that he returned the TND 740 to Rand in November 2019 due to the device shutting down. Compl. ¶ 31 n.6. Both of those dates are within three years of the filing of the Complaint in May 2021. The Court finds that the other allegations about the Velez's knowledge of the defects (e.g., Velez "has experienced persistent

problems with both devices" and his "use of both devices has been—and continues to be—substantially hampered") do not show that the claims are indisputably time barred.[9] Compl. ¶¶ 30–31.

Additionally, to the extent Velez attempts to assert ICFA and UDTPA claims based on Rand's failure to provide Lifetime Maps updates as promised, Rand does not reply to Velez's argument that those claims are timely, and therefore has waived the argument. *See Bonte*, 624 F.3d at 466. Unlike the breach of express warranty claim, the Court finds that Velez's ICFA and UTDPA claims at least plausibly put Rand on notice that they are based on Rand's failure to provide Lifetime Maps updates. *See* Compl. ¶ 132 (Rand "engaged in misleading, false, unfair or deceptive acts or practices that violated the Illinois CFA by representing that the devices have . . . benefits . . . which they do not have; . . . advertising the devices with the intent not to sell them as advertised; and otherwise engaging in conduct likely to deceive.); *id.* ¶ 144 (Rand "engaged in unfair or deceptive acts or practices . . ., including representing that the devices have . . . benefits . . . which they do not have; . . . advertising the devices with the intent not to sell them as advertised; and otherwise engaging in conduct likely to deceive.").

---

[9]The Court recognizes that this finding may appear inconsistent with its finding above that Velez has done enough at this stage to plead that he knew of the TND 740's defects within the one-year warranty period. *See* Supra Section II. However, the standards are different: when determining whether Velez has adequately alleged an element of a claim, as the Court did in Section II, it must make all reasonable inferences in his favor, *Silha*, 807 F.3d at 173, whereas when determining whether a claim is barred by the statute of limitations, the Court can may dismiss only if the claim is indisputably time-barred, *Small*, 398 F.3d at 898.

The Court agrees with Velez that his claims premised on Rand's failure to provide Lifetime Maps updates are timely. Rand informed Velez on April 3, 2021 that "there will be no future updates for the TND 730 devices." Compl. ¶ 35. And in response to Velez's complaint to Rand about the lack of updates to the TND 740 in January 2021, Rand told him there was no "ETA" for any updates. *Id.* ¶ 39. Velez filed his Complaint on May 21, 2021, well within three years of learning that there would be no future updates to the TND 730 and of learning that no updates were immediately forthcoming for the TND 740.

Accordingly, the Court finds that Velez's ICFA and UDTPA claims are timely and denies Rand's Motion to Dismiss these claims.

## V.        Unjust Enrichment (Count VI)

In Count VI, Velez asserts a claim for unjust enrichment, alleging that Rand accepted a benefit in the form of money for the TND Devices and that it would be inequitable for Rand to retain related profits, benefits, compensation, consideration, and other monies. Compl. ¶¶ 149–51. Velez seeks restitution from Rand and a disgorgement order. *Id.* ¶ 152.

"To state a claim for unjust enrichment under Illinois law, 'a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience.'" *Banco Panamericano, Inc. v. City of Peoria, Ill.*,

880 F.3d 329, 333 (7th Cir. 2018) (quoting *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989)).

Rand argues that because an express contract governs the relationship between Velez and Rand and because Velez re-alleges and incorporates by reference all the prior allegations in the Complaint contained in his breach of express and implied warranties counts, he cannot plead unjust enrichment. Memo. Dismiss at 18. Velez responds that he has pled his unjust enrichment count in the alternative to his breach of contract claims, which he is permitted to do under the federal rules. Resp. at 20 (citing Fed. R. Civ. P. 8(a)(3) and (d)(2)).

It is well settled that a plaintiff may not recover under an unjust enrichment theory when a contract governs the relationship between the parties. *Gociman v. Loyola University of Chicago*, 41 F.4th 873, 886 (7th Cir. 2022). However, a plaintiff "may plead breach of contract and unjust enrichment claims in the alternative." *Id.* at 887. That said, a plaintiff "may not incorporate by reference allegations of the existence of a contract between the parties in the unjust enrichment count." *Id.* Here, Velez "realleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein, *to the extent not inconsistent with the claims asserted in this Count.*" Compl. ¶ 140 (emphasis added). Recently—and after briefing concluded in this case—the Seventh Circuit found that where the plaintiff stated that "the unjust enrichment claim is pled in the alternative to, and to the extent it is determined a contract does not exist or otherwise apply, the contract-based claim set forth in the First Cause of Action above," to be "sufficient under Rule

40

8—even if barely so—to assure that [the plaintiff] is not entering the forbidden territory of asserting the existence of an enforceable contract as a component of his unjust enrichment claim." *Hernandez v. Illinois Inst. of Tech.*, 63 F.4th 661 (7th Cir. 2023). Similarly, here the Court finds that Velez's limiting language, "to the extent not inconsistent with the claims asserted in this Count," to be sufficient to exclude his allegations of the existence of an enforceable contract into his unjust enrichment claim, and therefore the unjust enrichment claim is adequately—even if barely so— pled in the alternative.

