## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| MICHAEL VELEZ, individually, and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 1:21-cv-02779 |
| | ) | Judge Franklin U. Valderrama |
| RM ACQUISITION, LLC, d/b/a RAND McNALLY, | ) ) | **JURY TRIAL DEMANDED** |
| Defendant. | ) ) | |

---

### FIRST AMENDED CLASS ACTION COMPLAINT

---

Michael Velez ("Plaintiff"), by leave of Court [Doc. 69, Page ID#: 383], files this First Amended Class Action Complaint on behalf of himself and others similarly situated ("the Class") against Defendant RM Acquisition, LLC (d/b/a Rand McNally) ("Rand") and brings federal and state-based claims regarding the manufacture, marketing, sale, support, and promised map updates of the TND 730 and TND 740 Intelliroute GPS devices, Rand's fourth and fifth-generation truck navigation devices. Plaintiff makes the following allegations pursuant to the investigation of counsel and upon information and belief, except as to the allegations specifically pertaining to himself, which are based on personal knowledge.

**TABLE OF CONTENTS**

I.  NATURE OF ACTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  JURISDICTION AND VENUE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

III.  PARTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

IV.  FACTUAL ALLEGATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    A.  Rand's Company History . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    B.  Car vs. Truck Global Positioning Systems ("GPS"). . . . . . . . . . . . . . 7

    C.  Rand's Truck Navigation GPS Devices . . . . . . . . . . . . . . . . . . . . . . . 11

    D.  Rand's Written One-Year Warranty . . . . . . . . . . . . . . . . . . . . . . . . . 14

    E.  Plaintiff's Purchases. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

    F.  Inaccurate Directions, Maps, Routing, Location or Point-of
       -Interest Information, and Rand's Failure to Provide Lifetime
       Maps and Updates, As Warranted. . . . . . . . . . . . . . . . . . . . . . . . . . . 15

    G.  Rand Failed to Provide "Lifetime Maps" or "Map Updates" for
       "As Long As You Own the TND" or "Constant Updates," as
       Promised . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

    H.  Plaintiff's Personal Experiences With Device-Errors and
       Complaints to Rand About Defects and Broken Promises . . . . . . . . 17

    I.  Plaintiff's Experience With the TND 740 <u>After</u> Rand's March
       2022 Map Update: Marked Failures . . . . . . . . . . . . . . . . . . . . . . . . 19

    J.  Product Reviews by Verified Retail Purchasers Highlight Device
       Defects and Warranty Breaches . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

    K.  The Routing, Directional, Destination, and Other Navigational
       Errors Routinely Encountered By Plaintiff and Class Members
       When Using the TND 730 and TND 740 Have Made the Devices
       Largely Useless. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

L.     Rand Knew About the TND 730's and TND 740's Numerous' Problems Soon After the Devices Were Placed on the Market, Failed to Disclose the Problems, and/or Continued to Manufacture and/or Market and Sell the Devices as Advertised . . . . . . . . . . . . . . . 32

M.    Plaintiff and the Class Have Been Injured By Rand's Actions. . . . . . 34

V.    APPLICABLE SUBSTANTIVE LAW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

VI.    CLASS ACTION ALLEGATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

VII.    CAUSES OF ACTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

COUNT I – VIOLATIONS OF THE MOSS-MAGNUSON WARRANTY ACT (15 U.S.C. §§ 2301-2312 – Written Warranty) (TND 740 Only) . . . . . . 41

COUNT II – BREACH OF EXPRESS WARRANTY  (810 ILCS 5/2-313) – Based Upon Defects (TND 740 Only) and Failure to Provide Lifetime and Updated Maps, as Promised (TND 730 and 740). . . . . . . . . . . . . . . . . . . . . . 44

COUNT III – BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (810 ILCS 5/2-314) (TND 740 Only) . . . . . . . . . . . . 53

COUNT IV – VIOLATIONS OF THE CONSUMER FRAUD AND DECEPTIVE PRACTICES ACT (815 ILCS 505/2) (TND 730 and 740) . . . . 57

COUNT V – VIOLATIONS OF THE ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT (815 IlCS § 510) (TND 730 and 740) . . . . . . . . 60

COUNT VI – UNJUST ENRICHMENT (TND 730 and 740) . . . . . . . . . . . 62

VIII.    JURY DEMAND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 62

IX.    PRAYER FOR RELIEF. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 63

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 65

-iii-

## I. NATURE OF ACTION

1.     This class action stems from Rand's failure to deliver what it promised to American truckers, who need a reliable Global Positioning System ("GPS") that provides safe, correct, and efficient routes to their pickup and delivery destinations, and accurately directs them toward relevant points-of-interest along the way, including truck-stops, scales, bridges, and rest areas. This can only be accomplished by furnishing a device without defects and providing up-to-date GPS maps identifying trucking routes, open truckstops, rest areas, and other important points-of-interest or information, such as real-time traffic updates, toll estimates, and bridge and overpass information.

2.     Even as it marketed and sold the TND 730 and 740, Rand knew the devices were defective,[1] based upon warranty data, customer complaints to Rand and online trucker forums, YouTube, and/or retail websites, including Amazon and BestBuy, and through innumerable other sources. Rand knew that no repair, "patch," or other "fix" existed for device failures.

3.     Worse still, through advertisements, product-labeling, packaging, and other means, Rand repeatedly and consistently represented to truckers that its TND

---

[1]As made clear below, while Plaintiff maintains that both devices suffered from similar defects, with the exception of his breach of express warranty claim based upon Rand's "Lifetime" Map and related promises, his claims under the Magnuson Moss Warranty Act ("MMWA")(Count I) and for breach of express and implied warranty (Counts II and III) and are made for the TND 740 only. His breach of express warranty claim based upon Rand's continuing breach of its "Lifetime" map and related promises are made relative to both the TND 730 and TND 740.

730 and TND 740 Intelliroute GPS truck navigation devices provided up-to-date maps to truckers, specifically including "Lifetime Maps and Traffic Everywhere," "Free Lifetime Map Updates," "updates as long as you own the TND™," "improved maps," and "constantly updated maps."

4.     Despite significant ($400-500) price-tags for these GPS devices and the "bells and whistles" Rand touted for them, the company nevertheless uniformly failed to provide accurate map, route, and point-of-interest information to Plaintiff and the Class, most notably through a failure to update maps or provide updated maps, as warranted. Thus, neither device provides truckers with accurate, much less up-to-date maps. Rather, the devices consistently generate the wrong directions, recognize incorrect or nonexistent addresses or locations, and routinely fail to locate addresses or even entire streets, among other problems. These problems persist, even after Rand finally provided a map update for the TND 740 in March 2022.

5.     When Plaintiff and other Class members complained about inaccurate maps, misinformation about points-of-interest, and poor or unsafe routing, *e.g.*, being directed to the wrong destination or drop-off address, to residential roads, to low bridges, to steep grades, or to nonexistent travel centers, or complained about out-of-date maps, Rand promised them "updates in the next few months," only to push back the promised updates indefinitely or cancel them altogether.

6.     Although Rand promised to provide Plaintiff and other Class members "Lifetime" map updates for the TND 730 and 740, seven years after it launched the TND 730, it informed TND 730 customers that the company would no longer support

-2-

the TND 730 with "Lifetime" updates. Rand simply ceased making any effort to cure the map failures associated with that particular device. Consequently, Plaintiff and other Class members who own TND 730 will no longer receive map-updates for "as long as they own" that device, as promised, whether they had ever received a map update or not.

7.     Similarly, between 2017 and March 2022, Rand failed to issue any map updates for the TND 740. The only update thus far provided for the TND 740 – in or about March 2022 – was chock-full of bad, incorrect, and even dangerous data and navigation information. The update was markedly deficient, saddled with bad and unsafe information, wrong directions, and nonexistent or incorrect street addresses.

8.     Plaintiff brings the following claims against Rand in this Amended Complaint:

■ Violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, et seq. ("MMWA") (TND 740 only);

■ Breach of Express Warranty – Defects (TND 740 Only); Lifetime Maps and Updates (TND 730 and 740);

■ Breach of Implied Warranty (TND 740 only);

■ Violation of the Illinois Consumer Fraud and Deceptive Practices Act (815 ILCS 505/2) (TND 730 and 740);

■ Violation of the Illinois Uniform Deceptive Trade Practices Act (815 Ill. Comp. Stat. § 510/2) (TND 730 and 740); and

■ Unjust Enrichment (TND 730 and 740).

9. Plaintiff and the Class seek all compensatory damages, equitable relief, restitution, attorneys' fees, and costs that are justified and proper against Rand.

## II. JURISDICTION AND VENUE

10. This Court has jurisdiction pursuant to 28 U.S.C. §1332(d) and the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1711, et seq., which vests original jurisdiction in the district courts of the United States for any multi-state class action where the aggregate amount-in-controversy exceeds $5 million and where the citizenship of any member of the class of plaintiffs is different from that of any defendant. There are more than 100 potential Class members across the United States, the aggregate amount-in-controversy exceeds $5 million, exclusive of interest, fees, and costs, and at least one class member is a citizen of a state other than Illinois. *See* Mem. Op. and Order, Doc. 69, Page ID#: 344-350.[2]

11. This Court also has personal jurisdiction over Rand because it is headquartered in Chicago, Illinois. As such, it has significant, continuous, and pervasive contacts in Illinois.

---

[2]Although Velez is the only named Plaintiff, this District has confirmed that the CAFA "creates an alternative basis for federal jurisdiction over" a Magnuson-Moss Act claim, and that such a claim may proceed in a CAFA class action absent one hundred named plaintiffs, as otherwise required by 15 U.S.C. § 2310(d)(3)(C). *See Stella v. LVMH Perfumes and Cosmetics USA, Inc.*, 564 F. Supp. 2d 833, 837–38 (N.D. Ill. 2008).

12.     Venue is appropriate in this district under 28 U.S.C. § 1391(b) and (c), because during the Class Period, Rand transacted business, was found, or had agents in this district and because a substantial portion of the affected trade and commerce described below has been carried out in this district.

13.     At all pertinent times, Rand sold, advertised, distributed, marketed, and promoted products, including the TND 730 and 740, throughout the United States.

14.     The devices that form the basis of this Amended Complaint – Rand's TND 730 and 740 Intelliroute GPS truck navigation devices – were purchased by Plaintiff and Class members directly or indirectly from Rand, and/or placed in the stream of commerce by Rand.

### III.  PARTIES

15.     Plaintiff, Michael Velez ("Plaintiff") is a natural person who resides in the State of Tennessee. In or about 2014, Plaintiff purchased a new TND 730 Intelliroute GPS truck navigation device manufactured by Rand at a truck-stop for approximately $399.99. In or about 2017, he purchased a new TND 740 device manufactured by Rand at a Love's Travel Stop for approximately $499.99.[3]

16.     Defendant, RM Acquisition, LLC, doing business as Rand McNally ("Rand"), is an Illinois corporation headquartered at 8770 W Bryn Mawr Ave, Chicago, Illinois 60631.