Rand relies heavily on a Ninth Circuit case, *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020), to argue that, because Velez does not allege that he has no possible remedy at law, equitable remedies like restitution are unavailable to him. Memo. Dismiss at 8–9. The Court finds that this argument misses the mark. As the Seventh Circuit recently stated, "[u]ntil the validity or the scope of a contract is determined, it is typically premature to dismiss an unjust enrichment claim." *Gociman*, 41 F.4th at 887. Here, the parties dispute whether the express warranty allows Velez and the Class to seek reimbursement for the defective TND Devices. Moreover, the parties dispute whether *any* valid warranty exists as to Rand's alleged promise to provide Lifetime Maps updates.[10] As in *Hernandez*, the Court finds that

---

[10]Although the allegations under Velez's unjust enrichment claim are relatively sparse, unlike the allegations under the express warranty claim, the allegations do not make it clear that the claim is premised only on the inherent defects in the TND Devices, so the Court finds that, by incorporating the preceding allegations of the Complaint to the extent not inconsistent with the claims of the Count, Velez has adequately put Rand on notice that he claims that Rand was unjustly enriched by receiving Velez and the Class's money and not fulfilling its alleged promise to provide Lifetime Maps updates. *See* Compl. ¶¶ 149–50.

these disagreements are enough for Velez's unjust enrichment claim to survive the Motion to Dismiss, and the Court declines to strike Velez's requests for disgorgement or restitution. The Court turns to whether Velez has standing to request injunctive relief.

## VI.    Standing to Seek Injunctive Relief

In his prayer for relief, Velez requests that Rand "be enjoined from further deceptive advertising, marketing, distribution, and sales practices with respect to the devices, and be enjoined from selling the devices in the future unless or until the TND 730 and TND 740 devices can be sold as advertised and warranted, *i.e.*, free from defects and with regular timely and periodic updates to insure accurate maps, routing, points-of-interest, etc." Compl. at 47–48 ¶ F.

Rand argues that Velez lacks Article III standing to seek injunctive relief, as he does not allege that he faces real and immediate threat of future harm from Rand's alleged wrongful conduct. Memo. Dismiss at 6–7 (citing, among other cases, *Geske v. PNY Techs., Inc.*, 503 F. Supp. 3d 687, 702 (N.D. Ill. 2020) ("Once a plaintiff knows that a product is deficient, he or she is unlikely to purchase it again, and therefore unlikely to sustain future harm. A 'fool me once' plaintiff does not need an injunction if he or she is not going to buy the product again anyway. There is no risk of 'fool me twice,' so there is no basis for an injunction.")). Velez does not argue that he has standing based on the possibility he will purchase the TND Devices again. *See* Resp. at 5–6. Instead, he argues that he adequately alleges future harm by, among other things, Rand's failure to provide "Lifetime Maps" and "updates as long as you own

the TND." Resp. at 5 (citing Compl. ¶¶ 25, 26, 33). ). The Court agrees with Rand that such failures do not qualify as concrete future harm sufficient to confer standing to request injunctive relief.

As to the TND 730, Velez alleges that Rand informed him that "there will be no future updates provided for the TND 730 devices." Compl. ¶ 35. As Rand points out, Velez has already been deceived about Rand's promise to provide lifetime updates for the TND 730 device, so "any future monetary harm it incurs will be the product of that past deception, not some future deception." Reply at 13 (quoting *Darne I*, 2015 WL 9259455, at *12). It is a somewhat closer question as to the TND 740, as Velez argues that, given Rand's past practice with discontinuing future updates to the TND 730, Velez and the Class "can reasonably anticipate that Rand will inevitably do the same for the TND 740." Resp. at 5–6. But even the cases cited by Velez have dismissed claims for injunctive relief, where such claims are "based solely on the conjecture that because the defendant harmed him in the past, they are likely to harm him in the future, and past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief." *Guajardo v. Skechers USA, Inc.*, 2021 WL 4302532, at *6 (C.D. Ill. Sept. 21, 2021) (cleaned up). As the Seventh Circuit has explained, "a plaintiff cannot establish standing by alleging merely a *possible* future injury—rather, the injury must be certainly impending." *Big Shoulders Cap. LLC v. San Luis & Rio Grande R.R. Inc.*, 13 F.4th 560, 568 (7th Cir. 2021) (cleaned up). Based on the authority before it, the Court finds that Velez has

43

failed to establish an imminent risk of future harm based on the hypothetical possibility that his TND 740 may not be updated

## Conclusion

For the foregoing reasons, the Court grants in part and denies in part Rand's Motion to Dismiss [21]. The Court grants the motion with respect to Counts I through III. It denies the motion with respect to Counts IV through VI. It grants the motion with respect to Velez's request for injunctive relief. The Court's dismissal of the foregoing claims and request for relief is without prejudice, and the Court grants leave to Velez to file an amended complaint on or before May 12, 2023. If Velez files an amended complaint on or before May 12, 2023, the Court directs Rand to answer or otherwise plead in response on or before June 2, 2023. In light of the Court's ruling on Rand's Motion to Dismiss [21], the Court strikes Rand's Motion to Strike Class Allegations [23] as moot. However, the Court grants leave to Rand to file an amended motion to strike on or before June 2, 2023 based on Velez's amended complaint. If Velez does not file an amended complaint by May 12, 2023, the parties shall file a status report by May 19, 2023 informing the Court as to proposed next steps relating to the class allegations.

Dated: April 21, 2023

United States District Judge
Franklin U. Valderrama