---

[3]Plaintiff has been unable to locate his receipt, but, upon information and belief, he purchased the TND 740 at a Love's Truckstop in Illinois. Plaintiff travels to (or through) Illinois often.

17.    Rand does business throughout Illinois, including Chicago, in the Northern District of Illinois. Both the TND 730 and 740 devices were manufactured, marketed, and sold by Rand in Chicago, Illinois. Upon information and belief, each corporate decision regarding the TND 730 and 740 that is the subject of this lawsuit was directed by Rand's representatives in Illinois, or emanated therefrom, where Rand's warranty program was also created and presumably administered.

## IV.  FACTUAL ALLEGATIONS

### A.    Rand's Company History

18.    Founded in 1856 by William H. Rand and Andrew McNally and incorporated in 1873, Rand is the oldest firm of its kind in the country and one of the world's leading map-makers.

19.    Until the late 1990's, Rand had always been a privately held or "pink sheet" company, with stock held by very few parties and thinly traded. In 1997, the McNally family, which had owned a majority interest in the company since 1899, decided to divest its majority stake. The company was sold off piecemeal. In October 2020, the company's core map-making business was acquired by Teleo Capital ("Teleo"), a private equity firm based in Boise, Idaho and Los Angeles, California. Rand is now the biggest company by revenue in the Teleo portfolio.

20.    Rand became a leading United States publisher of travel books and electronic media for the travel industry, and is perhaps best known for its maps and atlases, including the top-selling Rand McNally Road Atlas, a travel atlas first published in 1924 and updated every year.

21.     Eventually, Rand turned its focus toward the commercial trucking industry. Truck drivers require an assortment of important tools on the road, especially a Global Positioning Satellite ("GPS") device that provides safe, correct, and efficient routes to their pickup and delivery destinations, and accurately directs them toward relevant points-of-interest along the way, including truck-stops, scales, bridges, and rest areas.

22.     Rand currently produces and distributes printed atlases and other published product in the retail marketplace, including OverDryve™ and TND™ dashboard tablets and ClearDryve® 2-in-1 headsets that convert to headphones. Rand has expanded aggressively in the commercial transportation and logistics software space, providing a proprietary fleet management platform and mileage/routing software for carriers, shippers, and third-party logistics providers.

**B.      Car vs. Truck Global Positioning Systems ("GPS")**

23.     The GPS system is a series of 31 satellites orbiting the Earth. These satellites connect with receivers on the ground and can pinpoint the exact location of the receivers. GPS originated as a project with the Department of Defense, and its first satellite was launched into orbit in 1978 for military use, but they were made available for civilian use in the 1980s.[4] Today, GPS is owned by the United States government and operated by a branch of the Air Force known as the United States Space Force.[5]

---

[4] *See* https://www.faa.gov/about/office_org/headquarters_offices/ato/service_units/ techops/navservices/gnss/gps/howitworks

[5] *See* https://www.jdpower.com/cars/shopping-guides/what-does-gps-stand -for#:~:text=GPS%20is%20an%20acronym%20for,your%20vehicle%20navigate%20d

24.     GPS is a satellite navigation system providing distance, time, and position measurements in the world coordinate system. Put simply, it helps drivers navigate different terrain. GPS devices send unique satellite signals that a receiver then processes. These GPS receivers track the exact location of the GPS device and compute their time and the velocity at which they are traveling.[6]

25.     Modern GPS navigation devices are no longer limited to finding the right address. They will guide drivers to the address by the fastest way, which is not always the nearest. GPS creates a path to navigate unpredictable road situations, traffic accidents, and traffic jams.[7]

26.     There are three parts to GPS: satellites, ground stations, and receivers. Satellites are used to figure out a receiver's location from space, as a satellite's exact position is known at any time. This is a significant reason for GPS tracking to be so

---

ifferent%20terrain.

[6]GPS provides two types of services:

> Standard Positioning Service ("SPS"), which is available to all consumers globally at no cost. All GPS satellites emit navigation radio signals with a modulated rangefinder code C/A (Coarse/Acquisition) to implement SPS; and

> Precise Positioning Service (PPS), which is available to authorized consumers. It is intended for use exclusively by U.S. military forces, U.S. federal agencies, and allied armed forces.

*See* https://www.jdpower.com/cars/shopping-guides/what-does-gps-stand-for#:~:text=GPS%20is%20an%20acronym%20for,your%20vehicle%20navigate%20different%20terrain.

[7]*Id.*

accurate. Ground stations ensure the location of the satellites is where they're supposed to be using radar, and receivers get signals from a group of satellites to measure how far they are and pinpoint the receiver's location.[8]

27.     GPS tracking devices send unique satellite signals that are processed by a receiver. These GPS receivers track the exact location of the GPS device and compute their time and the velocity at which they are traveling.[9]

28.     Predictably, car manufacturers leverage SPS, the free consumer service. When it comes to most new cars, an automotive navigation system is part of the automobile controls or a third-party add-on. It typically uses a satellite navigation device to get its position data, then correlates to a position on the road. When you need navigation directions, the system will calculate routing details. Traffic information, such as road closures and congestion, can be used to adjust the route.[10]

29.     Thus, GPS is a satellite navigation system providing distance, time, and position measurements in the world coordinate system. Put simply, it is a system that helps drivers navigate different terrain.

30.     Both car GPS and truck GPS systems serve to calculate the optimized route to a designated destination. They can also pick up locations for popular stops like restaurants, rest areas, and gas stations. GPS is made to help all drivers get the exact direction and route plan. Precisely, the GPS navigation application is used to calculate

---

[8]*See id.*

[9]*See id.*

[10]*See id.*

the optimized route of the picking point and the destination point. Meanwhile, the information that will help a driver the most, such as a restaurant, stop point, live road, and weather update, fuel station-related information, can be obtained from the GPS navigation system.

31. The hardware in car and truck GPS systems is essentially the same. Both car and truck GPS systems use the same system of satellites, receivers, and ground stations. Even the base software for cars and trucks is the same. "While the GPS uses are almost the same, there is a slight difference between car GPS and truck GPS."[11] "The biggest difference between a GPS for truckers and any regular car GPS is that a trucker GPS will recommend a designated route based on the weight, height, and length of your truck. That means, it will tell you the roads or lanes you're not allowed to drive and the roads you're not restricted."[12] Thus, the main difference is the ability to determine whether a route is suitable or not. While the default map provided by a car GPS is the same in principle, the primary difference lies in the ability of discerning extra data from the map, which a truck GPS does.[13]

---

[11] *See* https://truckautoguide.com/difference-between-car-gps-vs-truck-gps/

[12] *See* https://www.smart-trucking.com/gps-for-truckers/#:~:text=The%20 biggest%20difference%20between%20a,roads%20you're%20not%20restricted.

[13] *See* https://truckautoguide.com/difference-between-car-gps-vs-truck-gps/

32.     Put simply; a GPS application makes the driver's risky job less stressful and more enjoyable. The provider's provided database maintains the core mechanism of GPS navigation. The application developer continuously updates the database with essential information that the driver mostly needs.

33.     For truckers, for example, that means parking spots, rest stops, bridge-related information, weight and height limits, live road and weather updates. A GPS solution communicates with the Global Positioning System using a telemetric system, phone, or navigation device to provide that information. Then the navigation application provider uses the driver's provided details and GPS data and starts calculating and then providing the most compliant and efficient route to reach the desired destination.[14]

### C.     Rand's Truck Navigation GPS Devices

34.     With an eye toward gaining a foothold in the commercial trucker demographic, in 2009, Rand launched IntelliRoute® TND™ 500, its first GPS device built for truckers, using proprietary truck data. According to the company, the device provided customized route information unavailable on a consumer-oriented product.

### *The TND 730*

35.     In 2014, Rand launched the TND 730, a fourth-generation GPS device for commercial truck drivers, which included "new features," such as: "Advanced lane guidance"; "Toll costs"; "Avoid list"; "Route comparison"; "Warnings"; and "Destination entry."

---

[14]*See* https://truckautoguide.com/difference-between-car-gps-vs-truck-gps/

36.     According to Rand, the TND 730 used "proprietary truck data derived from more than 70 years in the commercial transportation industry." The company advertised the device as offering "35% more truck routing information than other GPS units," "Millions of POI listings – Detailed information on truck stops, weigh stations, service and repair," and "Select services – Filter search results for truck stops and service locations by the amenities available."

37.     Importantly, for Plaintiff (and other truckers), the packaging for the TND 730 (as well as the TND 740) also promised "Lifetime Maps and Traffic Everywhere," promising truck drivers they would "Get updates as long as you own the TND™."

### *The TND 740*

38.     In 2017, Rand introduced the TND 740, its fifth-generation GPS device for commercial truckers. Like its predecessor, the TND 730, the TND 740 touted features truck drivers might find useful, *e.g.*, an "easy-to-use interface for drivers and improved maps," and "35% more truck routing information than other GPS units."

39.     Again, like the TND 730, Rand prominently proclaimed that truck drivers who purchased the TND 740 would receive "Free Lifetime Map Updates," "Over-the-air Map Updates," and would "Get updates as long as you own the TND™."

40.     The "Product description" of the TND 740 stated that:

> The Rand McNally TND 740 comes with an expanded range of Wi-Fi connected services, such as weather and fuel prices. The device has a 7" vibrant, high-definition screen, that comes with a easy-to-use interface for drivers and improved maps. The GPS is equipped with Quad core processor and twice storage space for even faster route calculations.

The IntelliRoute TND 740 offers advanced lane guidance to be prepared for an approaching turn or heading through a complicated intersection. This GPS comprises 35% more truck routing information than other GPS units and incorporates hours of testing by truck drivers.

Features:

> GPS Vehicle Navigation System
> 7" HD Vibrant Display
> Free Lifetime Map Updates
> Truck-Specific Routing
> Audio Out Capability – Enabling Drivers to Route their Device Sound through their Truck Audio Systems Easy-to-Use Interface
> Over-the-air Map Updates
> Advanced Lane Guidance & Lane Assist
> Customizable Warnings - Set Warnings for Speed Limit Changes, Sharp Curves & More - Set Display Preferences & Warning Distance
> Driver Scorecard Shows Miles, MPG, Idling & Vehicle Fault Codes
> Electronic Driver Logs
> Electronic Driver Vehicle Inspection Reporting
> HOS Alerts & Warnings
> Multiple Operating Authority Capable
> 2 USB Ports for Diagnostics

41. Rand also promised that the TND 740 "is constantly updating maps"

when connected to WiFi, informing truckers:

> This means that even if a road has only been closed for a few hours due to construction or inclement weather, the Rand McNally TND 740 will be aware of this closure and re-route automatically. The map also regularly updates with current traffic conditions and incorporates this into its route, offering new routes if heavy traffic appears even in rural areas. This is particularly useful in the event of bad weather or unexpected road closures, enabling trucks to change routes quickly or take detours as soon as they are routed.

### D. Rand's One-Year Written Warranty

42. Significantly, Rand provided Plaintiff and the Class with the following one-year written warranty[15]:

> "Rand McNally warrants the TND/RVND Products, and the component parts thereof, will be free of defects in workmanship and materials for a period of one (1) year from the date of first consumer purchase."[16]

### E. Plaintiff's Purchases

43. Relying upon Rand's reputation and the representations made on the product-packaging and by the company's website, Plaintiff purchased at retail a fourth-generation TND 730 in 2014 for approximately $399.99. In 2017, he purchased at retail a fifth-generation TND 740 for approximately $499.99. By making these purchases, Plaintiff sought a navigation system that he could rely and depend on. Based on Rand's slick advertising, to which he had been exposed, including merchandise-displays and demonstration-units at various Love's Truck Stops, as well as information and demos

---

[15]Available at https://www.randmcnally.com/support/faqs/what-is-the-warranty -on-my-gps (last visited April 22, 2021).

[16]Although Rand attempts to disclaim any and all implied warranties of merchantability, these purported disclaimers are legally invalid pursuant to federal law. *See* Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, et seq.

on Rand's website, Plaintiff was lured into believing that the Rand brand offered reliable and quality products, causing him to purchase both the TND 730 and the TND 740 over other truck GPS navigation products offered by Rand's competitors, such as Garmin.

44.     At all times, Plaintiff operated his devices in a manner consistent with their intended use. Nevertheless, he experienced persistent problems with them, including, but not limited to, displaying his location on a parallel or nonexistent road and re-routing him accordingly, directing him to a wrong or nonexistent road, exit, or address, directing him to rest areas that did not exist, incorrectly directing him to take right turns or go right at a fork when he needed to turn left or go left at a fork, and taking him in the opposite direction of where he was headed. Notwithstanding Rand's March 2022 map update, Plaintiff continues to experience these problems with his TND 740 device, leaving him without a reliable way to navigate his truck.

**F.     Inaccurate Directions, Maps, Routing, Location or Point-of -Interest Information, and Rand's Failure to Provide Lifetime Maps and Updates, As Warranted.**

45.     Like other Class members, Plaintiff's use of the TND 730 and TND 740[17] has been – and continues to be – substantially hampered by wildly inaccurate

---

[17]Plaintiff returned the TND 730 to Rand in June 2018 due to a power issue. [Order #: 37306; Ticket #: 1164131]. Rand returned a refurbished TND 730 (with a new USB port, updated software, new battery, and new car-charger) to Plaintiff for a charge of $107.91. Plaintiff returned the TND 740 to Rand in November 2019 due to the device automatically shutting down. [Order #: 82363; Ticket #: 1335116]. Rand returned a refurbished TND 740 (with updated software, new battery, new charger, and new mounting block) and charged Plaintiff $107.91. This was a non-warranty repair.

directions, maps, routing, and location or point-of-interest information, all of which has been made worse by Rand's continuing failure to provide reasonable, timely, and/or periodic map updates. Rand's updates have been substantially deficient, error-filled, and/or unsafe.

46. Even though Plaintiff separately shipped – at his own cost – both the TND 730 and TND 740 to Rand and paid Rand approximately $108 each time for repairs, the repairs did not provide him with better directions, maps, routing, or point-of-interest information, much less updated maps, and the units worked no better than they had originally.

47. Via labels and packaging, Rand advertised, represented, and warranted that the TND 730 and TND 740 came with "Lifetime Maps" that "provides the original purchaser of the device with an annual base map update subject to the terms and conditions described at randmcnally.com/lifetimemaps." Although the "terms and conditions" state that "Lifetime" may be limited to "36 months" after the initial release,[18] the packaging of the TND 730 and TND 740 explicitly stated that "Lifetime Maps and Traffic Everywhere" updates are provided ***"as long as you own the TND™."***

**G.  Rand Failed to Provide "Lifetime Maps" or "Map Updates" for "As Long As You Own the TND" or "Constant Updates," as Promised.**

48. Plaintiff repeatedly contacted the Rand Help Center to complain about the problems he was experiencing with his devices. Those problems largely consisted of the

---

[18] *See* https://www.randmcnally.com/pages/mapupdates

TND 730 and 740 erring with directions, maps, routing, or point-of-interest information, as well as Rand's continuous failure to provide updated maps for those devices.[19]

49.     Despite having represented to Plaintiff and other Class members that it would provide them "Lifetime" updates for the TND 730 for "as long as you own the TND™" and "constant map updates," in response to an April 3, 2021 email inquiry from Plaintiff [Ticket #: 1459207], Rand informed Plaintiff that "there will be no future updates provided for the TND 730 devices."

**H.    Plaintiff's Personal Experiences With Device-Errors and Complaints to Rand About Defects and Broken Promises.**

50.     Since Plaintiff purchased the TND 730 and TND 740, he has self-recorded videos operating his truck, demonstrating directional, mapping, routing, and other errors made by the device. For example:

> • the devices did not even recognize the location of a long-open travel center/CAT scale where he was parked at that moment;
>
> • the devices directed him to the wrong destinations;
>
> • the devices incorrectly routed him to residential streets; and
>
> • the devices directed him to nonexistent travel centers.

51.     On November 16, 2020, Plaintiff contacted Rand and inquired about when an update would be issued for the TND 740, complaining that the device failed to

---

[19]For instance, in 2017, Plaintiff reported location errors to Rand regarding the TND 730 and that its screen repeatedly and continuously froze while he was driving.

identify multiple Love's Truck Stop locations that had been open for more than two years, writing:

> "These locations have been open for over 2 years, what is taking you so long?"

52. Tina Kincer, who identified herself as a Rand "Customer Service Supervisor," responded:

> Mr. Velez,
>
> Thank you very much for your feedback and we value the information you have been providing through TellRands concerning Love's Travel Centers. We do review the information you provide concerning travel centers. We are working to release a travel center point of interest update in the next few months.
>
> Please feel free to reply to this message or call us if you have any additional questions.
>
> ***
>
> Thank you,
> Tina Kincer
> Customer Service Supervisor

53. By January 2021, the promised update had still not been issued by Rand. Plaintiff again complained about the lack of updates for the TND 740. On January 28, 2021, Ms. Kincer, this time identifying herself as a "Technical Support Supervisor," again responded:

> Good Morning Mr. Velez,
>
> Unfortunately, these updates have been pushed back due to the cyber incident that we had. Our severs [sic] were down for over a month and we had to work on getting those back up before we could do anything with updates. As soon as a

-18-

new update comes out it will be pushed out to your device and you should be notified if you are connected to WiFi. As of now, I don't have an ETA on when that will be. I apologize for the delay.

Thank you,
Tina Kincer
Technical Support Supervisor

54. That points-of-interest map update, like previous promised updates, never materialized.

## I. Plaintiff's Driving Experience With the TND 740 After Rand's March 2022 Map Update: Marked Failures

55. From 2017 to March 2022, Rand also failed to provide map updates for the TND 740. Finally, in that month, Rand launched what appeared to be (at least by file volume) a significant map update for the TND 740.

56. That March 2022 update was downloaded onto his TND 740.

57. Plaintiff was initially hopeful that the update would resolve some, if not all, of the issues that he had experienced with the device.

58. Over the next fourteen months, that hope turned out to be misguided, as Plaintiff quickly began to experience one problem after another with the newly-updated software and maps on his TND 740.

59. By April 21, 2022, Plaintiff had driven about 10,000 miles using Rand's new map updates. Thus far, among other errors, he had discovered a Love's Truck Stop in Newport, Tennessee, that was not listed on the update and a mislabeled truck stop off I-40 in Arkansas. There was also a routing issue due to a road closure, and Plaintiff was unable to find a re-route to a navigable route on the TND 740.

-19-

60.     The bad experiences with the March 2022 updates only got worse. On Sunday, September 25, 2022, Plaintiff was traveling on I-10 at or near Milton, Florida, and saw a Love's Travel Stop to his left at the exit he was passing. His TND 740, however, showed the closest Love's to be 42 miles ahead at I-10, Exit 70, and the closest truck stop of any type to be an Exxon Fuel Center, located 5.4 miles away.

61.     On Thursday, October 13, 2022, Plaintiff was driving his truck on US-601 near Pageland, South Carolina. He stopped at a Love's Travel Stop that he had seen signs for, yet his TND 740 showed that there was no Love's Travel Stop within 20 miles.

62.     On Sunday, October 30, 2022, Plaintiff sat in his truck in a Love's Travel Stop parking lot in Waterloo, New York. However, his TND 740 showed the closest Love's Travel Stop to be 48 miles away, off I-86, at Exit 37.

63.     On Sunday, November 13, 2022, Plaintiff was in route in his truck to Berks County, Pennsylvania. He discovered that the destination address to which he was directed by his TND 740 did not, in fact, exist.

64.     On Wednesday, November 16, 2022, Plaintiff was at a fuel-pump at a Love's Travel Stop in Willington, Connecticut. However, his TND 740 indicated that the closest Love's at that moment *was 67 miles away*, at I-90, Exit B-3 in New York.

65.     On  that same date, Plaintiff was driving along I-93 North, near Boston, Massachusetts, and took a video of his TND 740, which showed an approaching exit . . . that *did not actually exist.*

-20-

66. On Sunday, November 20, 2022, Plaintiff was traveling near Edwardsville, Illinois, and saw that his destination address (to which he was directed by his TND 740) – 5715 Inner Park Drive – did not exist.

67. On Monday, February 27, 2023, Plaintiff was traveling on I-80 West in Nebraska. His TND 740 directed him to bear right at the fork for the I-80 West Exit toward Sidney-Cheyenne. But the Sidney-Cheyenne Exit was actually *the left-hand fork*, *not the right* (which was I-76 South Exit 102 toward Denver).

68. On Tuesday, February 28, 2023, Plaintiff was driving his truck in Silverthorne, Colorado, in heavy snow, looking for a rest area to escape the bad weather. His TND 740 directed him to an "Information Center." Plaintiff pulled off the road and found himself in a small parking lot of what appeared to be a residential area or small business, not a rest area.

69. On Thursday, March 2, 2023, Plaintiff was driving his truck in Ontario, California. His TND 740 directed him to a nonexistent road and location.

70. On Thursday, March 9, 2023, Plaintiff was in Hudson, Ohio, and entered what he knew to be the correct and valid address (5350 Hudson Industrial Parkway) into the TND 740 for route directions. Instead, he was prompted that he had not entered a valid address.

71. On Tuesday, April 18, 2023, Plaintiff was driving his truck on AL-69 in Alabama. His camera is pointed straight ahead and captures a large warehouse-type building with a large sign that said "RWC." At the same moment, his TND 740 informed him that no business was located there.

-21-

72.     On that same day, Plaintiff was in his truck in the parking lot of a Love's Travel Stop in Heflin, Alabama. Yet, his TND 740 showed the closest Love's to be 18 miles away, in Georgia.

73.     On Thursday, April 20, 2023, Plaintiff was driving his truck along I-10 East near Milton, Florida. His TND 740 shows that the closest truck stop is a "Circle K," located about 15 miles away. However, at that same moment, Plaintiff looks to the right and spots a Love's Travel Stop sign at the Milton-Bagdad Exit he is passing.

**J.     Product Reviews by Verified Retail Purchasers Highlight Device Defects and Warranty Breaches.**

74.     A sampling of user-reviews for the TND 730 are as follows:

### *Amazon Reviews of TND 730*[20]

jj0303          1.0 out of 5 stars
               Pure junk. . . save your sanity and purchase the Garmin Dezl
               Reviewed in the United States on May 4, 2018
               Verified Purchase

               Pure Junk. Spend your money on the Garmin Dezl... much better product. Where do I start? First; it has a really hard time finding just about any address I look for. Yes it has been updated several times. Second; if the unit doesn't freeze up it loses enough satellites it has no idea where you are. Third; have issues updating the unit. Fourth; drops addresses that I have saved as favorite. Fifth; stupid hard to get it off the mount stuck to the windshield (just easier to remove mount from windshield). Sixth; the glair on the screen is horrible. This unit has been out long enough that Rand McNally should have ALL the bugs worked out. Guess they just don't care. Will never buy another GPS from them.

---

[20]*See* https://www.amazon.com/Rand-McNally-TND730-IntelliRoute-Navigator/product-reviews/B00MBUZ2DW/ref=cm_cr_getr_d_paging_btm_next_10?reviewerType=all_reviews&filterByStar=one_star&pageNumber=10

owen r evans          1.0 out of 5 stars P.O.S.
                      Reviewed in the United States on January 22, 2017
                      Verified  Purchase

This is suppose to be a gps for truckers, but it is a nearly worthless overpriced piece of crap. This baby will cause you all kinds of trouble. It wants to take you to places were trucks are a big no-no. Ìt wanted to take me on the lower lanes of the George Washington bridge or NY parkways. It will always route you on much longer out of the way routes. This is one of the worst gps I have ever used.

Brian G. Smith      1.0 out of 5 stars not as good.
                    Reviewed in the United States on March 23, 2015
                    Verified Purchase

It routes me down business routes through every stop light in towns. Doesn't seem to recognize truck routs or use them.

dedeic whitted     1.0 out of 5 stars Not very good
                   Reviewed in the United States on June 1, 2016
                   Verified Purchase

Not a very reliable device. I'm a truck driver and while using this it couldn't find North Carolina. It took me in circles (literally) and kept telling me to u-turn and its difficult do that in a semi hauling a trailer. I would return it but I missed the 30 day deadline since I was out on the road. Wouldn't recommend it at all.

C. R. Love         1.0 out of 5 stars Buy this over the Garmin if you want to be routed terribly, be unable to easily see detail
                   Reviewed in the United States on November 16, 2015

If it's going to route a 60 mile trip into a 150 mile trip, it should cost a lot less. This unit will route you far around the quickest way to go. it also has about half of all the speed limits showing as 5MPH under the actual speed limits. This coupled with the constant 'speed warning' audio clip makes this thing into a complete joke. FYI, this is after doing a complete update on it. Trying to zoom in or out takes seconds when it should be instant. Try zooming in to see

-23-

local detail on this unit, you'll hit the zoom in button several times and have to wait for it to slowly catch up through a series of stutters and jerks. Even after the lengthy update, it has incorrect fueling station information. It actually routed me to a Pilot had had been closed for years. The lot was nothing but a concrete graveyard. Buy this over the Garmin if you want to be routed terribly, be unable to easily see detail, be subjected to constant 'speed warning' in a nasally voice, and has faulty Point of Interest information.

### Best Buy Reviews of TND 730[21]

boogiebird      Google maps are more accurate
Verified Purchase |
Posted 5 years ago.

I bought this gps because I drive a 18 wheeler for a living and wanted a "truck" specific one. I thought it would make it easier and safer for me. So far, it hasn't. It has routed me down numerous "No Truck" streets and warned me I was on a "No Truck" street while I was looking at a sign that stated I was on a truck route.

thetruth      very poor quality
Verified Purchase |
Posted 4 years ago.

DO NOT WASTE YOUR MONEY. PLEASE BEWARE. Very disappointed as I am a truck driver. This device is very unreliable and your limited as to how to type in your information as to where you want to go. Meaning if its not in its program then it does not recognize location and you can not do anything about it besides use your cell phone navigation to get you where you need to be. So don't waste your money for a shoddy product.

---

[21]*See* https://www.bestbuy.com/site/reviews/rand-mcnally-intelliroute-tnd-730 -lm-7-gps-with-lifetime-map-updates-black/8426003?rating=1

### *TruckGPSReviews of TND 730*[22]

Posted by dwayne 1/5

> Same issues, after shelling out $400 bucks for a gps that's supposed to be top of the line, freezes up every day, no traffic updates unless you spend $20 bucks a year, and have to have WiFi to operate it, go to Walmart and buy the cheapest one you find, has more quality features than this piece of junk, another dissatisfied customer who will never buy another rand McNally product, only thing it's good for, paperweight or fishing weight

Posted by Keith G   1/5

> Piece of junk. Was Cutting off multiple times a day, only 6 weeks old and will not function at all now. Called customer service and was told to buy a new cord. Did that and guess what, it is not the cord. Very dissatisfied with this product, how many people do I have to warn to feel I've gotten my $400.00 back?

Posted by Richard   1/5

> I have had the rand mcnally since 2011 and it hs sent me to 4 low clearences. The routes are horrable on just about every occation. Be carefull don't trust it at all! I would not recommend it to my enemy.

75.    Reviews by verified purchasers of the TND 740 device on Amazon, Best Buy, trucker-forums, and other websites reveal common complaints by truckers. For example:

---

[22] *See* https://www.truckgpsreviews.com/rand-mcnally-tnd-730-review/

*Amazon Reviews of TND 740*[23]

John Michael     1.0 out of 5 stars DO NOT BUY THIS UNIT!
                 Reviewed in the United States on March 2, 2019
                 Verified Purchase

I have this unit and it worked great for about a month. After that the unit started failing once a week saying that mapping (and other) files have become corrupted and I have usually been on-the-road and forced to use expensive cellular data to run the GPS repair. Worse, it can, and will happen at any time! Imagine yourself trying to navigate the side streets in the DFW Metroplex with a Hazmat placarded load and this happening. I have contacted Rand McNally Technical Support several times by both calls and email. The calls only get me a totally disinterested individual that tells me that they are aware of the problem and are working on it and the emails just get me a "No Reply" email in return telling me they have received my email. This is unacceptable "support" and NO communication has been made to me directly acknowledging this issue or a time-frame to correct it. This unit is unreliable and defective.

McCall     1.0 out of 5 stars I had to finish my runs with my smart phone which had no problem locating the specific addresses ...
           Reviewed in the United States on October 13, 2017
           Verified Purchase

WORTHLESS. I've had this unit for 3 days as an OTR driver. So far it has only found 2 of the 12 or 14 addresses I've entered. I had to finish my runs with my smart phone which had no problem locating the specific addresses I entered. Very user UNfriendly. The GPS is getting returned and Im replacing it with the Garmin dezl 770LMT

---

[23]*See* https://www.amazon.com/product-reviews/B075SP87GD/ref=cm_cr_unknown ?filterByStar=one_star&pageNumber=1

Geoffrey S L Shaw 1.0 out of 5 stars Like ever other buyer of this Rand McNally product
Reviewed in the United States on July 21, 2018
Verified Purchase

1. After only 2 months the GPS functions stopped working with the infuriating error message, "Truck GPS isn't responding. Do you want to close it?" Jeezzzz..... Like ever other buyer of this Rand McNally product, I paid top dollar for the unit, even with the Amazon discount. The "fixes" available online all come down to waiting for RM to get around to fixing the bug in their current update that turns the unit into a unless brick. I had one alleged customer service rep actually tell me that it's "a minor problem, and given that the RM Road atlas is still available I shouldn't be too concerned." Really! Really? Honestly! With that kind of DO NoT BUY THIS UNIT OR ANY OTHER RM BRANDED ELECTRONIC PRODUCT. Their printed road atlas is great, but they shouldn't be in the e-devise business.

2. The UI for this devise sucks. If you don't have a postal address that RM recognizes, entering a destination is a mind-boggling pain in the as-.

Need to add a dispatch selected fuel stop to your itinerary? If you don't have the mailing address, good luck; you'll be spending at least 5-10 minutes messing around with the user interface to find something that MIGHT be the TA or Pilot you're looking for

Fredric G. Rubenstein  2.0 out of 5 stars Reliable? No.
Reviewed in the United States on September 30, 2019
Verified Purchase

I operate a charter bus. I was attracted to the 740 because it has a setting for buses.

That aside, I find the 740 unreliable. The routing sometimes take you onto streets where buses do not fit – and, yes, I set the bus dimensions accurately. The typeface on the screen is too small and there is no way to enlarge the font.

-27-

### *Best Buy Reviews of TND 740* [24]

AmmoDog    Rating 1 out of 5 stars with 1 review Not a good GPS
           Posted 3 weeks ago.

           Ok for everyone who has purchased this GPS and said it is
           great, they work for Rand McNally.

           I've had this one for 11 months now and it's been nothing
           but a dang headache. It does not give good directions, will
           send you anywhere from 10 to 30 miles out of the way.

           Crashes constantly, has now started losing the map
           information and going back to the home screen. Does not
           have all roads listed and the sad thing is Rand McNally
           makes the road maps for commercial vehicles.

           Rand McNally should stick with making GPS's and leave
           the tablet making to the experts. I need a GPS not
           something I can web browse on, put music on and store
           information, that's what I have a laptop and a smartphone
           for.

           It will not give the correct names for streets nor cities,
           pronounces St. Louis as Street Louis.

AnnGlenn   Rating 1 out of 5 stars with 1 review Rand McNally does not
           support, no map updates
           Posted 9 months ago.

           GPS works fine but Rand refuses to update the maps. Has
           not been done for 2 years. Used to be every month. They
           said they "are looking in to it" Said that 4 months ago and
           a year ago.

---

[24]*See* https://www.bestbuy.com/site/reviews/rand-mcnally-tnd-740-7-gps-black/
5867862?rating=1

-28-

### *TruckerGPSReviews of TND 740*[25]

Posted by Greg Bolinger

> This is my second Rand McNally. My first one was the 730 3.5 years ago. I didn't like it. It was always sending me in the wrong direction. I have been running the Garmin for the last 1.5 years. Decided to try the Rand McNally TND 740 because of some of the functions that Garmin does not have. Biggest mistake of my life. It sends me on dirt roads, has me making U turns, tells me to take an exit and then tells me I'm going the wrong way. When in 3D mode, I get green lines across the screen that almost obliterates the map. I've also had to reset it three times due to freezing up. I have had it for 30 days and cannot even return it. I do not recommend this product to anyone and I will own another one again. Waste of money.[26]

### *Freight Relocator Reviews of TND 740*[27]

Posted Dec 29, 2017:

> Well, my review of the Rand McNally TND 740 began yesterday evening, and ended this afternoon.
>
> Stopped in at Dow Chemical in Freeport this morning to make my delivery. Go inside to watch the safety video because my card expired a few years ago. Come back about an hour later, and the unit is no longer on the map screen (just like the previous night). This time, it is on some dark screen that has options for updates, GPS repair, and something else. I click the x to get out of that screen, and nothing. Click it again, and the whole screen flickers, third time, it actually left that screen.

---

[25]*See* https://www.truckgpsreviews.com/rand-mcnally-tnd-740-review/https://www.truckgpsreviews.com/rand-mcnally-tnd-740-review/

[26]Additional trucker complaints can be found on Amazon, Best Buy, and TruckerGPSReview, as well as other retailer websites and trucker forums.

[27]*See* https://www.freightrelocators.com/threads/i-just-bought-a-new-rand-mcnally-tnd-740-ongoing-review-thread.94724/page-2

-29-

Get unloaded, go to leave and set my destination for Fort Smith, AR. It decides to save me a few miles and route me straight through the woods, through an area that flat out sucks to drive through. I figured this would be a good opportunity to see how it recalculates a new route when I ignore this one's desire to send me over to 59. I reach Houston and turn up 45. GPS is freaking out, tries to put me on 10 to get me over to 59. I ignore it, and continue up 45. it then tries to get me onto 610 to take me over to 59. Ignore it and continue on, it tries to put me on the beltway to get me over there. Still ignore it, and it tries to start u-turning me at exits.

Continue on further, and it has me exiting about 20 miles up the road to cut across over to 59. Ignore that, and a few other options, and by the time I am in Huntsville, it tries to send me across highway 19. I'm laughing at this point as I take Exit 118 and swing into the Peelot. From the Peelot, it wants be to go back down to highway 19 to get back over to 59, lol. Take GPS from window, put it back in the box, grab receipt, and into the store I go.

Hand the box and receipt to the clerk, and exchange it for the Garmin DEZL 580. Thought about the 770, but after putting the RM 7 inch screen up in my windshield, decided to just stick with a 5 inch screen.

Unbox, plug it in, and low and behold, it picks the correct route. I get to the Dallas area, and low and behold, it doesn't have the speed limits all screwed up.

Call me crazy, but I bet if I get on the Dallas North Tollway now, this GPS won't try to drag me into residential areas because it thinks there is a low bridge on the tollway.

One last thing, the Garmin with the little 5 inch screen is easier to view than that 7 inch RM was.

Looking to buy an antique map made of paper? Rand McNally is the place to go. Looking to buy an actual quality GPS? Go with Garmin, the people who know how to actually build a quality GPS.

-30-

**K.    The Routing, Directional, Destination, and Other Navigational Errors Routinely Encountered By Plaintiff and Class Members When Using the TND 730 and TND 740 Have Made the Devices Largely Useless.**

76.    The TND 730's and 740's frequent and persistent failures ultimately rendered both devices predominantly useless, such that Plaintiff largely ceased depending on them. Plaintiff relied on his GPS devices to provide the most efficient routes, direct him away from areas where commercial trucks are prohibited, and provide other correct, reliable, and safe information to get him to his intended destinations. Because the devices continue to consistently show bad information, outdated or incorrect maps, wrong addresses, incorrect points-of-interest locations, and fail to route them correctly, Plaintiff and other Class members risk being routed into prohibited or unsafe areas, which could result in steep fines or injury.[28]

77.    From this, the TND 730 and TND 740 both:

  • frequently fail to recognize legitimate addresses;

  • route truckers to "no-truck" roads or roads that are otherwise unsafe for trucks;

  • warn truckers that they are on "no-truck" roads even though signs on the alleged "no-truck" roads say "truck route";

  • are consistently found to be have out-dated information about speed limits, curve warnings, etc.;

  • frequently routes truckers to low-hanging wires, dirt roads, narrow roads, steep grades, or directing them to complete impossible or impracticable U-turns;

---

[28]The constant distraction of a defective navigation also has the potential to create dangerous conditions for truck drivers and those around them.

• misdirect truckers to the wrong exit, then directs them to turn around;

• frequently mis-route truckers; and

• wrongly re-route truckers after missed exits or wrong turns.

**L.   Rand Knew About the TND 730's and TND 740's Numerous Problems Soon After They Were Placed on the Market, Failed to Disclose the Problems, and/or Continued to Manufacture and/or Market and Sell the Devices as Advertised.**

78.   The sheer volume of complaints and negative reviews also make it evident that Rand became aware of the many problems associated with the TND 730 and TND 740 within weeks or months after they were put on the market.

79.   Yet, Rand continued to market and sell the devices while concealing and failing to disclose to Plaintiff and other Class members that the devices did not function as promised and their myriad problems could not be fixed or corrected. All of this information is material to a reasonable consumer's decision about whether to purchase such a device.

80.   Rand should have disclosed these material facts to Plaintiff and Class members at the outset, but did not. Instead, the company misrepresented the reliability of the devices by marketing them as having been "Built from the ground up for professional drivers" and "designed to help truckers in each phase of their work day, from planning to driving."

81.   Rand also failed to disclose that obvious safety risks posed to truckers from driving with a substantially unreliable navigation system. The lack of updated

maps means the devices routinely direct truckers to unsafe terrain or hazardous road conditions, nonexistent addresses or locations, the wrong routes, residential areas where truck navigation is unsafe and/or prohibited, distracts or confuses them, or otherwise malfunctions, thereby placing drivers at a greater risk of accidents and harm than normal. These and other, similar safety risks are material to a reasonable consumer who is deciding whether to purchase a device and, as such, Rand should have disclosed this fact, but did not.

82.     At all relevant times, Rand had exclusive possession of the information regarding the TND 730 and TND 740 based upon Rand's own testing, industry testing, and consumer complaints it received. Rand also exclusively knew that the devices lacked any "fix." These facts were material to Plaintiff and other Class members, and although Rand had a duty to disclose these facts to Plaintiff and the Class, it failed to do so.

83.     Had Rand's advertisements, statements, or other materials and communications disclosed material information regarding the devices, the company's refusal to remedy the problems, and the absence of any "fix" for them, Plaintiff and other Class members would not have chosen to purchase the devices, much less pay the $400 or $500 they paid for them.

84.     Instead of disclosing the problems and defects to Plaintiff and other Class members, Rand purportedly "repaired" devices . . . without repairing the actual defects, sent purchasers "refurbished" devices that contained the same defects, or even claimed that the issue was the truck driver's fault, and not its TND devices.

**M.** **Plaintiff and the Class Have Been Injured By Rand's Actions.**

85.     Rand's conduct has imposed significant costs upon Plaintiff and Class members, including substantial out-of-pocket expenses incurred for defective TND 740 devices that do not work as advertised, warranted, or reasonably expected, in violation of Rand's warranties and applicable law.

86.     Rand's knowledge of the defective devices, and the lack of any "fix" for their problems, renders the warranties it provided to Plaintiff and Class members illusory. Under the circumstances alleged herein, the warranties constitute an unlawful, unfair, and fraudulent business practice, making it unconscionable.

87.     Rand failed to provide promised map updates to purchasers of the TND 730 and 740 devices, including "Lifetime Maps and Traffic Everywhere," "Free Lifetime Map Updates," "updates as long as you own the TND™," "improved maps," and "constantly updated maps."[29]

88.     Plaintiff has suffered damages and ascertainable losses as a consequence of Rand's actions as alleged herein, including, inter alia, the approximately $400.00 he paid to purchase the TND 730 and the $500.00 he paid to purchase the TND 740. Other Class members have also suffered damages and ascertainable losses as a consequence of Rand's misconduct alleged herein.

---

[29]Was discussed, infra, when Rand finally did issue an update in March 2022, the maps and data were chock-full of bad, incorrect, and even unsafe or dangerous information.

## V. APPLICABLE SUBSTANTIVE LAW

89.     Illinois's substantive laws apply to the proposed Class, as defined herein, because Plaintiff properly brings this Complaint in this district.

90.     Illinois's substantive laws may be constitutionally applied to the claims of Plaintiff and the Class under the Due Process Clause, 14th Amend., § 1, and the Full Faith and Credit Clause, art. IV., § 1, of the U.S. Constitution. Illinois has significant contact, or significant aggregation of contacts, to the claims asserted by Plaintiff and all Class members, thereby creating state interests that ensure that the choice of Illinois state law is not arbitrary or unfair.

91.     Rand's headquarters and principal place of business are located in Illinois. Rand also owns property and conducts substantial business in Illinois. Therefore, Illinois has an interest in regulating Rand's conduct under its laws. Rand's decision to reside in Illinois, place its headquarters there, and avail itself of Illinois's laws renders the application of Illinois law to the claims made herein constitutionally permissible.

92.     A substantial number of members of the Class also reside in Illinois and purchased the TND 740 in that state.

93.     Illinois is also the state from which Rand's alleged misconduct emanated.

94.     This conduct similarly injured and affected Plaintiff and Class members. For instance, Rand's marketing and engineering efforts relating to the TND 730 and TND 740, as well as its warranty decisions and decisions not to develop and release map updates, were undertaken and orchestrated from its headquarters in Illinois.

95. Application of Illinois's laws to the Class is also appropriate under Illinois's choice-of-law rules because Illinois has significant contacts to the claims of Plaintiff and the Class, and Illinois has a greater interest in applying its laws here than any other interested state.

96. Although the Plaintiff resides in Tennessee, Rand's principal place of business is in Chicago, Illinois. Plaintiff often travels to or through Illinois in his truck while using a TND 740 he purchased at a Love's Truck Stop in Illinois. When Plaintiff was making that purchase in Illinois in 2017, he read the false and misleading statements made by Rand on the box or packaging, as set forth herein.

97. Upon information and belief, all of Rand's actions – from designing and developing the TND 730 and TND 740, to manufacturing, marketing, advertising, selling, and repairing or refurbishing the devices, as well as all customer support functions, emanated from Rand's headquarters in Illinois.

98. In addition to buying the TND 740 at a Love's Travel Stop in Illinois, Plaintiff also mailed his TND 730 and TND 740 to Rand in Illinois, sent payments to Rand there for repairs, and repeatedly called Rand's Help Center in Illinois to discuss or complain about problems with his device or the lack of map updates. All of these communications were directed to Illinois and any and all responding or return communications by Rand were directed from Illinois to Plaintiff.

99. In addition to calling, Plaintiff also repeatedly sent emails to Rand's customer service representatives in Illinois, questioning or complaining about the mountain of navigational errors generated by the TND 730 and TND 740 and the

company's ongoing failure to release map updates. For example, Plaintiff corresponded with one particular customer service representative between November 2020 through January 2021 about the lack of map updates, only to be promised updates that never materialized. Lastly, the warranties for the TND 740 provides that its "terms and conditions" "shall be governed by the laws of Illinois."

100.    In the alternative, the law of the home state of Plaintiff and each Class member should apply to his or her claim.

## VI.  CLASS ACTION ALLEGATIONS

101.    ***Definition.*** Plaintiff brings this action as a class action under Fed. R. Civ. P. 23(a) and (b) on behalf of the following proposed Class:

> All current and former purchasers of the Rand McNally TND 730 and TND 740 Intelliroute GPS truck navigational devices in the United States.

102.    Alternatively, Plaintiff seeks certification of an appropriately ascertainable and geographically suitable class of purchasers of the Rand TND 730 and/or TND 740.

103.    Excluded from the Class are Rand and any entities in which it has a controlling interest, Rand's agents and employees, Plaintiff's attorneys and their employees, the judge to whom this action is assigned, any member of the judge's staff and immediate family. Also excluded from the Class are persons who assert claims for personal injury, wrongful death, and/or emotional distress.

-37-

104. Plaintiff reserves the right to expand the Class definition to seek recovery on behalf of additional persons as warranted, as facts are learned in further investigation and discovery.

105. ***Ascertainability.*** Class members are readily ascertainable from the information and records in the possession, custody, or control of Rand. The Class can be identified through Rand's records or the records of Rand's agents.

106. ***Numerosity.*** Plaintiff reasonably estimates that Rand has sold tens of thousands of TND 730s and TND 740s since launching the devices, nine and seven years ago, respectively. Therefore, the Class is sufficiently numerous such that individual joinder of all members is impractical, as required by Fed. R. Civ. P. 23(a)(1). The precise number of Class members can be determined by reviewing records in Rand's possession, custody, and control.

107. ***Commonality.*** There are common questions of law and fact that predominate over any questions affecting only the individual members of the Class, as required by Fed. R. Civ. P. 23(a)(2) and Fed. R. Civ. P. 23(b)(3). The wrongs alleged against Rand are common to each and every member of the proposed Class. These common questions do not vary from one Class member to another and may be determined without reference to the individual circumstances of any Class member. The common questions include, but are not limited to, the following:

      a.     Whether the TND 740 was/is defective;

      b.     Whether Rand knew that the TND 740 was/is defective;

c. Whether Rand omitted and/or concealed material facts from Plaintiff and the Class regarding the defect inherent in the TND 730 and TND 740;

d. Whether Rand made false and/or misleading statements about the TND 730 and TND 740;

e. Whether Rand's false and/or misleading statements of fact and concealment of material facts concerning the performance and reliability of the TND 730 and TND 740 were likely to deceive consumers;

f. Whether Rand has engaged in unfair or deceptive acts or practices in connection with the advertising marketing and sale of the TND 730 and TND 740;

g. Whether Rand has breached its written Warranties;

h. Whether Rand has breached the implied warranty of merchantability;

i. Whether Rand has been unjustly enriched;

j. Whether Plaintiff and the Class have suffered damages as a result of Rand's wrongful conduct and, if so, the appropriate amount thereof; and

k. Whether Plaintiff and the Class are entitled to equitable and/or other relief and, if so, the nature of such relief.

108. ***Typicality.*** Plaintiff's claims are typical of the claims of other Class members, as required by Fed. R. Civ. P. 23(a)(3). Plaintiff and all Class members have suffered the same injuries as a result of Rand's wrongful conduct. Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of the Class members and are based on the same legal theories. In addition, Rand's defenses are and will be typical of and the same or identical for each of the members of the Class

and will be based on the same legal and factual theories. There are no unique defenses to any of the Class members' claims.

109. **Adequacy.** Plaintiff will fairly and adequately represent and protect the interests of Class members, and has retained counsel with substantial experience in the prosecution of class actions, as required by Fed. R. Civ. P. 23(a)(4). Plaintiff and his counsel are committed to the vigorous prosecution of this action on behalf of the Class and have the financial resources to do so. Neither Plaintiff nor his counsel have any interests adverse to the Class they seek to represent.

110. **Superiority.** A class action is superior to other available method for the fair and efficient adjudication of this controversy, under Fed. R. Civ. P. 23(b)(3). Individual litigation of the claims of all Class members is economically unfeasible and procedurally impracticable, as the damages suffered by individual Class members are relatively small. Class members thus have no interest in individually controlling the prosecution of separate claims against Rand. Individualized litigation also presents the potential for inconsistent or contradictory judgments. Absent a class action, most Class members would find the cost of litigating their claims prohibitive, and would thus have no effective access to the courts or remedy at law. A class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## VII.  CAUSES OF ACTION

### COUNT I

### VIOLATIONS OF THE MOSS-MAGNUSON WARRANTY ACT
### (15 U.S.C. §§ 2301-2312 – Written Warranty)

111.    Plaintiff realleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein, to the extent not inconsistent with the claims asserted in this Count.

112.    Congress enacted the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 et seq. ("the MMWA"), in response to widespread consumer complaints regarding misleading and deceptive warranties. The MMWA imposes civil liability on any "warrantor" for failing to comply with any obligation under written and implied warranties. 15 U.S.C. § 2310(d)(1).

113.    The MMWA provides a private right of action by purchasers of consumer products against manufacturers or retailers who, inter alia, fail to comply with the terms of an implied or written warranty. 15 U.S.C. § 2310(d)(1). As demonstrated above, Rand has failed to comply with the terms of its express and implied warranties for its TND 740 devices.

114.    The TND 740 Intelliroute GPS device, like similar GPS devices, is a "consumer product," as defined by 15 U.S.C. § 2301(1). It is, after all, based upon the same GPS system as other vehicle GPS devices, and although it provides maps with certain navigational details not needed by most drivers, the engineering, hardware, and concept of the device are the same as car GPS devices. *See infra*, ¶¶ 23-32.

115.    Plaintiff and all Class members are "consumers" as defined by 15 U.S.C. § 2301(3).

116.    Rand is a "warrantor" and "supplier" as defined by 15 U.S.C. §§ 2301(4) and (5).

117.    Rand made "written warranties" – including but not limited to, those set forth in ¶ 42, as well as the Lifetime map update warranty discussed in ¶¶ 37 and 47 – to Plaintiff and all Class members within the meaning of 15 U.S.C. § 2301(6).

118.    Rand's written warranties made to Plaintiff and all Class members that the device was free of all defects were the same in all material respects.

119.    Rand knew that the TND 740 device at issue had serious defects, but nevertheless marketed and otherwise sold it with written warranties that the device was free from defects and would perform in the manner and for the purpose that they are intended.

120.    Rand was obligated under the terms of the written warranties to repair or replace the defective navigation system to ensure the devices were working properly.

121.    Rand has breached its written warranties, as set forth above, by supplying devices in a condition that does not meet its warranty obligations, and by failing to repair or replace the defective devices and/or refund the amounts paid by Plaintiff and other Class members to replace the defective devices.

122.    Plaintiff and the Class cannot and should not be limited to the remedies set forth in the written warranties. Instead, they should be awarded other appropriate relief, including compensatory damages and injunctive relief.

123.    Rand had reasonable and adequate notice of Plaintiff's and the Class's claims of breach of express and implied warranty from the sale of the devices.

124.    As described above, Rand has received, upon information and belief, numerous complaints and other notices from its customers nationwide advising it of the defect in the devices at issue.

125.    Plaintiff has given Rand a reasonable opportunity to cure its failures with respect to its warranty breaches, and the company has failed to do so. To the extent any member of the Class has not given Rand a reasonable opportunity to cure, any such failure is excused because of Rand's conduct described herein.

126.    All jurisdictional prerequisites for this claim have been satisfied.

127.    By Rand's conduct, as described herein, including its knowledge of the defective TND 740 device and actions or omissions in the face of that knowledge, the company has failed to comply with its obligations under its written promises, warranties, and representations.

128.    As a result of Rand's breach of its written warranties, Plaintiff and the Class seek to recover damages caused as a direct result of Rand's breach of its written and implied warranties and its deceitful and unlawful conduct. Plaintiff and the Class are entitled to revoke their acceptance of the TND 740 device, and obtain damages under 15 U.S.C. § 2310.

129.    The MMWA also provides for "other legal and equitable" relief. 15 U.S.C. § 2310(d)(1). As a result of Rand's breaches of its express and implied warranties, Plaintiff and the Class have been injured and are entitled to equitable/injunctive relief and/or damages in a measure and amount which are to be determined at trial.

130.    Plaintiff and the Class also seek reformulation of Rand's written warranties to comport with its obligations under the MMWA and with consumers' reasonable expectations. Additionally, Plaintiff seeks to enjoin Rand from acting unlawfully as further alleged, including discouraging Plaintiff from seeking all available remedies.

131.    The MMWA also provides for an award of costs and expenses, including attorneys' fees, to prevailing consumers in the Court's discretion. 15 U.S.C. § 2310(d)(2). Plaintiff intends to seek such an award as prevailing consumers at the conclusion of the case.

## COUNT II

### BREACH OF EXPRESS WARRANTY
### (810 ILCS 5/2-313) Based Upon Defects (TND 740 Only) and Failure to Provide Lifetime and Updated Maps, As Promised (TND 730 and 740)

132.    Plaintiff realleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein, to the extent not inconsistent with the claims asserted in this Count.

### *Defects in Workmanship and Materials of the TND 740*

133.    Rand expressly warranted the TND 740 device as free from defects in workmanship and materials.

134.    Rand's express warranties covered the TND 740 devices under the circumstances described herein.

135.    The express warranty[30] was provided to Plaintiff and members of the Class by Rand and specifically extends to original purchasers of the TND 740 for the period of warranty coverage.

136.    Plaintiff and the Class justifiably relied upon Rand's representations and justifiably acted in ignorance of the material facts Rand omitted and concealed when they decided to purchase the devices.

137.    Rand has breached its express warranties, as set forth above, by supplying the TND 740 device in a condition which does not meet its warranty obligations, *i.e.*, by failing to repair or replace the defect and/or defective parts inherent in the TND 740, and by supplying devices that were defective from the day they were sold, destined to fail prematurely.

138.    In addition to having purchased Rand's defective device, as a direct result of the failure of the devices to perform as warranted, Plaintiff and the Class have also incurred and will continue to incur expenses to repair and/or replace the device.

139.    Rand had actual or constructive knowledge of the defects in the TND 740 as early as 2017, as TND 740 purchasers began complaining – via the websites of multiple Rand retailers and trucker websites, *e.g.*, Best Buy, Amazon, TruckerGPS – about the device's many problems.

---

[30]"Rand McNally warrants the TND/RVND Products, and the component parts thereof, will be free of defects in workmanship and materials for a period of one (1) year from the date of first consumer purchase."

140.     Notwithstanding Rand's knowledge of the TND 740's numerous problems, it is within the realm of common knowledge that a new trucker GPS device that has this many defects – *e.g.*, fails to recognize legitimate addresses; routes truckers to "no-truck" roads or roads that are otherwise unsafe for trucks; improperly warns truckers that they are on "no-truck" roads when they are not; consistently has out-dated information about speed limits, curve warnings, etc.; frequently routes truckers toward low-hanging wires, dirt roads, narrow roads, steep grades, or directs them to complete impossible or impracticable U-turns; misdirects truckers to the wrong exit, then directs them to turn around; frequently mis-routes truckers; and wrongly re-routes truckers after missed exits or wrong turns – <u>does not conform to its warranties</u>.

141.     Plaintiff and other Class members risk being routed by the TND 740 into prohibited or unsafe areas, which could result in steep fines, vehicle or property damage, or personal injury.

142.     Thus, Rand was aware of specific defects that not only rendered the device unusable as a reliable GPS, but also created a significant safety concern to truckers. Yet, Rand continued to make, market, advertise, and sell the TND 740, despite knowing it was not as warranted.

143.     While, upon information and belief, Plaintiff may have contacted Rand in 2017 or early 2018 to complain about device defects and performance, any requirement of a formal or other demand has been obviated by Rand's own knowledge of the defects and its subsequent conduct.

-46-

144.    Upon information and belief, since putting the TND 740 for sale on the market, Rand has received countless complaints (and other notices) from truck drivers nationwide who advised the company of one or more of the device's defects. Rand has failed to provide Plaintiff and the Class with a product that conforms to the qualities and characteristics that Rand expressly warranted when it sold them the device.

145.    Any contractual language contained in Rand's express warranties that attempts to limit remedies or purports to exclude the type of defects that affect Plaintiff's and the Class's devices is unconscionable, fails to conform to the requirements for limiting remedies under applicable law, causes the warranties to fail of their essential purpose, and is, thus, void.

### Failure to Provide Lifetime Maps and Updates for the TND 730 and 740

146.    As described above, Rand expressly warranted that the TND 730 and 740 devices provide "Lifetime Maps." Specifically, through advertisements, product-labeling, packaging, and other means, Rand repeatedly warrantied and/or represented that the devices would provide up-to-date maps to truckers, *e.g.*, "Lifetime Maps and Traffic Everywhere," "Free Lifetime Map Updates," and "updates as long as you own the TND™." Significantly, Rand further represented to Plaintiff and the Class of TND 730 and 740 purchasers that the company was "constantly updating maps."

147.    Such express warranties covered the TND 730 and 740 under the circumstances described herein.

148.   Plaintiff and the Class purchased TND 730 and 740 devices without knowing that Rand appears to have had no intention of honoring its "Lifetime Maps" or "constant map update" promises.

149.   Despite the significant price-tag for the TND 730 ($400.00) and TND 740 ($500.00) devices, the company uniformly failed to "constantly update" maps and/or release timely and accurate map, route, and point-of-interest updates, as promised. Consequently, the devices do not provide truckers with accurate, much less up-to-date maps, having failed for nearly five years to "push out" any significant map update, much less a reliable one. Instead, the maps for the TND 730 and 740 devices consistently generate bad data, wrong directions, incorrect addresses or even non-existent locations, and routinely fail to locate addresses or even streets, among other problems.

150.   When Plaintiff and other Class members complained about inaccurate maps, misinformation about points-of-interest, and poor or unsafe routing, *e.g.*, being directed to the wrong destination or drop-off address, to narrow or residential roads, low bridges, steep grades, or to non-existent travel centers, or complained, about out-of-date maps, Rand promised "updates in the next few months" or similar excuses, only to have the map updates repeatedly pushed back indefinitely, or even canceled.

151.   In response to an April 3, 2021 email inquiry from Plaintiff [Ticket #: 1459207], Rand informed him that "there will be no future updates provided for the TND 730 devices."

152.    Between 2017 and March 2022, Rand failed to issue any significant map updates for the TND 740, if it released any at all. When it finally did issue an update in March 2022, the maps and data were filled with bad, incorrect, and even unsafe or dangerous information.

153.    These and other map-related problems continue to persist even after Rand finally pushed out a long-overdue map update for the TND 740 in March 2022. By file volume alone, the March 2022 update appeared to be a significant map update. However, for the next fourteen (14) months, as Plaintiff continued to drive his truck across the country over tens of thousands of miles using the TND 740, he encountered one problem after another – some of them dangerous – with the newly-updated maps.

154.    That experience compelled Plaintiff to conclude that the March 2022 map update is markedly deficient, saddled with not only bad, but often misleading or unsafe information, non-existent addresses, wrong directions, incorrect street addresses, and more erroneous information. Plaintiff has discovered that the update failed to rectify many, if not most, of the fundamental problems or deficiencies that had long been associated with the TND 740.

155.    Plaintiff and other Class members reasonably expected that Rand would honor its promise to provide "Lifetime Maps and Traffic Everywhere," "Free Lifetime Map Updates," "updates as long as you own the TND™," and that it would be "constantly updating maps" for his TND 730 and 740 devices. It did not.

156.    Rand has also breached its "Lifetime Maps, "Free Lifetime Map Updates," and "constantly updating maps" warranty, as described, by failing to provide Plaintiff

-49-

and Class members timely, effective, or reasonable map updates, much less "constant map updates," for their TND 730 and 740 devices.

157.    This breach is also continuing. Upon information and belief, Rand has made no effort to cure the deficient March 2022 updated maps Plaintiff downloaded onto his TND 740, nor has it pushed out "constant map updates," as promised.

158.    Although demand and notice are obviated by Rand's own failure to push out the promised updates and maps, it nevertheless received timely demand and (and repeated) notice, including written notice, of its continuing breach of the "Lifetime Map," "Free Lifetime Map Updates," and "constant map updates" warranty. For example, on November 16, 2020, Plaintiff contacted Rand and inquired about when an update would be issued, complaining that multiple Love's Travel Stops that had opened more than two years earlier were still not recognized on the TND 740, and asked "what is taking you so long?" A Rand Customer Service Supervisor responded that the company was "working to release a travel center point of interest update in the next few months."

159.    When Plaintiff followed up on that November 2020 complaint in January 2021, complaining again about no map updates, the same representative wrote, "Unfortunately, these updates have been pushed back due to the cyber incident that we had . . . . As of now, I don't have an ETA on when that will be."

160.    Plaintiff and the Class seek to recover damages caused as a direct result of Rand's breach of its written warranties and its deceitful and unlawful conduct.

### *The Warranty Accompanying the TND 730 and 740*
### *Was Procedurally and Substantively Unconscionable.*

161.    The warranty accompanying the TND 730 and 740 was procedurally and

substantively unconscionable because of:

■ the disparity in bargaining power of the parties;

■ the Plaintiff and Class members' lack of knowledge that the devices were defective;

■ the inability of Plaintiff and Class members to bargain with Rand to increase the "take it or leave it" durational warranties;

■ the disparity in sophistication of the parties;

■ the unfair terms in the warranty (including, but not limited to, boiler plate warranty language and durational warranties that unfairly favored Rand (particularly where there were defects known only to Rand and unfairly shifting repair costs to consumers when the devices prematurely failed during their reasonably expected life);

■ absence of effective warranty competition; and

■ the fact that the devices failed with substantially fewer hours of operation than competitor truck GPS devices from other manufacturers.

162.    Rand's warranties are oppressive, unreasonable and unconscionable

because increased unanticipated repair costs, defects, and premature device failure

constitute an unfair contractual surprise for Plaintiff and Class members.

163.    Purchasers reasonably expected the devices to function well in excess of

one year before requiring repairs.

164. Given the conduct of Rand and the defects in the devices (that Rand knew were defective), the durational limitation of the warranty is oppressive, unreasonable, and unconscionable because the warranty disclaimers of Plaintiff and Class members were neither knowing nor voluntary.

165. Plaintiff and Class members had an absence of meaningful choice in the purchase of the devices and the contractual terms were unreasonably favorable to Rand.

166. The bargaining position of Rand for the sale of the TND devices was grossly disproportionate and vastly superior to that of individual purchasers, including Plaintiff and Class members, because Rand knew there were defects in devices affecting the durational operation.

167. Rand knew that defects in the TND devices would cause certain failures shortly after the warranty expired and certainly within one-third of the useful expected life of the device. The durational limitation in the warranty was made too short to discover the device defect.

168. Rand also artificially limited the duration of the warranty period to avoid performing warranty repairs in order to maximize profits through the sale of defective devices.

169. Plaintiff and Class members were also led to believe that they had bargained for warranty protection, which wound up being an empty promise.

170.    Upon information and belief, neither Plaintiff nor Class members received their limited warranties from Rand until after their purchases of the TND devices were complete, which made the one-year time period procedurally unconscionable.

171.    Upon information and belief, Rand knew of the defects before Plaintiff purchased his devices, yet continued to make, market, advertise, and sell the devices.

172.    The only meaningful remedy available to Plaintiff and Class members under the warranty would have been to receive another device presumably containing the same defect, which is no remedy at all.

173.    For all this, the warranty's durational limitation is inordinately one-sided in favor of Rand that such limitation is substantively and procedurally unconscionable,

## COUNT III

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (810 ILCS 5/2-314)
### (TND 740 Only)

174.    Plaintiff realleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein, to the extent not inconsistent with the claims asserted in this Count.

175.    Plaintiff and the members of the Class are "buyers" as that term is defined in 810 ILCS 5/2-103.

176.    Rand is a "seller" as that term is defined in 810 ILCS 5/2-103.

177.    The TND 740 devices are "goods," as defined in 810 ILCS 5/2-105.

178.    Rand is a merchant in the sale of the devices to Plaintiff and the Class, pursuant to 810 ILCS 5/2-104. Rand manufactures, markets and sells the devices;

thus, Rand provided Plaintiff and the Class with an implied warranty that the TND 740 are both merchantable and fit for the ordinary purposes for which the devices were sold.

179.    Under the MMWA, "[n]o supplier may disclaim or modify . . . any implied warranty to a consumer with respect to such consumer product if (1) such supplier makes any written warranty to the consumer with respect to such consumer product . . . ." 15 U.S.C. § 2308(a). "A disclaimer . . . made in violation of this section shall be ineffective for purposes of this chapter and State law." *Id*. § 2308(c). Thus, Rand's disclaimer of implied warranties is ineffective.

180.    For the same reasons Rand's express warranty is unconscionable, its implied warranty disclaimer is also substantively or procedurally unconscionable.

181.    The TND 740, however, is not fit for ordinary purposes for which such navigation systems are to be used because, among other defects, they do not show the correct location of the vehicle, or provide accurate map, route, and point of interest information to Plaintiff and the Class, most notably through a failure to update maps or provide updated maps and display incorrect routes.

182.    As a result, the devices do not meet the expectations of Plaintiff or any other reasonable purchaser of the TND 740 device as to the manner in which the device should perform when used for ordinary purposes, because the manner in which the device performed is so deficient and below a minimum level of quality as to render them unfit for its ordinary use and purpose. By selling the devices, as well as by failing to fix or repair them, Rand has breached the implied warranty of merchantability.

183.   As alleged herein, Rand's sales of the device breached the implied warranty of merchantability because the device failed to function as a reliable GPS device. The device is therefore defective, unmerchantable, and unfit for its intended purpose at the time of sale.

184.   Plaintiff and the Class have attempted to use the TND 740 for its intended and ordinary purposes.

185.   Plaintiff and the Class have performed each and every duty required under the terms of the warranties, except as may have been excused or prevented by the conduct of Rand or by operation of law in light of Rand's unconscionable conduct.

186.   Members of the Class have provided timely notice to Rand regarding the problems they experienced with the devices and, notwithstanding such notice, Rand has failed and refused to offer Plaintiff and the Class an effective remedy, or such notice has otherwise been excused by Rand's conduct and operation of law.

187.   In addition, as described above, Rand has received, on information and belief, numerous complaints and other notices from consumers and others advising it of the problems associated with the TND 740.

188.   Rand knew or should have known that its TND 740 device was defective, unmerchantable, and unfit for its intended use or purpose.

189.   Rand's conduct in selling and marketing defective truck navigation devices, along with Rand's failure to disclose to Plaintiff and the Class the existence of the defect in the devices, is also a breach of Rand's obligation of good faith and fair dealing.

190. By virtue of the conduct described herein, Rand has breached its implied warranty of merchantability.

191. The MMWA, 15 U.S.C. § 2308(a), imposes restrictions on a supplier's or manufacturer's ability to disclaim implied warranties for consumer goods. Under the MMWA, a supplier who makes a written warranty may not disclaim or modify any implied warranty except to limit the duration of the implied warranty to the duration of a written warranty, so long as the limitation is conscionable and is prominently is simply displayed on the face of the express warranty. *See* 15 U.S.C. § 2308(a).[31]

---

[31]The pertinent text of the statute is as follows:

§ 2308. Implied warranties

(a) Restrictions on disclaimers or modifications. No supplier may disclaim or modify (except as provided in subsection (b)) any implied warranty to a consumer with respect to such consumer product if (1) such supplier makes any written warranty to the consumer with respect to such consumer product, or (2) at the time of sale, or within 90 days thereafter, such supplier enters into a service contract with the consumer which applies to such consumer product.

(b) Limitation on duration. For purposes of this title [15 USCS §§ 2301 et seq.] (other than section 104(a)(2)) [15 USCS § 2304(a)(2)] implied warranties may be limited in duration to the duration of a written warranty of reasonable duration, if such limitation is conscionable and is set forth in clear and unmistakable language and prominently displayed on the face of the warranty.

(c) Effectiveness of disclaimers, modifications, or limitations. A disclaimer, modification, or limitation made in violation of this section shall be ineffective for purposes of this title [15 USCS § 2304(a)] and State law.

*See* 15 USCS § 2308.

192.    Here, the TND 740 is a GPS device, which is a "consumer good" within the meaning of the MMWA. *See* 15 U.S.C. § 2301(1) (defining "consumer product" as "any tangible personal property which is distributed in commerce and which is normally used for personal, family, or household purposes"). Thus, the disclaimer limitations of the MMWA applies. Therefore, to the extent that Rand might urge that its written warranty disclaims all implied warranties, this argument must fail as the MMWA does not permit such broad disclaimers.

193.    Plaintiff and the Class seek to recover damages caused as a direct and proximate result of Rand's breach of the implied warranty and its and unlawful conduct.

**COUNT IV**

**VIOLATIONS OF THE CONSUMER FRAUD
AND DECEPTIVE PRACTICES ACT
(815 ILCS 505/2)
(TND 730 and 740)**

194.    Plaintiff realleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein, to the extent not inconsistent with the claims asserted in this Count.

195.    Illinois's Consumer Fraud and Deceptive Business Practices Act ("the Act") prohibits unfair or deceptive acts or practices in the conduct of any trade or commerce, including among others, "the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, . . . whether any person has in fact been misled,

-57-

deceived, or damaged thereby." 815 Ill. Comp. Stat. § 505/2. The Act also prohibits suppliers from representing that their goods are of a particular quality or grade that they are not.

196.    The devices are "merchandise," as defined in 815 Ill. Comp. Stat. § 505/1(b).

197.    Rand is a "person," as defined in 815 Ill. Comp. Stat. § 505/1©.

198.    Plaintiff and other Class members are "consumers," as defined in 815 Ill. Comp. Stat. § 505/1(e) and used the TND 730 and 740 for personal and business use, but not for resale.

199.    Rand had an ongoing duty to all of its customers to refrain from unfair and deceptive practices under the Illinois CFA.

200.    As more fully discussed in ¶¶ 34-88 and ¶¶ 146-60 of this Amended Complaint, which are incorporated herein by reference, Rand engaged in misleading, false, unfair or deceptive acts or practices that violated the Illinois CFA by representing that the devices have characteristics, uses, benefits, and qualities which they do not have; representing that the devices are of a particular standard and quality when they are not; advertising the devices with the intent not to sell them as advertised; failing to disclose the defects and true device-performance, by marketing the devices as reliable to truckers, and of high quality, and by presenting itself as a

reputable manufacturer that valued quality and that stood behind its products after they were sold; and otherwise engaging in conduct likely to deceive.

201.    Rand was aware of the defects in the devices when it marketed and sold them to Plaintiff and the Class and failed to disclose material defects to Plaintiff and the Class. Rand knew or should have known that its conduct violated the Illinois CFA.

202.    Rand also knowingly withheld the information regarding the defects in order to continue to sell the devices.

203.    Rand's unfair or deceptive acts or practices were likely to deceive, and did in fact deceive reasonable consumers, including Plaintiff and the Class, about the true quality, efficiency, and value of the devices.

204.    The facts concealed or not disclosed by Rand to Plaintiff and the Class are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase the devices. If Plaintiff and the Class had been aware of the defects, they would not have bought either device.

205.    Rand's violations present a continuing risk to Plaintiff and other Class members and affect the public interest.

206.    Plaintiff and other Class members were injured as a result of Rand's conduct in that they purchased devices that were largely unusable as GPS devices, overpaid for the devices, and did not receive the benefit of their bargain. These injuries are the direct and natural consequence of Rand's misrepresentations and omissions.

207.    Plaintiff and the Class members have been damaged as a direct and proximate result of Rand's failure to disclose material defects in the devices and are entitled to recover such damages as are just and proper.

## COUNT V

## VIOLATIONS OF THE ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT
## (815 ILCS § 510, et seq.)
## (TND 730 and 740)

208.    Plaintiff realleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein, to the extent not inconsistent with the claims asserted in this Count.

209.    The Illinois Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. § 510/2, prohibits deceptive trade practices, including among others, those "(2) caus[ing] likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services; . . . (5) represent[ing] that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have . . .; (7) represent[ing] that goods or services are of a particular standard, quality, or grade . . . if they are of another; . . . (9) advertis[ing] goods or services with intent not to sell them as advertised; . . . [and] (12) engag[ing] in any other conduct which similarly creates a likelihood of confusion or misunderstanding."

210.    Rand is a "person," as defined in 815 Ill. Comp. Stat. § 510/1(5).

211.   As more fully discussed in ¶¶ 34-89 and ¶¶ 147-75 of this Amended Complaint, which are incorporated herein by reference, Rand has engaged in deception, fraud, unfair practices, and concealment by the conduct, statements, and omissions described in this Amended Complaint, and by knowingly and intentionally concealing from consumers that the TND 730 and 740 are defective. Accordingly, Rand engaged in unfair or deceptive acts or practices as defined in 815 Ill. Comp. Stat. § 510/2.

212.   Accordingly, Rand engaged in unfair or deceptive acts or practices as defined in 815 Ill. Comp. Stat. § 510/2, including representing that the device has characteristics, uses, benefits, and qualities which it does not have; representing the device is of a particular standard and quality when it is not; advertising the device with the intent not to sell it as advertised; and otherwise engaging in conduct likely to deceive.

213.   The facts concealed or not disclosed by Rand to Plaintiff and the Class regarding the device's defects are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase the device. Had Plaintiff and the Class known about the facts concealed by Rand, they would not have purchased the device.

214.   Plaintiff and the other Class members were injured as a result of Rand's conduct, including but not limited to their purchase of a product they otherwise would not have purchased and them being deprived of the benefit of their bargain. These injuries are the direct and natural consequence of Rand's misrepresentations and omissions.

215.    The injuries suffered by Plaintiff and the Class are greatly outweighed by any potential countervailing benefit to consumers or to competition, nor are they injuries that Plaintiff and the Class should have reasonably avoided.

216.    Plaintiff and the other Class members' injuries were proximately caused by Rand's fraudulent and deceptive business practices and Plaintiff and the Class seek to recover damages therefor.

**COUNT VI**

**UNJUST ENRICHMENT**
**(TND 730 and 740)**

217.    Plaintiff realleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein, to the extent not inconsistent with the claims asserted in this Count.

218.    Rand received monies as a result of Plaintiff's and Class members' purchases of the device, and Rand wrongfully accepted and retained these benefits to the detriment of Plaintiffs and the Class.

219.    Rand's enrichment at the expense of Plaintiff and the Class was unjust.

220.    As a result of Rand's wrongful conduct, Plaintiff and the Class are entitled to restitution from and institution of a constructive trust disgorging all profits, benefits, and other compensation obtained by Rand, plus attorneys' fees, costs, and interest thereon.

**VIII.  JURY DEMAND**

221.    Plaintiff requests a jury on all issues so triable.

## IX.  PRAYER FOR RELIEF

Plaintiff, on behalf of himself and all others similarly situated, requests the Court enter judgment against Rand, as follows:

A.  That summons be issued and Rand be required to answer according to law;

B.  That the Court certify the Class proposed herein, appoint the named Plaintiff as the Class Representative for the proposed Class, and appoint the undersigned counsel as Class Counsel;

C.  That Plaintiff and the Class be awarded a declaratory judgment declaring that Rand's conduct alleged herein violated the aforementioned laws and that Rand is financially responsible for notifying all Class members of the problems with the TND 730 and 740 devices;

D.  That Plaintiff and the Class be awarded a judgment for all available compensatory or statutory damages, including interest thereon, in an amount to be proven at trial;

E.  That Rand disgorge, for the benefit of the Class, all or part of the ill-gotten profits it received from the sale of devices, or to make full restitution to Plaintiff and the Class;

F.  That Rand be enjoined from further deceptive advertising, marketing, distribution, and sales practices with respect to the devices, and be enjoined from selling the device in the future unless or until the TND 730 and 740 devices can be sold

as advertised and warranted, *i.e.*, free from defects and with regular timely and periodic updates to insure accurate maps, routing, points-of-interest, etc.

G.     That Plaintiff and the Class be awarded a judgment for the attorney fees, litigation expenses and costs of suit;

H.     That Plaintiff and the Class be granted leave to amend their Complaint to conform to the evidence produced at trial; and

I.     That Plaintiff and the Class be awarded such other and further relief as the Court deems proper under the circumstances.

Respectfully submitted, this 15th day of May, 2023.

/s/ *W. Allen McDonald*
W. Allen McDonald, Esq.
Email: amcdonald@lpwpc.com
LACY, PRICE & WAGNER, P.C.
249 North Peters Road, Suite 101
Knoxville, Tennessee 37923
Tel:  865.246.0800
Fax: 865.690.8199

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I do hereby certify, that on May 15, 2023, a copy of the foregoing motion was submitted electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's ECF electronic filing system.

*/s/ W. Allen McDonald*
W. Allen McDonald, Esq.
